1  ANNETTE L. HURST (STATE BAR NO. 148738)
   ahurst@orrick.com
2  RUSSELL P. COHEN (STATE BAR NO. 213105)
   rcohen@orrick.com
3  NATHAN SHAFFER (STATE BAR NO. 282015)
   nshaffer@orrick.com
4  DANIEL JUSTICE (STATE BAR NO. 291907)
   djustice@orrick.com
5  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
6  405 Howard Street
   San Francisco, CA 94105-2669
7  Telephone:  +1 415 773 5700
   Facsimile:  +1 415 773 5759
8
   ROBERT L. URIARTE (SBN 258274)
9  ruriarte@orrick.com
   MARIA N. SOKOVA (SBN 323627)
10 msokova@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
11 1000 Marsh Road
   Menlo Park, CA 94025-1015
12 Telephone: +1 650 614 7400
   Facsimile: +1 650 614 7401
13
   Attorneys for Defendant
14 LinkedIn Corporation

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17                         SAN FRANCISCO DIVISION

18

19  3taps, Inc.,                              Case No. 18-cv-00855-EMC

20          Plaintiff,                        **DEFENDANT LINKEDIN'S NOTICE OF MOTION & MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

21      vs.

22  LinkedIn Corporation,

23          Defendant.

24                                            Judge:          Hon. Edward M. Chen
                                              Hearing Date:   November 18, 2021
25                                            Hearing Time:   1:30 p.m.
                                              Ctrm:           Courtroom 5
26                                            Trial Date:     None Set

27

28

## NOTICE OF MOTION AND MOTION

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE** that on November 18, 2021 at 1:30 p.m., or as soon thereafter as the matter may be heard in the above-captioned Court, Defendant LinkedIn Corporation ("LinkedIn") will and hereby does move pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the Complaint filed by Plaintiff 3taps, Inc. ("3taps"). This Motion is based on the concurrently filed Memorandum of Points and Authorities in support, the Complaint, the accompanying Request for Judicial Notice; and any other material the Court deems proper and just.

Plaintiff's Complaint presents a single claim for declaratory relief regarding the Computer Fraud and Abuse Act. The Complaint should be dismissed because there is no Article III case or controversy between the parties and as such no subject matter jurisdiction. First, 3taps alleges no concrete harm, the hallmark requirement of standing to maintain suit. Second, there is no actual case or controversy between 3taps and LinkedIn because there is no ripe dispute; 3taps's Complaint improperly presents a request for an advisory opinion. Finally, in all events, the Court should exercise its discretion to dismiss this declaratory relief action.

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

3taps's claim for declaratory relief under the Computer Fraud and Abuse Act ("CFAA") should be dismissed because 3taps fails to allege facts showing (1) that it has suffered or is threatened with immediate and concrete harm, and (2) the existence of a substantial, immediate, and real controversy between 3taps and LinkedIn.  Rather, 3taps seeks an impermissible advisory opinion that it will not violate the CFAA if it proceeds to scrape LinkedIn's website in some unspecified fashion.  3taps has failed to meet its burden by alleging facts in its Complaint sufficient to establish Article III jurisdiction.  The Complaint should be dismissed.

## FACTUAL ALLEGATIONS

In February 2018, 3taps filed a Complaint seeking a declaration from this Court that it will not violate the CFAA if it proceeds to access and use what it characterizes as "public" LinkedIn member personal information from LinkedIn's webpages hosted on LinkedIn servers.  The Complaint provides little regarding the nature of 3taps's business or its alleged plans to access and use data from LinkedIn's servers.  3taps states only that it "is engaged in the business of using automated means to access and use publicly-available facts from the internet and using, or providing to others for use, those publicly-available facts in innovative and creative ways primarily designed to enhance user experiences and safety." Cplt. ¶10.  That vague assertion could mean anything from 3taps being a specialized search engine to 3taps working with hackers to aggregate and supply data in the name of "security."

3taps provides no other information regarding its business or how, if at all, its business relates to LinkedIn.  3taps does not explain what means it proposes to use to collect data, and whether it will seek to avoid technical measures designed to prevent it from doing so.  3taps does not explain the volume of data it proposes to collect or how that data will be used.  Nor does the Complaint allege that 3taps has ever actually accessed or used data from LinkedIn's webpages, nor when 3taps allegedly plans to do so.  3taps makes vague assertions to collection of data "as hiQ had been doing," Cplt. ¶¶2, 16, without further elaboration.  Nor is that elaboration supplied by hiQ's Complaint.  *See* LinkedIn's Request for Judicial Notice (RJN), Ex. 1 (hiQ Complaint).

Unlike hiQ, 3taps does not allege that it is a competitor of LinkedIn.  3taps does not allege that it has in fact been harmed by any act of LinkedIn.  3taps does not allege that it *will* be harmed if it is unable to collect data from LinkedIn's servers, or explain how that harm will occur.  3taps has not amended or supplemented the Complaint since 2018, nor did it offer any additional facts regarding its plans in the context of recent case management conferences.  It has been more than three years since 3taps "determined" that it would scrape data from LinkedIn's webpages.

3taps does allege that it exchanged correspondence with LinkedIn.  Cplt. ¶¶2-3, 17-18, 22.  Since 3taps did not supply that correspondence, LinkedIn offers it here pursuant to Rule 10(c).  RJN Exs. 2-3.  Reading that correspondence in a light most favorable to 3taps, all it demonstrates is that LinkedIn asserted that any scraping by 3taps would be "unauthorized."  RJN Ex. 3.  3taps's allegation that "LinkedIn [] responded by claiming that any such activity by 3taps would violate a federal statute, and specifically, the CFAA" (Cplt. ¶22), plainly misconstrues the correspondence.  Rather, LinkedIn specifically asserted that it "does *not* intend to *consider* legal action with respect to 3taps's January 16, 2018 letter until the Ninth Circuit renders its decision."  *Id.* (emphases added).  LinkedIn's correspondence did not threaten any legal or other action against 3taps, plainly acknowledged the importance of the ongoing legal debate regarding the proper interpretation of the CFAA, did not assert a violation by 3taps of the CFAA, and specifically ruled out the potential of even *considering* any immediate action against 3taps.  RJN Ex. 3.

# ARGUMENT

## I. 3TAPS LACKS ARTICLE III STANDING BECAUSE IT FAILS TO ALLEGE ANY ACTUAL OR IMMINENT REDRESSABLE INJURY.

Article III standing requires an injury in fact. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 856 (2016), as revised (May 24, 2016). Plaintiff's injury must be concrete and particularized, and actual or imminent, not conjectural or hypothetical. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992). The "personal stake" required for subject matter jurisdiction ensures that "federal courts do not adjudicate hypothetical or abstract disputes." *TransUnion*, 141 S. Ct. at 2203. The harm must be concrete and real, not abstract. *Id.* It also must be redressable by the Court. *Id.* at 2204. 3taps's Complaint fails to meet these requirements.

First, 3taps alleges no actual or imminent harm in the absence of the requested declaration. 3taps's failure to articulate any harm that either (a) has occurred, or (b) is imminently threatened to occur, is dispositive as to subject matter jurisdiction. Without an immediate and concrete prospect of harm of the type normally adjudicated by federal courts, such as physical, monetary, or reputational injury, 3taps simply does not have standing to bring its claim. *See Id.* at 2211.

Second, even if 3taps had articulated an imminent harm, the requested declaration would not redress it. The declaration will not resolve whether 3taps can scrape data from LinkedIn's servers without threat of legal jeopardy. 3taps's requested declaration concerns only the CFAA. Even assuming 3taps had supplied facts sufficient to adjudicate the CFAA issue, *but see* Part II, *infra*, that would not answer its hypothetical question about whether it can start acquiring data in an unauthorized fashion without legal jeopardy. Resolution of the CFAA question alone could not determine 3taps's right to scrape data from LinkedIn webpages and servers. *See Lujan*, 504 U.S. at 561 (standing requires that injury be redressable by a favorable decision); *Hobbs v. Sprague*, 87 F. Supp. 2d 1007, 1012 (N.D. Cal. 2000) (no standing when court unable to discern whether Plaintiff's alleged injury would be redressed by a favorable decision).

1  There are numerous other legal constraints potentially applicable to scraping activity 3taps might choose to undertake, including other federal statutes, breach of contract, state statutes, and state tort theories.  The requested declaration could not allay 3taps's concern of legal risk from scraping.  Accordingly, 3taps also cannot meet the redressability element of standing.  *See California v. Texas*, 141 S. Ct. 2104, 2116 (2021) (Article III standing requires that the requested remedy will redress plaintiff's injuries); *Mayfield v. United States*, 599 F.3d 964, 972–73 (9th Cir. 2010) (no standing when declaratory judgment would not provide relief or redress injury).

The Complaint should be dismissed under Rule 12(b)(1) because 3taps fails to allege, and indeed lacks, the redressable harm necessary to demonstrate Article III standing.

## II.     THE COMPLAINT ALSO DOES NOT DEMONSTRATE A RIPE CONTROVERSY BETWEEN LINKEDIN AND 3TAPS.

Article III jurisdiction requires an actual controversy that is imminent and concrete.  Declaratory relief is no exception: A party seeking relief under the Declaratory Judgment Act must allege facts sufficient to establish the existence of such a controversy.  *Shalaby v. Jacobowitz*, No. C 03-0227-CRB, 2003 WL 1907664, at *2 (N.D. Cal. Apr. 11, 2003), *aff'd*, 138 F. App'x 10 (9th Cir. 2005).  To determine whether a complaint rises to the level of an actual controversy, the court must examine whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  "In other words, the adversarial relationship must reach the point where there is a specific need for the court to declare the rights of the parties." *Millennium Lab'ys, Inc. v. eLab Consulting Servs.,* No. 12CV1109 JM DHB, 2012 WL 2721919, at *3 (S.D. Cal. July 9, 2012).

The controversy must be "definite and concrete." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 242–43 (1952).  Where no "definite and concrete" case or controversy exists, the dispute seeks "an advisory opinion based on 'a hypothetical state of facts.'" *Sobini Films v. Tri-Star Pictures Inc.*, 2001 WL 1824039, at *2 (internal citation omitted).  Such a dispute "fails to invoke federal court jurisdiction." *Id.*; *Coffman v. Breeze Corps.*, 323 U.S. 316, 324 (1945)

(declaratory judgment "is available in the federal courts only in cases involving an actual case or controversy . . . and it may not be made the medium for securing an advisory opinion in a controversy which has not arisen.") (internal citations omitted).

### A. 3taps's Allegations Regarding Its Own Conduct Do Not Demonstrate An Actual Controversy.

The Complaint fails to allege *any* facts to show a real and immediate controversy between 3taps and LinkedIn. 3taps's bald assertion that in 2018 it decided it wanted to collect data from LinkedIn webpages fails to establish any scraping conduct, or definite plan to engage in scraping activity, giving rise to a substantial, immediate, and real controversy. *See Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.*, 721 Fed. Appx. 628, 630 (9th Cir. 2018) (declaratory judgment claim that there would be trademark confusion was insufficient where the plaintiff had not yet made any such sales nor alleged or offered proof that it had "imminent plans" to do so); *Giannini v. Am. Home Mortg. Servicing, Inc.*, No. C11-04489 TEH, 2012 WL 298254, at *4 (N.D. Cal. Feb. 1, 2012) (dismissing action when complaint made only conclusory allegations regarding subject of declaratory request; factual allegations were insufficiently specific to sustain the declaratory judgment sought.); *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 607–08 (D. Nev. 2011) (Plaintiff failed to plead sufficient jurisdictional facts to establish a substantial case or controversy where trademark was not in use and Plaintiff did not show definite intent to begin using mark; vague and conclusory statements insufficient).

Indeed, the lack of immediacy is evidenced by the fact that 3taps has not amended or supplemented the Complaint to provide any facts regarding actual steps it has taken to implement its plan to access and use data from LinkedIn's servers, since it allegedly determined to do so in early 2018. 3taps's failure to allege that it has taken any action in furtherance of its plan in over three years reveals that there is no real and immediate controversy; rather, what 3taps actually seeks in this matter is an impermissible advisory opinion based on unalleged hypothetical facts. *See Coffman,* 323 U.S. at 324 (The declaratory judgment procedure "may not be made the medium for securing an advisory opinion in a controversy which has not arisen.") (internal citations omitted).

The lack of immediacy is further evidenced by the fact that 3taps resorted to misquoting the pre-suit correspondence with LinkedIn in an attempt to manufacture a ripe controversy where there is none. Specifically, the Complaint alleges that in response to a January 16, 2018 letter from 3taps's counsel containing the bald assertion that "3taps intends to begin scraping publicly-available data from LinkedIn.com in the coming weeks, and does not intend to await the outcome of the [hiQ v. LinkedIn] appeal before initiating those activities" (RJN Ex. 2), LinkedIn supposedly responded with a letter stating that "the CFAA prohibited 3taps from collecting and using data from LinkedIn's publicly-available webpages" and that "any such [scraping] activity would violate a federal statute, and specifically, the CFAA." Cplt. ¶¶3, 18, 22. Those words *do not appear in the letter in that fashion*. RJN Ex. 3. 3taps cobbled together two different parts of a legal analysis to make it sound like a specific threat. LinkedIn's letter does not threaten 3taps.

Rather, LinkedIn asserted it would not even consider legal action until after the hiQ appeal was resolved. *Id.* at 2. 3taps's initial letter seems to have been designed to manufacture a controversy. LinkedIn did not take the bait. LinkedIn repeatedly asserted only that any future scraping activity would be unauthorized. RJN Ex. 3 at 1, 2. 3taps's deliberate misrepresentation of the LinkedIn letter in its Complaint only underscores the degree to which this entire "dispute" is manufactured. Accordingly, far from establishing a real and immediate controversy as the Complaint alleges, the pre-suit correspondence of the parties evidences the lack of an immediate and real controversy. *See Purely Driven Prod., LLC v. Chillovino, LLC*, 171 F.Supp.3d 1016, 1019 (C.D. Cal. 2016) (finding "no case of actual controversy between the parties" when "there is no evidence that Defendants have threatened to file or filed any infringement claims against Plaintiffs, and Defendants expressly disclaimed threatening Plaintiffs with an infringement action.").

The Complaint's failure to allege *any facts* about steps 3taps plans to take to scrape data from LinkedIn webpages is fully consistent with the reality that 3taps does not have now, and has never had, an actual and concrete plan to scrape data from LinkedIn's servers. Because 3taps seeks a declaration based on conduct it does not allege it has undertaken and has no concrete plans to undertake, the Complaint fails to invoke this Court's declaratory judgment jurisdiction.

*See Clark v. City of Seattle*, 899 F.3d 802, 809 (9th Cir. 2018) (Affirming dismissal when alleged harm was speculative and based on events that had not yet occurred and may never occur, and holding that "[f]or a case to be ripe, it must present issues that are 'definite and concrete,' not hypothetical or abstract.").

### B. 3taps Cannot Bootstrap Its Way To Ripeness By Relying On The Controversy Between hiQ and LinkedIn.

Unable to plead facts regarding its own conduct that evidence an actual and immediate controversy, 3taps relies on the unrelated controversy between LinkedIn and hiQ.  Indeed, 3taps seeks "essentially the same declaratory judgment that hiQ is seeking against LinkedIn."  Cplt. ¶4.  3taps is trying to use someone else's dispute as a bootstrap to establish ripeness in its own case.  That effort fails to demonstrate a ripe controversy between 3taps and LinkedIn.

The Complaint does not allege any business relationship between 3taps and hiQ that might even theoretically support the bootstrapping theory by showing an actual controversy between 3taps and LinkedIn, such as an allegation that 3taps is a distributor of hiQ's products.  Instead, the only connection alleged in the Complaint between 3taps and hiQ is that they share a common investor called Hard Yaka, Inc.  Cplt. ¶2.  The fact that a common investor wants to fund multiple lawsuits against LinkedIn does not make for an actual controversy between LinkedIn and 3taps.  If anything, this allegation strongly suggests that this lawsuit is being pursued for improper ancillary purposes unrelated to the actual interests of 3taps.

Further, there is nothing in hiQ's pleadings that 3taps can rely upon to explain exactly how it was collecting data in order to manufacture a concrete dispute with LinkedIn.  This leaves LinkedIn in the dark about how to frame its theoretical concern with 3taps for assessment by the Court.  hiQ pled that it has "used a variety of software and manual means to gather" information from LinkedIn webpages.  *See* RJN Ex. 1 ¶18.  3taps cannot even allege this much.  3taps also cannot allege threats of litigation or implementation of technology to block specifically 3taps from accessing data from LinkedIn servers, such as targeted IP blocks.  *Compare id.* ¶34 *with* RJN Exs. 2-3 (letters detailing lack of current intent to sue 3taps).  Indeed, the Court previously acknowledged that LinkedIn's general technical barriers pass legal muster.  *See hiQ Labs, Inc. v.*

1  *LinkedIn Corp.,* 273 F. Supp. 3d 1099, 1113 (N.D. Cal. 2017), *aff'd and remanded,* 938 F. 3d
2  985 (9th Cir. 2019), *cert. granted, judgment vacated,* No. 19-1116, 2021 WL 2405144 (June 14,
3  2021).  The bootstrapping effort simply does not fill in the gaps to create an actual controversy.

          **C.**     <u>**In All Events, The Court Should Exercise Its Discretion To Dismiss.**</u>

The Court has discretion to dismiss a declaratory relief case even where, unlike here, there is subject matter jurisdiction.  *MedImmune*, 549 U.S. at 136 (courts have discretionary power to refuse declaratory relief cases).  The lack of any explanation as to any concrete aspect of 3taps's plan forecloses the Court's use of its discretion in this instance.  That is because declaratory relief is only appropriate where it would completely resolve a concrete controversy.  *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1010 (9th Cir. 2008) (declaratory judgment is only appropriate where it would completely resolve the concrete controversy.).  That would not happen here even if there were a CFAA dispute and even if it were resolved in 3taps's favor.

This case as currently constituted is a highly inefficient exercise.  There are a number of other legal constraints that are potentially applicable to any scraping activity that 3taps might hypothetically choose to undertake.  Other federal statutes, contracts, state statutes, and state tort theories are all potentially applicable to this presently unknown future course of action.  The requested declaration therefore will not answer 3taps's question about whether it can scrape without legal jeopardy, and the Court should refuse jurisdiction for this independent reason.  *See McGraw-Edison Co. v. Preformed Line Prod. Co.*, 362 F.2d 339, 342 (9th Cir. 1966) ("It is well settled, however, that a declaratory judgment may be refused where it would serve no useful purpose … or would not finally determine the rights of the parties ….  Nor should declaratory relief be granted where it would result in piecemeal trials of the various controversies presented or in the trial of a particular issue without resolving the entire controversy …."); *Calderon v. Ashmus*, 523 U.S. 740, 749 (1998) (declaratory judgment action "not a justiciable case within the meaning of Article III" because it would not completely resolve all the challenges to the validity of the class members state-court convictions and sentences), *reh'g denied*, 544 U.S. 968 (1998).

As noted above, 3taps seeks its advisory opinion only as to the CFAA. Such a declaration, even if proper, would not resolve all of the other potential claims that LinkedIn might have depending upon the nature of actions that 3taps has neither described nor undertaken. The hypothetical that 3taps poses is incomplete. The advisory opinion it seeks would not resolve all potential issues. Under such circumstances, even if there were subject matter jurisdiction (which there is not), the Court should exercise its discretion to dismiss because the advisory opinion 3taps seeks will not resolve all of the theoretical dispute.

## CONCLUSION

3taps lacks standing to pursue its declaratory relief claim, has failed to demonstrate an actual controversy, and in all events the Court should exercise its discretion to dismiss this unnecessary lawsuit.

Dated: August 13, 2021                              Orrick, Herrington & Sutcliffe LLP


                                                    By:      */s/ Annette L. Hurst*
                                                           ANNETTE L. HURST
                                                           Attorneys for Defendant
                                                           LinkedIn Corporation

**CERTIFICATE OF SERVICE**

I, Daniel Justice, certify that on August 13, 2021, I caused the foregoing document **DEFENDANT LINKEDIN'S NOTICE OF MOTION & MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** to be electronically transmitted to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants and attorneys of record in this case.

*/s/ Daniel Justice*
Daniel Justice