Thomas V. Christopher (Bar No. 185928)
The Law Offices of Thomas V. Christopher
The Salesforce Tower
415 Mission Street, 37th Floor
San Francisco, CA 94105
415-659-1805
Email: Thomas@ThomasChristopherLaw.com

Attorney for Plaintiff 3taps, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3TAPS, INC., a Delaware corporation,<br><br>        Plaintiff,<br>v.<br><br>LINKEDIN CORPORATION, a Delaware corporation,<br><br>        Defendant. | Case No. 3:18-cv-00855-EMC<br><br>**PLAINTIFF 3TAPS, INC.'S OPPOSITION TO DEFENDANT LINKEDIN'S MOTION TO DISMISS**<br><br>Judge:     Hon. Edward M. Chen<br>Hearing:  Nov. 18, 2021 at 1:30 p.m.<br>Courtroom: 5<br>Trial Date: None Set |

Plaintiff 3taps, Inc. ("3taps") opposes Defendant LinkedIn Corporation's ("LinkedIn") motion to dismiss. Because 3taps asserts sufficient allegations to demonstrate standing and an actual controversy, and because there is no basis for the Court to decline to consider this dispute, LinkedIn's motion should be denied.

## I.  INTRODUCTION

3taps is engaged in the business of data scraping publicly-available information on the internet. LinkedIn is the largest professional networking site in the world and is a goldmine of publicly-available information for scrapers like 3taps. But LinkedIn seeks to prohibit the scraping of this information from its servers by employing a variety of means, to include technological measures, the terms of its User Agreement, and, relevant here, baseless litigation tactics.

In a related case filed in this Court, LinkedIn sent a cease-and-desist letter to hiQ Labs, Inc. ("hiQ"), another data scraping business, arguing that hiQ's scraping of LinkedIn's servers violates, inter alia, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"). See hiQ Labs v. LinkedIn Corp, No. 3:17-cv-03301-EMC (N.D. Cal.) (the "hiQ Litigation"); Def.'s Req. Judicial Notice ["RJN"] Ex. 1 ¶ 25. Unlike 3taps, which scrapes publicly-available information from the Internet as a whole, hiQ scrapes *only* LinkedIn's website. LinkedIn's contention, therefore, threatened the viability of hiQ's business. Accordingly, hiQ brought suit against LinkedIn seeking, among other things, a declaration that its scraping of publicly-available information on LinkedIn's website does not violate the CFAA. This Court subsequently granted hiQ's motion for a preliminary injunction on the ground that the CFAA is not violated by the scraping of publicly-available data.

LinkedIn's baseless litigation tactics are on display in this case as well. When 3taps informed LinkedIn that it would begin scraping its website in light of the preliminary injunction issued in the hiQ Litigation, LinkedIn once again asserted that doing so would violate the CFAA. With the threat of ruinous litigation hanging over 3taps from by a party that has demonstrated that it will spare no expense going after data scrapers, 3taps filed this action for a declaratory judgment to seek clarity on its rights and potential liabilities. LinkedIn now moves to dismiss on three grounds: (1) 3taps lacks standing because it fails to allege a cognizable harm, (2) 3taps fails to show the existence of an actual controversy, and (3) the Court should exercise its discretion and dismiss this case. Because none of these arguments have merit, LinkedIn's motion should be denied.

## II.   STATEMENT OF FACTS

### A.   3TAPS' ALLEGATIONS

3taps is engaged in the business of scraping—that is, using automated means to access publicly-available facts from the internet—and using, or providing to others for use, those publicly-available facts in innovative and creative ways primarily designed to enhance user experiences and safety. (Compl. ¶ 10.) One of 3taps' investors is Hard Yaka, Inc., which is also an investor in another scraping company, hiQ. (Ibid.) hiQ, in turn, is the plaintiff in the hiQ Litigation. (Ibid.)

The hiQ Litigation arose after LinkedIn sent hiQ a cease-and-desist letter demanding that it stop scraping LinkedIn's website. (Compl. ¶ 12.) In response, hiQ sent a letter stating that LinkedIn's actions were threatening hiQ's business and efforts to obtain financing. (Compl. ¶ 13.) When hiQ did not receive a response, it filed suit seeking, among other things, a declaration that hiQ would not violate the CFAA by

accessing and using publicly-available facts and information on LinkedIn's website. (Compl. ¶ 14.) This Court then granted hiQ's motion for a preliminary injunction, holding specifically that the CFAA permitted hiQ to scrape publicly-available materials on the LinkedIn webpage. (Compl. ¶ 15.)

Relying on this Court's holding in the hiQ Litigation, 3taps, whose entire business is built around data scraping entities like LinkedIn, decided to begin scraping publicly-available information from the LinkedIn website. (Compl. ¶ 16.) When 3taps informed LinkedIn of its intention, LinkedIn sent 3taps a "cease and desist" type letter asserting that the legal basis of this Court's *hiQ* decision was "misplaced" and that the CFAA prohibited 3taps' scraping activities. (Compl. ¶¶ 17–18.) As a result, 3taps initiated this action seeking a declaration that it will not violate the CFAA by accessing and using publicly-available data on LinkedIn's website. (Compl. ¶ 19.)

**B.    LINKEDIN'S REQUEST FOR JUDICIAL NOTICE**

**1.    3taps' Letter to LinkedIn**

On January 16, 2018, 3taps provided notice to LinkedIn that it "intends to begin scraping publicly-available data from LinkedIn.com in the common weeks." (RJN Ex. 2.) This decision was based on (a) this Court's order granting a preliminary injunction in the hiQ Litigation and (b) Oracle USA, Inc. v. Rimini Street, Inc., 879 F.3d 948, 962 (9th Cir. 2018), reversed on other grounds by Rimini Street, Inc. v. Oracle USA, Inc., 139 S.Ct. 873 (2019), which held that "taking data using a *method* prohibited by the applicable terms of use, when taking itself is generally permitted, does not violate" California's Computer Data Access and Fraud Act ("CFADA"), Penal Code § 502. (Italics in original.)

3

### 2. LinkedIn's January 24, 2018 Response

On January 24, 2018, LinkedIn objected to 3taps' letter on three grounds. (RJN Ex. 3.) First, LinkedIn claimed that 3taps' scraping of data from LinkedIn's website and its servers would violate its User Agreement. Second, LinkedIn rejected 3taps' contention that scraping does not violate the CFAA, asserting that the legal basis of this Court's order in the hiQ Litigation was "misplaced." Relying instead on Craigslist Inc. v. 3Taps Inc., 964 F. Supp. 2d 1178 (N.D. Cal. 2013), LinkedIn claimed that a website owner could invoke the CFAA to prohibit 3taps from scraping publicly-available websites. As to that, LinkedIn noted, "[w]hile LinkedIn does not intend to consider legal action with respect to 3taps's [*sic*] January 16, 2018 letter until the Ninth Circuit renders its decision [in the appeal of the hiQ Litigation], we want to be clear that 3taps has no authorization to access the LinkedIn website and LinkedIn's servers." Lastly, LinkedIn dismissed as "incorrect" the applicability of Oracle USA to this case, asserting that its holding applies only where one had authorization in the first instance to access certain information. "By contrast, 3taps does not have and has never had permission to scrape LinkedIn's servers and extract its data *en masse*, must circumvent LinkedIn's technical protection measures to do so, and unquestionably going forward is not 'authorized in the first instance' to access and scrape LinkedIn's servers."

### III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction; they are authorized only to exercise jurisdiction pursuant to Article III of the U.S. Constitution and federal laws enacted thereunder. Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc., 805 F. Supp. 2d 888, 896 (N.D. Cal. 2011). Hence, an Article III federal court must ask whether a

4

plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution.  In re LinkedIn User Priv. Litig., 932 F. Supp. 2d 1089, 1092 (N.D. Cal. 2013).

If a plaintiff cannot allege Article III standing, then the federal court lacks jurisdiction over the case and must dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1).  Spencer Enterprises, Inc. v. United States, 345 F.3d 683, 687 (9th Cir. 2003); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101, 109–10 (1998). "At the pleading stage, the plaintiff must clearly allege facts demonstrating each element." In re Apple Processor Litig., 366 F. Supp. 3d 1103, 1107 (N.D. Cal. 2019) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).  "When '[s]peculative inferences' are necessary . . . to establish either injury or the connection between the alleged injury and the act challenged, standing will not be found." Johnson v. Weinberger, 851 F.2d 233, 235 (9th Cir. 1988) (quoting Simon v. E. Kentucky Welfare Rts. Org., 426 U.S. 26, 45 (1976)).

## IV. DISCUSSION

LinkedIn argues that 3taps has not articulated a harm that is redressable by the relief sought and that it fails to demonstrate the existence of an actual controversy.  In the alternative, it asks the Court to exercise its discretion and dismiss this case.  3taps's allegations, however, are more than sufficient to make these showings, and LinkedIn provides no basis for the Court to decline consideration of this dispute.

### A. 3taps' Allegations Demonstrate Standing

LinkedIn first asserts that 3taps fails to demonstrate standing since its allegations cannot satisfy the harm or redressability requirements.  "Standing is a jurisdictional issue

deriving from the 'case or controversy' requirement of Article III of the United States Constitution." Native Vill. of Kivalina v. ExxonMobil Corp., 696 F.3d 849, 867 (9th Cir. 2012) (citing Cole v. Oroville Union High Sch. Dist., 228 F.3d 1092, 1098 (9th Cir. 2000)).  To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that injury will be redressed by a favorable decision.  Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000); Lujan v. Defs. of Wildlife, 504 U.S. 555, 561–62 (1992).

A plaintiff establishes an injury-in-fact when it shows that it suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  Spokeo, supra, 136 S. Ct. at 1548 (quotation marks and citation omitted).  To be "particularized," an injury "must affect the plaintiff in a personal and individual way."  Id. (quoting Lujan, 504 U.S. at 560 n.1).  To be "concrete," the injury "must actually exist"—an abstract, theoretical concern will not do.  Id.  To establish a traceable injury, there must be "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  Lujan, 504 U.S. at 560 (quotation marks and citation omitted) (alteration omitted).  It must also be "likely" as opposed to merely "speculative" that the injury will be "redressed by a favorable decision."  Id. at 561 (quotation marks and citation omitted).  And if a plaintiff is seeking injunctive or declaratory relief, the plaintiff

must demonstrate "a sufficient likelihood that [they] will again be wronged in a similar way." City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).

### 1. Injury-In-Fact

3taps has satisfied the requirement that it show an injury-in-fact. It alleges that it is in the business of data scraping and that its business model is wholly dependent on its ability to access and use publicly-available facts from the Internet. (Compl. ¶ 10.) It then alleges that LinkedIn, as the owner of the world's largest online professional network, has determined that 3taps' access and use of LinkedIn's publicly-available information is a violation of the CFAA. (Compl. ¶ 18; RJN Ex. 3.) LinkedIn's position with respect to scraping "prevents 3taps from taking advantage of [this Court's] order" in the hiQ Litigation—that is, scraping publicly-available information from LinkedIn's website without threat of CFAA liability. (Compl. ¶ 3.) As such, LinkedIn's position is a threat to 3taps' business interests and affects its legally protected right in accessing and using publicly-available information - - information that is the bread and butter of its business model. That is an injury-in-fact.

Of course, the injury that 3taps alleges is a future injury, but that is no bar to standing. "A plaintiff threatened with future injury has standing to sue 'if the threatened injury is certainly impending, or there is a substantial risk the harm will occur.' " In re Zappos.com, Inc., 888 F.3d 1020, 1024 (9th Cir. 2018) (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)). LinkedIn's cease-and-desist letter to hiQ, its staunch defense of its contention in the hiQ Litigation that scraping of its website violates the CFAA, and its continued affirmance of that contention in its January 24, 2018 response to 3taps' letter confirms that it has no intention of standing idly by if 3taps

7

begins scraping its website.  Therefore, the threat of injury to 3taps in the (near certain) event that LinkedIn takes action in response to scraping by 3taps is not merely speculative; it is sufficiently impending and the risk of harm substantial enough to establish standing.

### 2. Redressability

LinkedIn's redressability argument also fails.  It claims that the relief 3taps seeks "will not resolve whether 3taps can scrape data from LinkedIn's servers without threat of legal jeopardy" or "allay 3taps's [sic] concern of legal risk from scraping." (MTD at 3–4.)  To be clear, 3taps is not seeking a declaration that scraping publicly-available data on LinkedIn's website would be free from *all* theories of liability.  It seeks only a declaration that the scraping would not violate the CFAA.  (See Compl. ¶ 4.)  That makes no difference.  A declaratory judgment need not resolve all the issues in controversy, as long as it resolves a significant disputed issue.  Harris v. United States Fid. & Guaranty Co. 569 F2d 850, 852 (5th Cir. 1978); see Allstate Ins. Co. v. Davis 430 F.Supp.2d 1112, 1122 (Haw. 2006).

Here, because the judgment sought will completely resolve "a concrete controversy" between the parties as it relates to the CFAA, it is not barred by the existence of other potential claims.  Calderon v. Ashmus, 523 U.S. 740, 749 (1998).  What LinkedIn's motion misses is the fact that gaining legal clarity regarding the legality of 3taps' actions under the CFAA is, ***independently, of great value to 3taps***.  As LinkedIn is acutely aware, violation of the CFAA can carry harsh penalties, including ruinous damages and potential criminal sanctions.  That contrasts sharply with other theories of liability that LinkedIn might employ, such as state law claims for trespass,

8

which do not carry the same draconian damage measures and potential federal criminal liability inherent in the CFAA.  Thus, contrary to LinkedIn's claims, there are good and valid reasons why 3taps might seek clarity regarding its potential liability under the CFAA without seeing an equally pressing need for such clarity under other legal theories that carry far less robust penalties if a violation is found to have occurred.

### B. 3taps' Allegations Demonstrate Existence of an Actual Controversy

Next, LinkedIn argues that 3taps fails to allege sufficient facts to show that there exists an actual controversy between the parties.  In the alternative, LinkedIn urges the Court to decline to exercise jurisdiction over this action.  Both arguments should be rejected.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  The Ninth Circuit has explained that "[t]wo issues are presented to the district court" when it assesses whether it may and should exercise jurisdiction over an action for declaratory judgment.  American States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1994).  "First, the court must inquire whether there is a case of actual controversy within its jurisdiction.  Jurisdiction to award declaratory relief exists only in a case of actual controversy.  We have held that this requirement is identical to Article III's constitutional case or controversy requirement." Id. at 143.  "Second, if there is a case or controversy within its jurisdiction, the court must decide whether to exercise that jurisdiction." Kearns, 15 F.3d at 143-44.  In assessing whether to exercise its discretion to entertain a declaratory relief claim over which it

possesses subject matter jurisdiction, district courts apply the factors set out in Brillhart v. Excess Ins. Co., 316 U.S. 491.

### 1. 3taps' Allegations Establish a Substantial Controversy of Sufficient Immediacy

LinkedIn claims 3taps fails to allege any facts to show a real and immediate controversy between the parties. An actual case or controversy exists where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)). Moreover, the dispute has to be 'definite and concrete, touching the legal relations of parties having adverse legal interests." Ibid.; see also Veoh Networks, Inc. v. UMG Recordings, Inc., 522 F. Supp. 2d 1265, 1269 (S.D. Cal. 2007) ("The controversy must be real, substantial, and capable of specific relief through a decree of conclusive character.").

LinkedIn claims 3taps fails to show the existence of a controversy since it has not actually engaged in any scraping of the LinkedIn website. Obviously, 3taps does not need to risk ruinous litigation and a damages judgment, not to mention criminal sanctions, *by scraping LinkedIn's website first and seeking declaratory relief later*. See SanDisk Corp. v. STMicroelectronics, Inc. 480 F.3d 1372, 1380–81 (Fed. Cir. 2007) ("Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do.") GTE Directories Publishing Corp. v. Trimen America, Inc. (11th Cir. 1995) 67 F3d 1563, 1567-1568 (Plaintiff should not be required to incur potential tort liability before obtaining an adjudication of its rights:

10

"The practical effect of finding no case or controversy in the instant case would be to force GTEDPC to contact Trimen's clients thereby subjecting itself to potential liability before allowing it to receive a declaratory judgment. GTEDPC is not required to take such action for an actual case or controversy to exist.)

LinkedIn also claims there are no allegations of definite plans to scrape the LinkedIn website. That just isn't the case. 3taps specifically alleges in the Complaint that it is a company that it is in the business of data scraping. (Compl. ¶¶ 10, 17.) Moreover, 3taps is a well-known data scraper that has been involved in high profile litigation over the applicability of the CFAA to its scraping activities. See Craigslist Inc. v. 3Taps Inc.,964 F. Supp. 2d 1178. In other words, it is not an entity that is merely thinking about entering the scraping arena one day, maybe. Instead, it is a company that is well known for being in the business of data scraping.

The Complaint also specifically alleges that, in light of this Court's order in the hiQ Litigation and in furtherance of its own business goals, 3taps intends to scrape the publicly-available information on LinkedIn's website. (Compl. ¶¶ 11, 16-17.) That allegation must be taken as true on this motion and, given 3taps history as a data scraper, it is not conceivable that such an allegation could be deemed implausible.

Contrary to LinkedIn's suggestion, 3taps is under no obligation to provide LinkedIn with a detailed blueprint of how it intends to scrape LinkedIn's website in the Complaint. The implication by LinkedIn that 3taps is required to do so in a pleading is not only unmoored from any case law, it makes no sense. As LinkedIn knows, scraping activities are fluid in nature, constantly adjusted in real time, feedback driven, and not subject to a detailed and preconceived "concrete plan", whatever that might mean. It is

enough that 3taps, a professional data scraper, has alleged that it intends to scrape LinkedIn's website, and no pleading requirement dictates that some detailed plan for scraping be laid out in the Complaint.

Moreover, with respect to timing, the Complaint alleges that 3taps would have begun scraping LinkedIn's website "in the coming weeks" (as of its January 16, 2018 letter to LinkedIn) but for LinkedIn's position that scraping violates the CFAA and the implied threat carried therein.  (See Compl. ¶¶ 10, 22.)  Finally, the Complaint takes note of LinkedIn's vigorous litigation in the hiQ Litigation and its continued belief, as expressed in its January 24, 2018 letter, that the CFAA prohibits scraping, thereby leading 3taps to the reasonable expectation that its scraping of LinkedIn's website would face legal challenge under the CFAA.  Under all of these circumstances, 3taps submits that its allegations demonstrate a substantial controversy between two parties with clearly adverse legal interests, and the dispute is of sufficient immediacy and reality to warrant relief.

Still, LinkedIn insists there is no immediacy present in this case because it never explicitly threatened to file suit against 3taps.  But LinkedIn itself conveniently omits the context of its own statements, choosing instead to cast aspersions by claiming that 3taps "misquote[ed]" the pre-suit correspondence, it "cobbled together" different parts of LinkedIn's legal analysis, and it "manufacture[d] a ripe controversy where there is none." (MTD at 6.)

However, LinkedIn cannot dispute that its objection to 3taps' proposed scraping was three-fold: it would violate LinkedIn's User Agreement, the CFAA, and the CFADA. As to the CFAA, LinkedIn rejected the legal basis of this Court's order in the hiQ

Litigation as "misplaced," relying instead on Craigslist Inc. v. 3Taps Inc., supra, to suggest that the CFAA may be invoked by a website owner that has revoked authorization to access publicly-available websites. LinkedIn then made "clear that 3taps has no authorization to access the LinkedIn website and LinkedIn's servers." Read in context, LinkedIn confirmed its position that the CFAA prohibited 3taps from collecting and using data from its website. LinkedeIn further stated that it "does not intend to consider legal action . . . until" the Ninth Circuit's decision in the hiQ Litigation. Stated another way, LinkedIn *did* intend to consider legal action *when* the Ninth Circuit rendered its decision. By then, briefing on appeal had been completed, and oral argument was scheduled for just one month later. Since the Ninth Circuit's decision was imminent when this action was filed, there was sufficient immediacy to establish a cognizable controversy.

### 2. The Dispute Between 3taps and LinkedIn Demonstrates a Ripe Controversy

Practically ignoring all of 3taps' allegations, LinkedIn claims that 3taps is simply "bootstrap[ping] its way to ripeness." (MTD at 7.) It is true that 3taps likens its conduct to that of hiQ, but that is only to highlight the material similarities between the two companies. Both are, in essence, data analytics companies. Where 3taps alleges that it is "in the business of . . . access[ing] and us[ing] publicly-available facts from the internet" (Compl. ¶ 10), hiQ described itself as "a tech startup which collects and analyzes public profile information on LinkedIn" (LinkedIn RJN Ex. 1 ¶ 2). The information so collected is used to "enhance user experiences and safety," in the case of 3taps (Compl. ¶ 10), or to "provide its clients—mostly large companies—with insights about their employees," in the case of hiQ (RJN Ex. 1 ¶ 2). 3taps uses "automated means" to access and use the

information (Compl. ¶ 10), and hiQ uses "a variety of software and manual means to gather this information" (RJN Ex. 1 ¶ 18).

In both cases, LinkedIn revoked authorization to scrape its website. In light of these similarities, and this Court's orger favoring *hiQ*, 3taps informed LinkedIn of its intent "to begin collecting and using publicly-available data from LinkedIn's website *as hiQ had been doing*." (Compl. ¶ 2, italics added.) And, 3taps also seeks "essentially the same declaratory judgment that hiQ is seeking against LinkedIn in [the hiQ Litigation]." (Compl. ¶ 4.) LinkedIn fails to explain why or how the recognition of these similarities undermines 3taps' standing here or the existence of a controversy.

Moreover, LinkedIn cannot rely on the differences between 3taps and hiQ to suggest that 3taps' allegations are somehow insufficient. hiQ's pleading in the hiQ Litigation does not establish a bar to establish a controversy. Contrary to LinkedIn's suggestion, 3taps does not need to allege that the viability of its business is completely reliant on its access to LinkedIn's website, as hiQ alleged. (See RJN Ex. 1 ¶ 17.) 3taps' allegation that it is a scraping company which relies on its access to publicly-available information, and that LinkedIn has threatened to deny it access to a valuable business resource to which it is legally entitled is more than sufficient. LinkedIn cites no case to the contrary. 3taps also need not allege that LinkedIn implemented technology to block it specifically from accessing data from LinkedIn servers, as hiQ did in the hiQ Litigation. (See RJN Ex. 1 ¶ 25.) It is enough for 3taps to refer to LinkedIn's January 24, 2018 letter, wherein LinkedIn claimed to have implemented "technical protection measures" to protect itself from the scraping of its servers and the extraction of its data "*en masse*." (RJN Ex. 3.)

### 3. The Court Should Exercise Its Discretion to Consider the Merits

LinkedIn's final argument is that this Court should decline to exercise its discretion to consider this case. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). "Situations justifying exercise of the court's discretion to issue a declaratory judgment include '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " Minn. Mining & Mfg. Co. v. Norton Co., 929 F.2d 670, 672 (Fed. Cir. 1991) (citing E. Borchard, Declaratory Judgments, 299 (2d ed. 1941)).

Nothing about this dispute makes it unfit for judicial resolution. First, as demonstrated by the foregoing, 3taps has standing and has demonstrated an actual controversy; it is not seeking an advisory opinion. Second, the only basis upon which LinkedIn asks the Court to exercise its discretion to dismiss this case is that resolution of the issue here will not resolve "whether [3taps] can scrape without legal jeopardy." (MTD at 8.) However, as noted supra, 3taps seeks only a determination that its scraping would not violate the CFAA, and a declaratory judgment would resolve that disputed issue completely. This is all that is required. Harris, supra, 569 F2d at 852; see also Calderon, supra, 523 U.S. at 749. Moreover, resolution of that very issue is, independently, of vital importance to 3taps, as other legal theories used against data scrapers do not carry the type of draconian damage measures and the potential for criminal liability present in the CFAA.

**V.  CONCLUSION**

For the foregoing reasons, 3taps respectfully requests that the Court deny LinkedIn's motion to dismiss in its entirety.  If, however, the Court is inclined to grant the motion in whole or in part, 3taps requests leave to amend in order to correct any deficiencies identified by the Court.


DATED: August 26, 2021

THE LAW OFFICE OF THOMAS V. CHRISTOPHER

By:  /s/ Thomas V. Christopher
_____
Thomas V. Christopher
*Attorney for Plaintiff*
3taps, Inc.

# CERTIFICATE OF SERVICE

*3TAPS, INC. v. LINKEDIN CORPORATION*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Case No.  3:18-cv-00855-EMC**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Northern District of California by using the CM/ECF system on August 26, 2021. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Thomas V. Christopher
Thomas V. Christopher