ANNETTE L. HURST (STATE BAR NO. 148738)
ahurst@orrick.com
RUSSELL P. COHEN (STATE BAR NO. 213105)
rcohen@orrick.com
NATHAN SHAFFER (STATE BAR NO. 282015)
nshaffer@orrick.com
DANIEL JUSTICE (STATE BAR NO. 291907)
djustice@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:     +1 415 773 5759

MARIA N. SOKOVA (SBN 323627)
msokova@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

Attorneys for Defendant
LinkedIn Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| 3taps, Inc.,<br><br>        Plaintiff,<br><br>      vs.<br><br>LinkedIn Corporation,<br><br>        Defendant. | Case No. 18-cv-00855-EMC<br><br>**DEFENDANT LINKEDIN'S NOTICE OF MOTION & MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:        Hon. Edward M. Chen<br>Hearing Date:  April 7, 2022<br>Hearing Time:  1:30 p.m.<br>Ctrm:        Courtroom 5<br>Trial Date:    None Set |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

NOTICE OF MOTION AND MOTION………………………………………………............1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

INTRODUCTION .............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 2

      A.     3taps's Manufactured Relationship With hiQ.......................................... 2

      B.     The Little-Changed And Sparse Allegations Of The Amended Complaint. .......... 5

ARGUMENT ...................................................................................................................... 7

I.      3TAPS LACKS ARTICLE III STANDING BECAUSE IT FAILS TO ALLEGE ANY ACTUAL OR IMMINENT REDRESSABLE INJURY........................................... 8

II.     THE AMENDED COMPLAINT DOES NOT DEMONSTRATE A RIPE CONTROVERSY BETWEEN LINKEDIN AND 3TAPS. ............................................. 10

      A.     3taps's Allegations Regarding Its Own Conduct Do Not Demonstrate An Actual Controversy. ................................................................................. 11

      B.     3taps Cannot Bootstrap Its Way To Ripeness By Relying On The Controversy Between hiQ And LinkedIn. ........................................................ 13

III.    IN ALL EVENTS, THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS. ........................................................................................................................ 15

      A.     The Court Should Decline To Exercise Jurisdiction Because Of Unseemly Judge-Shopping By 3taps........................................................................ 15

      B.     The Court Should Decline To Exercise Jurisdiction Because The Requested Relief Will Not Resolve A Concrete Controversy Or Serve A Useful Purpose. ....................................................................................... 16

CONCLUSION .................................................................................................................. 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Calderon v. Ashmus*,
  523 U.S. 740 (1998) ....................................................................................................... 9

*California v. Texas*,
  141 S. Ct. 2104 (2021) ................................................................................................. 10

*Clark v. City of Seattle*,
  899 F.3d 802 (9th Cir. 2018) ....................................................................................... 13

*Coffman v. Breeze Corps.*,
  323 U.S. 316 (1945) ............................................................................................... 11, 12

*Craigslist Inc.  v. 3Taps Inc.*,
  942 F. Supp. 2d 962 (N.D. Cal. 2013) .......................................................................... 3

*Craigslist Inc. v. 3taps Inc.*,
  964 F. Supp. 2d 1178 (N.D. Cal. 2013) ........................................................................ 3

*Craigslist, Inc. v. 3taps, Inc.*,
  No. 3:12-cv-03816-CRB (Dkt. 272, entered June 30, 2015) ......................................... 2

*Craigslist, Inc. v. 3taps, Inc.*,
  No. 3:12-CV-03816-CRB, 2015 WL 5921212 (N.D. Cal. Oct. 11, 2015) ................... 10

*Crossbow Technology, Inc. v. YH Technology, Inc.*,
  531 F. Supp. 2d 1117 (N.D. Cal. 2007) ........................................................................ 7

*Edison v. United States*,
  822 F. 3d 510 (9th Cir. 2016) ............................................................................... 2, 7, 8

*Giannini v. Am. Home Mortg. Servicing, Inc.*,
  No. C11-04489 TEH, 2012 WL 298254 (N.D. Cal. Feb. 1, 2012) .............................. 12

*Grupo Dataflux v. Atlas Global Group*,
  541 U.S. 567 (2004) ....................................................................................................... 7

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  273 F. Supp. 3d 1099 (N.D. Cal. 2017), *aff'd and remanded*, 938 F. 3d 985
  (9th Cir. 2019), *cert. granted, judgment vacated*, 141 S. Ct. 2752 (2021).  ......................... 14

*hiQ Labs Inc. v. LinkedIn Corp.*,
  3:17-cv-03301-EMC (Dkt. 1, filed on June 7, 2017) ..................................................... 3

*hiQ Labs Inc. v. LinkedIn Corp.*,
  3:17-cv-03301-EMC (Dkt. 63, filed on August 14, 2017) ............................................. 3

*hiQ Labs Inc. v. LinkedIn Corp.*,
   3:17-cv-03301-EMC (Dkt. 96, filed on February 14, 2018)...................................... 4

*hiQ Labs Inc. v. LinkedIn Corp.*,
   3:17-cv-03301-EMC (Dkt. 102, filed on February 22, 2018).................................... 5

*Hobbs v. Sprague*,
   87 F. Supp. 2d 1007 (N.D. Cal. 2000) ...................................................................... 9

*Keene Corp. v. United States*,
   508 U.S. 200 (1993) ................................................................................................. 7

*Lujan v. Defs. Of Wildlife*,
   504 U.S. 555 (1992) .............................................................................................. 8, 9

*Mayfield v. United States*,
   599 F.3d 964 (9th Cir. 2010) ................................................................................. 10

*McGraw-Edison Co. v. Preformed Line Prod. Co.*,
   362 F.2d 339 (9th Cir. 1966).................................................................................. 16

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) .......................................................................................... 11, 15

*Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.*,
   721 Fed. Appx. 628 (9th Cir. 2018) ...................................................................... 11

*Millennium Lab'ys, Inc. v. eLab Consulting Servs.*,
   No. 12CV1109 JM DHB, 2012 WL 2721919 (S.D. Cal. July 9, 2012) ................ 11

*Morongo Band of Mission Indians v. California Bd. Of Equalization*,
   858 F.2d 1376 (9th Cir. 1988)................................................................................. 7

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
   344 U.S. 237 (1952) ............................................................................................... 11

*Purely Driven Prod., LLC v. Chillovino, LLC*,
   171 F.Supp.3d 1016 (C.D. Cal. 2016).................................................................... 13

*San Diego Cty. Gun Rts. Comm. V. Reno*,
   98 F.3d 1121 (9th Cir. 1996).............................................................................. 11, 12

*Shalaby v. Jacobowitz*,
   No. C 03-0227-CRB, 2003 WL 1907664 (N.D. Cal. Apr. 11, 2003), *aff'd*, 138
   F. App'x 10 (9th Cir. 2005) ............................................................................. 10, 11

*Sobini Films v. Tri-Star Pictures Inc.*,
   No. CV 01-06615 ABCRNBX, 2001 WL 1824039 (C.D. Cal. Nov. 21, 2001).... 11

*Spokeo, Inc. v. Robins*,
   578 U.S. 856 (2016) ................................................................................................. 8

*Theme Promotions, Inc. v. News Am. Mktg.*
   FSI, 546 F.3d 991 (9th Cir. 2008) ......................................................................... 16

*Tradebay, LLC v. eBay, Inc.*,
    278 F.R.D. 597 (D. Nev. 2011)...................................................................................... 12

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ............................................................................................. 8, 9

*United States v. State of Wash.*,
    759 F.2d 1353 (9th Cir. 1985)............................................................................... 10, 16

**Statutes**

Computer Fraud and Abuse Act ............................................................................... *passim*

California Penal Code § 502 ..................................................................................... *passim*

Declaratory Judgment Act.............................................................................................. 10

Rule 12(b)(1)..................................................................................................... 1, 2, 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>NOTICE OF MOTION AND MOTION</u>**

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE** that on April 7, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard in the above-captioned Court, Defendant LinkedIn Corporation ("LinkedIn") will and hereby does move pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the Amended Complaint filed by Plaintiff 3taps, Inc. ("3taps").  This Motion is based on the concurrently filed Memorandum of Points and Authorities in support, the Amended Complaint, the Declaration of Daniel Justice and accompanying exhibits, and the Request for Judicial Notice and accompanying exhibits, filed herewith; and any other material the Court deems proper and just.

Plaintiff's Amended Complaint seeks declaratory relief that if it engages in unspecified data scraping activity at some point in the future it will not be in violation of the Computer Fraud and Abuse Act or California Penal Code Section 502, and that such activity would not be a trespass in violation of California common law.  The Amended Complaint should be dismissed because there is no Article III case or controversy between the parties and, accordingly, this Court lacks subject matter jurisdiction.  First, 3taps alleges no immediate concrete harm, the hallmark requirement of standing to maintain suit.  Second, there is no actual case or controversy between 3taps and LinkedIn because there is no ripe dispute; 3taps's Amended Complaint improperly presents requests for advisory opinions.  Finally, in all events, the Court should exercise its considerable discretion to dismiss this declaratory relief action.  3taps misrepresented the nature of this purported dispute in order to avoid another judge of this Court, and this action as formulated would not completely resolve all potential legal issues concerning 3taps's proposed conduct.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

3taps's action seeks a limited declaration that it will not commit trespass or violate two statutes by engaging in some unspecified hypothetical future scraping activity.  That request for advisory relief is not properly before this Court.  First, 3taps lacks standing to sue because it does not allege facts showing that it has suffered or is threatened with immediate and concrete harm.  3taps tries to manufacture a threat of harm by mischaracterizing a single pre-suit letter from LinkedIn, but that letter (which was sent in response to correspondence initiated by 3taps) makes no threat of action whatsoever against 3taps.  Second, 3taps cannot show a ripe dispute because it fails to allege the existence of a substantial, immediate, and real controversy.  3taps does not allege that it has scraped LinkedIn or used LinkedIn data in any way.  Instead, it makes vague allegations that it may someday scrape LinkedIn in some undisclosed manner for some unknown purpose and seeks an advisory opinion that if it does so, it will not violate certain laws.  Federal courts do not adjudicate such speculative matters.  Parts I & II, *infra*.

Further, even if there were subject matter jurisdiction over this declaratory relief action (which there is not), the Court should exercise its inherent discretion to decline jurisdiction because of unseemly judge-shopping by 3taps, and because this action as 3taps proposes it would not completely resolve all legal issues surrounding its proposed conduct.  3taps represented that this dispute was "related" to the *hiQ v. LinkedIn* case, claiming that its business was somehow similar to that of hiQ and that the dispute between hiQ and LinkedIn resulted in this lawsuit.  It is now apparent that was false.  3taps manufactured the purported relationship with hiQ to try to get its case in front of Judge Chen in order to avoid a permanent injunction previously entered by Judge Breyer.  The Court should not countenance manufactured lawsuits to avoid existing permanent injunctions.  That is especially true where the claims asserted by 3taps likely would not even resolve a controversy because they do not address all potential questions surrounding its hypothetical proposed scraping activity.  Part III, *infra*.

MOTION TO DISMISS
18-cv-00855-EMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### STATEMENT OF FACTS[1]

    **A.**    **3taps's Manufactured Relationship With hiQ.**

        Plaintiff 3taps's primary investor and CEO is an individual named Robert Gregory Kidd (aka "Greg Kidd").  *See* Dkt. 1-1 (Supplemental Disclosure Regarding Interest in the Appeal of Amicus Curiae 3taps, Inc.).  Mr. Kidd is also a significant investor and the President of another entity called Hard Yaka, Inc. ("Hard Yaka").  *See id.* ("Mr. Kidd is also a significant investor in Hard Yaka, Inc."); Justice Declaration Ex. A (Redacted excerpts of HiQ Labs, Inc. Series C Preferred Stock Purchase Agreement, signed by Mr. Kidd on behalf of Hard Yaka as its President).  According to the Amended Complaint in this case, Hard Yaka is an investor in 3taps. *See* Dkt. 59 (3taps, Inc.'s Amended Complaint for Declaratory Judgment Against LinkedIn Corporation) ("Amended Complaint") ¶¶2, 5, 10.  Thus, it appears Mr. Kidd is both the primary / significant investor and lead executive of both plaintiff 3taps and Hard Yaka.

        On June 30, 2015, 3taps, Hard Yaka, and Mr. Kidd were permanently enjoined from scraping Craigslist.com by another judge of this Court.  *See* LinkedIn's Request for Judicial Notice ("RJN") Ex. 1 (*Craigslist, Inc. v. 3taps, Inc*., et al, 3:12-cv-03816-CRB (Dkt. 272, entered June 30, 2015)).  In that case, Craigslist sued 3taps alleging violations of the Computer Fraud and Abuse Act ("CFAA") and related statutes.  Craigslist alleged that 3taps had "mass copie[d] tens of millions of postings from craigslist in 'real time'" from its website through automated data scraping, and then provided that data to "all manner of for-profit entities to copy, repurpose, redisplay, redistribute, surround with advertisements . . . and otherwise exploit commercially." RJN Ex. 2 (*Craigslist*, First Amended Complaint (Dkt. 35, filed November 20, 2012)) ¶3.  The central issue became whether Craigslist could impose CFAA liability on 3taps for accessing its website and servers "without authorization" after Craigslist had affirmatively withdrawn 3taps's authorization through targeted cease and desist letters and the imposition of technological measures.  Judge Breyer concluded that 3taps's access to "Craigslist after the clear statements regarding authorization in the cease-and-desist letters and the technological measures to block

---

[1]   On a Rule 12(b)(1) motion, the Court may consider factual material outside the pleadings so long as reasonable inferences are drawn in the plaintiff's favor.  *Edison v. United States*, 822 F. 3d 510, 517 (9th Cir. 2016).

1     them constitutes unauthorized access under the [CFAA]"  (*Craigslist Inc.  v. 3Taps Inc.,* 942 F.

2     Supp. 2d 962, 969-70 (N.D. Cal. 2013)) and held that nothing in the text of the CFAA prevented

3     Craigslist from revoking authorization to access its website, even though its website was

4     generally accessible to the public.  *Craigslist Inc. v. 3taps Inc*., 964 F. Supp. 2d 1178, 1182-83

5     (N.D. Cal. 2013).  The case concluded with a stipulated permanent injunction enjoining 3taps as

6     well as its CEO, Mr. Kidd, and Hard Yaka from accessing, copying, or downloading any content

7     from the Craigslist website and circumventing technological measures that regulated access to the

8     site.  RJN Ex. 1.

9         On June 7, 2017, hiQ Labs, Inc. ("hiQ") filed suit in this Court asserting unfair

10    competition claims and seeking, among other things, a declaration that its scraping of member

11    data from LinkedIn webpages did not violate the CFAA and other laws.  *See* RJN Ex. 3 (*hiQ*

12    *Labs, Inc. v. LinkedIn Corp.*, 3:17-cv-03301-EMC (Dkt. 1, entered June 7, 2017)).  hiQ alleged

13    that it scraped information from LinkedIn webpages for use in its commercial data analytics

14    services, and that LinkedIn threatened hiQ with legal action and implemented technological

15    barriers to prevent hiQ's scraping for anticompetitive purposes—namely because LinkedIn

16    planned to offer competing services.  *See id.* at ¶¶2, 6-7, 17-18, 25, 30, 34.  hiQ also alleged that

17    it was specifically harmed because LinkedIn's actions jeopardized several existing contracts and

18    prospective economic relationships with several named companies, thereby threatening its entire

19    business.  *Id.* at ¶¶31, 50-54, 59-60, 64.  On August 14, 2017, this Court granted hiQ a

20    preliminary injunction restraining LinkedIn on unfair competition grounds from preventing hiQ's

21    access or use of member data on LinkedIn's website, and holding that the CFAA likely would not

22    apply to prohibit that conduct.  *See* RJN Ex. 4 (*hiQ Labs, Inc. v. LinkedIn Corp.*, 3:17-cv-03301-

23    EMC (Dkt. 63, entered August 14, 2017)).  After an initial affirmance, GVR by the Supreme

24    Court, and further oral argument, that injunction remains on appeal.

25        3taps saw an opportunity in the new precedent, but it wasn't the normal one.  Rather than

26    return to Judge Breyer—who had adjudicated its dispute with Craigslist—3taps and its CEO

27    instead tried to use a new investment to buy a relationship to hiQ.  3taps then created a dispute

28    with LinkedIn and argued the dispute was related to the *hiQ* lawsuit in order to avoid Judge

MOTION TO DISMISS
18-cv-00855-EMC

1   Breyer and have the case assigned to Judge Chen.  To wit, within three months after this Court

2   entered its preliminary injunction on behalf of hiQ, 3taps's CEO Mr. Kidd (through his other

3   company Hard Yaka) had fully negotiated and executed a promissory note for an eventual

4   investment in hiQ.  *See* Justice Decl. Ex. A (Redacted excerpts of HiQ Labs, Inc. Series C

5   Preferred Stock Purchase Agreement).  The papers converting the promissory note into hiQ

6   shares were fully executed in January 2018, within two days of 3taps's letter to LinkedIn

7   asserting a desire to scrape LinkedIn.  *Compare id.* (January 18, 2018 execution date on Kidd's

8   signature on Stock Purchase Agreement), *with* RJN Ex. 5 (January 16, 2018 letter sent by 3taps,

9   stating that "3taps intends to begin scraping publicly-available data from LinkedIn.com in the

10  coming weeks, and does not intend to await the outcome of the [*hiQ*] appeal before initiating

11  those activities").  The documents make clear that Hard Yaka had not previously owned any stake

12  in hiQ, because its Series C shares, and its total shares are the same.  Justice Decl. Ex. A.

13         On January 24, LinkedIn responded to 3taps's letter by making clear that while any

14  proposed scraping would be unauthorized, it did not then have any intention of initiating a lawsuit

15  against 3taps.  RJN Ex. 6.  Specifically, LinkedIn stated that it "does not intend to consider legal

16  action with respect to 3taps's January 16, 2018 letter until the Ninth Circuit renders its decision."

17  *Id.*  While LinkedIn's letter did note that 3taps's proposed course of conduct would be

18  "unauthorized," LinkedIn threatened no legal or other action against 3taps and expressly stated

19  that LinkedIn had no intention of taking immediate action against 3taps.  *See id.*  That was the

20  sum total of the parties' communications—initiated entirely by 3taps—prior to suit.

21         Two weeks later, 3taps filed its Complaint in this action claiming it had a controversy

22  with LinkedIn over the CFAA.  *See generally* 3Taps, Inc's Complaint for Declaratory Judgment

23  Against LinkedIn Corporation, Dkt. 1 ("Complaint").  3taps then filed a motion to have its case

24  related to the *hiQ v. LinkedIn* case pending before Judge Chen.  *See* RJN Ex. 7 (*hiQ Labs Inc. v.*

25  *LinkedIn Corp.*, 3:17-cv-03301-EMC (Dkt. 96, filed on February 14, 2018)).  In that motion,

26  3taps stated that it and hiQ are "not completely unrelated" and "[a]s noted in 3taps' complaint

27  against LinkedIn, 3taps and hiQ have common partial owners."  *Id.* at 1 n.1.  3taps also claimed

28  that the "facts leading to the filing of [the hiQ Case] are essentially identical to the facts" leading

- 4 -

1  to this case, and that both 3taps and hiQ "received 'cease-and desist' letters from LinkedIn

2  claiming that accessing the facts and information that LinkedIn makes publicly available on its

3  website would violate the CFAA." *Id.* at 1, 3.  This case was then ordered related to the *hiQ v.*

4  *LinkedIn* matter, and stayed pending appeal.  *See* RJN Ex. 8 (*hiQ Labs, Inc. v. LinkedIn Corp.*,

5  3:17-cv-03301-EMC (Dkt. 102, entered February 22, 2018)).

6       On August 13, 2021, after the stay expired, LinkedIn filed a motion to dismiss the

7  Complaint for lack of subject matter jurisdiction.  Dkt. 51.  After filing its opposition (Dkt. 53),

8  3taps proposed—and LinkedIn agreed—that 3taps amend its Complaint, and the parties filed a

9  stipulation to that effect which the Court granted.  *See* Dkt. 55.  On October 5, 2021, 3taps filed

10 its Amended Complaint, which seeks declaratory relief from the Court that 3taps's proposed

11 scraping of LinkedIn profiles would not violate the CFAA, California Penal Code § 502, or

12 prohibitions on common law trespass.  *See* Am. Compl. ¶¶25-34.

13            **B.       The Little-Changed And Sparse Allegations Of The Amended Complaint.**

14       The Amended Complaint differs little from the original, as shown in the redline

15 comparing the two documents attached as Exhibit B to the Justice Declaration.  3taps again leans

16 on the parties' pre-litigation correspondence as the basis for the threat of immediate harm against

17 it, but ignores that 3taps is the party who initiated the correspondence, and LinkedIn's response

18 affirmatively dispelled any threat of immediate action against 3taps.  Moreover, contrary to

19 3taps's allegation that LinkedIn threatened it with violation of the CFAA (Am. Compl. ¶¶23, 27,

20 32), all LinkedIn asserted is that scraping by 3taps would be "unauthorized."  RJN Ex. 6.  Even

21 though LinkedIn pointed out 3taps's mischaracterization of the parties' correspondence in its

22 original motion to dismiss, 3taps included the same misrepresentations in its Amended Complaint

23 and again glaringly omitted the correspondence itself.  3taps has now misrepresented the parties'

24 correspondence no less than three times.

25       3taps attempts to tether its case to the *hiQ v. LinkedIn* matter by alleging that the two had

26 "common investors," that the *hiQ v. LinkedIn* case was "the dispute leading to this action," and

27 that 3taps intends to collect and use data "just as hiQ had been doing."  Am. Compl. ¶¶2, 12-13,

28 16.  In truth, the dispute between hiQ and LinkedIn *did not* lead to this dispute with 3taps.

1    Rather, this dispute was manufactured by Hard Yaka and Mr. Kidd, who bought into hiQ and then

2    promptly had 3taps send a letter claiming it planned to scrape LinkedIn in an attempt to goad

3    LinkedIn into threatening 3taps.  When that failed, 3taps filed a lawsuit anyway, claiming that the

4    parties were related and the businesses and course of conduct the same.

5         But nothing in the Amended Complaint suggests that 3taps has any similarity whatsoever

6    to hiQ apart from their shared investor Hard Yaka.  3taps does not allege it has the same business

7    model as hiQ had of using profile data to assess employee retention risks or workplace skills.  It

8    does not allege it is a "people analytics" company like hiQ.  It does not allege that LinkedIn has

9    any competitive motivation towards it, fair or unfair.  The sole basis for this Court's preliminary

10   injunction in the *hiQ* case was an unfair competition claim under Section 17200.  RJN Ex. 4.

11        3taps says it wants to take and monetize LinkedIn member data in a fashion that is wholly

12   opaque.  All it alleges about its business is that: it "is engaged in the business of using automated

13   means to access and use publicly-available facts from the internet and using, or providing to

14   others for use, those publicly-available facts in innovative and creative ways primarily designed

15   to enhance user experiences and safety."  Am. Compl. ¶10.  This could mean anything from 3taps

16   being a specialized search engine to 3taps working with hackers to aggregate and supply data in

17   the name of "security."  3taps is a known scraper whose scraping activities have been enjoined by

18   another judge of this Court, yet the Amended Complaint does not specify what means 3taps

19   proposes to use to scrape LinkedIn data, explain whether it would bypass technical limitations

20   designed to prevent it from doing so, or otherwise detail how it intends to use the data once

21   obtained.  3taps does not explain the volume of data it proposes to collect or how that data would

22   be used by 3taps or its customers.  3taps does not allege whether it will aggregate or manipulate

23   the data it collects.  And, while 3taps does say that "LinkedIn's website is literally a treasure trove

24   of publicly-available information that would be extremely valuable to data scrapers such as 3taps"

25   (Am. Compl. ¶11), 3taps does not allege whether it plans on selling the data or how it plans to

26   commercialize the data.  Nor does the Amended Complaint allege that 3taps has ever actually

27   accessed or used data from LinkedIn's webpages, or taken any steps towards doing so, despite

28   more than three and one-half years elapsing since this lawsuit was filed.  In short, the Amended

MOTION TO DISMISS
18-cv-00855-EMC

1   Complaint is devoid of facts regarding 3taps's alleged plan to take and use LinkedIn members'

2   data.

3          Instead of pleading facts that would allow the Court or LinkedIn to form even a cursory

4   understanding of 3taps's alleged future scraping plans, 3taps added a single conclusory paragraph

5   to its Amended Complaint designed to manufacture the appearance of an immediate and ripe

6   controversy.  Am. Compl. ¶20.  Specifically, 3taps alleges that it "stands ready, willing, eager,

7   and able" to scrape data from LinkedIn and that it intends to do so immediately when its dispute

8   with LinkedIn over the legality of the proposed actions is resolved.  *Id.*  It alleges that it is

9   "entitled to [] clarity given the threat of ruinous litigation by LinkedIn," an allegation undermined

10  by 3taps's choice to initiate, rather than avoid, litigation.  *Id.*  While 3taps asserts that it is "being

11  denied a valuable business resource," it does not allege how LinkedIn's data has value to 3taps or

12  any business it has conducted using LinkedIn data either leading up to the filing of the case or in

13  the three years since this case was first filed.  *Id.*  Nor does 3taps allege that it has ever attempted

14  to scrape data from LinkedIn webpages or that LinkedIn has ever prevented it from doing so.

15         The only other arguably meaningful change was that it added two new legal theories

16  premised upon exactly the same (lack of) facts.  Where the Complaint sought a declaration under

17  the CFAA, the Amended Complaint now seeks a declaration under the CFAA, California Penal

18  Code Section 502, and the law of trespass.

19                                              **ARGUMENT**

20         A federal court is presumed to lack jurisdiction in a particular case unless the contrary

21  affirmatively appears.  Thus, the burden is on 3taps as the party asserting jurisdiction to prove its

22  existence.  *Crossbow Tech., Inc. v. YH Tech., Inc.*, 531 F. Supp. 2d 1117, 1119 (N.D. Cal. 2007)

23  (citations omitted).  Additionally, jurisdiction must exist *at the time of filing the*

24  *complaint*.  *Grupo Dataflux v. Atlas Glob. Grp.*, 541 U.S. 567, 570 (2004); *Keene Corp. v. United*

25  *States*, 508 U.S. 200, 207 (1993); *Morongo Band of Mission Indians v. California Bd. Of*

26  *Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988).  In assessing whether 3taps has met its burden

27  to show subject matter jurisdiction at the time of filing, the Court may consider factual material

28  outside the pleadings so long as reasonable inferences are drawn in plaintiff's favor.  *Edison v.*

1  *United States*, 822 F. 3d 510, 517 (9th Cir. 2016).[2]

2          As set forth below, it is apparent that 3taps has not met its burden.  First, it has not shown

3  any threat of particularized injury sufficient to confer standing.  Part I, *infra*.  Not only has it not

4  shown any imminent threat, but the record also conclusively demonstrates otherwise.  Part II,

5  *infra*.  Finally, the Court should exercise its considerable discretion to dismiss this declaratory

6  relief action because of 3taps's unseemly judicial shopping.  Part III, *infra*.

7  **I.      3TAPS LACKS ARTICLE III STANDING BECAUSE IT FAILS TO ALLEGE
           ANY ACTUAL OR IMMINENT REDRESSABLE INJURY.**

8

9          Article III standing requires an injury in fact.  *TransUnion LLC v. Ramirez*, 141 S. Ct.

10  2190, 2203 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016).

11  Plaintiff's injury must be concrete and particularized, and actual or imminent, not conjectural or

12  hypothetical.  *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992).  The "personal stake"

13  required for subject matter jurisdiction ensures that "federal courts do not adjudicate hypothetical

14  or abstract disputes." *TransUnion*, 141 S. Ct. at 2203.  The harm must be concrete and real, not

15  abstract. *Id.*  It also must be redressable by the Court. *Id.* at 2204.  3taps's Amended Complaint

16  fails to meet these requirements.

17          First, 3taps fails to allege facts showing that it will suffer a concrete, real, or imminent

18  harm in the absence of the requested declarations.  Instead, 3taps misconstrues the parties'

19  correspondence and relies on bare conclusory allegations devoid of any facts.  For instance, 3taps

20  states that "[b]ut for the threat of litigation by LinkedIn," 3taps would immediately begin scraping

21  from LinkedIn webpages.  Am. Compl. ¶20.  As evidenced by the correspondence between the

22  parties, LinkedIn has made no such threat and specifically ruled out the possibility of taking

23  immediate action against 3taps.  RJN Ex. 6.  Similarly, 3taps states that it is "harmed by its

24  inability to scrape LinkedIn in that it is being denied a valuable resource (information regarding

25  LinkedIn's over half billion users) that is much sought after by data scrapers."  *Id.*  But 3taps does

26

27  _____
[2]     3taps did not object to the Court taking judicial notice of the correspondence between the
parties relied upon in its Complaint, it simply offered its own interpretation of that
28  correspondence. *See Plaintiff 3taps, Inc.'s Opposition to Defendant LinkedIn's Motion to
Dismiss* at 3-4 (hereafter "Opp.").

MOTION TO DISMISS
18-cv-00855-EMC

1   not allege that it has ever attempted to scrape data from LinkedIn webpages, nor does it allege

2   that LinkedIn has ever hindered its ability to do so.  Further, 3taps provides no facts regarding its

3   need for LinkedIn data or why LinkedIn data is valuable to its business.  It does not identify lost

4   business opportunities, making only the conclusory allegation that LinkedIn data would be

5   beneficial to its business and prospects.  Am. Compl. ¶20.  This threadbare, abstract, and

6   hypothetical harm is insufficient.  That 3taps failed to provide any factual allegations even after

7   given the opportunity to amend shows there is no real and immediate harm.  3taps's failure to

8   articulate any harm that either (a) has occurred, or (b) is imminently threatened to occur, is

9   dispositive as to subject matter jurisdiction.  Without an immediate and concrete prospect of harm

10  of the type normally adjudicated by federal courts, such as physical, monetary, or reputational

11  injury, 3taps simply does not have standing to bring its claim.  *See TransUnion,* 141 S. Ct at

12  2211.

13       Second, even if 3taps could articulate an imminent harm, the requested declarations would

14  not redress it.  3taps did not ask for a declaration that it can scrape data from LinkedIn's servers

15  without threat of legal jeopardy.  Instead, 3taps seeks an advisory ruling that three specific legal

16  theories will not apply to its hypothetical future scraping conduct.  Even assuming 3taps had

17  supplied sufficient facts, *but see* Part II, *infra*, that would not answer its hypothetical question

18  about whether it can start acquiring data in an unauthorized fashion without legal jeopardy.  *See*

19  *Lujan*, 504 U.S. at 561 (standing requires that injury be redressable by a favorable decision);

20  *Hobbs v. Sprague*, 87 F. Supp. 2d 1007, 1012 (N.D. Cal. 2000) (no standing when court unable to

21  discern whether Plaintiff's alleged injury would be redressed by a favorable decision).  While a

22  declaratory judgment action need not resolve every possible dispute between two parties, it must

23  completely resolve a concrete controversy.  *See Calderon v. Ashmus*, 523 U.S. 740, 747-49

24  (1998) (declaratory judgement must completely resolve a concrete controversy susceptible to

25  conclusive judicial determination).

26       Here, there is only one (hypothetical) controversy—whether 3taps can scrape data from

27  LinkedIn webpages without legal jeopardy based on some hypothetical and unknown plan by

28  3taps to scrape that data, use, and/or sell it.  Carving out some legal theories and ignoring others

- 9 -

MOTION TO DISMISS
18-cv-00855-EMC

1    that might apply to its undefined course of action only underscores the degree to which 3taps

2    seeks an advisory ruling, which would serve no useful purpose as the ruling could not dictate

3    whether 3taps may lawfully engage in any specific activity.  *See United States v. State of Wash.*,

4    759 F.2d 1353, 1357 (9th Cir. 1985) ("Declaratory relief should be denied when it will neither

5    serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the

6    proceedings and afford relief from the uncertainty and controversy faced by the parties."); *Id.* at

7    1361 (Ferguson, C.J., Schroeder, C.J., concurring) (declaratory judgment of district court

8    provided no guidance for the parties involved and consequently served no useful purpose).

9         There are numerous other legal constraints potentially applicable to scraping activity 3taps

10    might choose to undertake, depending on the manner in which it were undertaken, including other

11    federal statutes, breach of contract, state statutes, and state tort theories.  Indeed, 3taps has already

12    been enjoined from engaging in scraping activity by Judge Breyer.  *See* RJN Ex. 1; *see also*

13    *Craigslist, Inc. v. 3taps, Inc.,* No. 3:12-CV-03816-CRB, 2015 WL 5921212, at *1 (N.D. Cal. Oct.

14    11, 2015) ("The Court entered an order enjoining 3taps from similarly violating Craigslist's

15    Terms of Use, among other things.").  The requested declarations could not allay 3taps's concern

16    of legal risk from scraping.  Accordingly, 3taps also cannot meet the redressability element of

17    standing.  *See California v. Texas*, 141 S. Ct. 2104, 2116 (2021) (Article III standing requires that

18    the requested remedy will redress plaintiff's injuries); *Mayfield v. United States*, 599 F.3d 964,

19    972–73 (9th Cir. 2010) (no standing when declaratory judgment would not provide relief or

20    redress injury).

21         The Amended Complaint should be dismissed under Rule 12(b)(1) because 3taps fails to

22    allege, and indeed lacks, the redressable harm necessary to demonstrate Article III standing.

23    **II.    THE AMENDED COMPLAINT DOES NOT DEMONSTRATE A RIPE
         CONTROVERSY BETWEEN LINKEDIN AND 3TAPS.**

24

25         Article III jurisdiction requires an actual controversy that is imminent and concrete.

26    Declaratory relief is no exception: A party seeking relief under the Declaratory Judgment Act

27    must allege facts sufficient to establish the existence of such a controversy.  *Shalaby v.*

28    *Jacobowitz*, No. C 03-0227-CRB, 2003 WL 1907664, at *2 (N.D. Cal. Apr. 11, 2003), *aff'd*, 138

- 10 -

F. App'x 10 (9th Cir. 2005).  To determine whether a complaint rises to the level of an actual

controversy, the court must examine whether "the facts alleged, under all the circumstances, show

that there is a substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v.*

*Genentech, Inc.*, 549 U.S. 118, 127 (2007).  "In other words, the adversarial relationship must

reach the point where there is a specific need for the court to declare the rights of the parties."

*Millennium Lab'ys, Inc. v. eLab Consulting Servs.,* No. 12CV1109 JM DHB, 2012 WL 2721919,

at *3 (S.D. Cal. July 9, 2012).

The controversy must be "definite and concrete."  *Pub. Serv. Comm'n of Utah v. Wycoff*

*Co.*, 344 U.S. 237, 242–43 (1952).  Where no "definite and concrete" case or controversy exists,

the dispute seeks "an advisory opinion based on 'a hypothetical state of facts.'"  *Sobini Films v.*

*Tri-Star Pictures Inc.*, No. CV 01-06615 ABCRNBX, 2001 WL 1824039, at *2, (C.D. Cal. Nov.

21, 2001) (internal citation omitted).  Such a dispute "fails to invoke federal court jurisdiction."

*Id.*; *Coffman v. Breeze Corps.*, 323 U.S. 316, 324 (1945) (declaratory judgment "is available in

the federal courts only in cases involving an actual case or controversy . . . and it may not be

made the medium for securing an advisory opinion in a controversy which has not arisen."

(internal citations omitted)).

### A.   3taps's Allegations Regarding Its Own Conduct Do Not Demonstrate An Actual Controversy.

The Amended Complaint fails to allege *any* facts showing a real and immediate

controversy between 3taps and LinkedIn.  3taps's bald assertion that in 2018 it decided it wanted

to collect data from LinkedIn webpages, that it "stands ready, willing, eager and able" to scrape

data from LinkedIn's website, and "has the means and know how to begin doing so immediately,"

fails to establish any scraping conduct, or definite plan to engage in scraping activity, giving rise

to a substantial, immediate, and real controversy.  *See Merit Healthcare Int'l, Inc. v. Merit Med.*

*Sys., Inc.*, 721 Fed. Appx. 628, 630 (9th Cir. 2018) (declaratory judgment claim that there would

be trademark confusion was insufficient where the plaintiff had not yet made any such sales nor

alleged or offered proof that it had "imminent plans" to do so); *San Diego Cty. Gun Rts. Comm. v.*

MOTION TO DISMISS
18-cv-00855-EMC

*Reno*, 98 F.3d 1121, 1126–27 (9th Cir. 1996) (immediacy requirement not met when plaintiffs alleged they "wish and intend to engage in unspecified conduct" violating act without articulating concrete plans to do so, and without identifying a threat of arrest or prosecution made against them).  These vague and conclusory allegations are insufficient to establish a real controversy. *Giannini v. Am. Home Mortg. Servicing, Inc.*, No. C11-04489 TEH, 2012 WL 298254, at *4 (N.D. Cal. Feb. 1, 2012) (dismissing action when complaint made only conclusory allegations regarding subject of declaratory request; factual allegations were insufficiently specific to sustain the declaratory judgment sought); *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 607–08 (D. Nev. 2011) (Plaintiff failed to plead sufficient jurisdictional facts to establish a substantial case or controversy where trademark was not in use and Plaintiff did not show definite intent to begin using mark; vague and conclusory statements insufficient).  The fact that 3taps failed to allege any real facts regarding its proposed activity beyond these bare conclusions even after being given the opportunity to amend its complaint to include such facts highlights its inability to do so.

Indeed, the lack of immediacy is evidenced by the fact that 3taps's Amended Complaint does not provide any facts regarding actual steps it has taken to implement its plan to access and use data from LinkedIn's servers, since it allegedly determined to do so in early 2018.  3taps's failure to allege that it has taken any action in furtherance of its plan in nearly four years reveals that there is no real and immediate controversy; rather, what 3taps actually seeks in this matter is an impermissible advisory opinion based on unalleged hypothetical facts.  *See Coffman,* 323 U.S. at 324 (The declaratory judgment procedure "may not be made the medium for securing an advisory opinion in a controversy which has not arisen." (internal citations omitted)).

3taps resorts to trying to manufacture an immediate, ripe controversy by misquoting its pre-suit correspondence with LinkedIn.  Specifically, the Amended Complaint alleges that in response to a January 16, 2018 letter from 3taps's counsel generically asserting that "3taps intends to begin scraping publicly-available data from LinkedIn.com in the coming weeks" (RJN Ex. 5), LinkedIn supposedly responded with a letter stating that "the CFAA prohibited 3taps from collecting and using data from LinkedIn's publicly-available webpage" and that "any such [scraping] activity by 3taps would violate a federal statute, and specifically, the CFAA."  Am.

MOTION TO DISMISS
18-cv-00855-EMC

Compl. ¶¶3, 18, 23, 27, 32.  Those words *do not appear in the letter in that fashion*.  RJN Ex. 6.

3taps cobbled together two different parts of a legal analysis to make it sound like a specific

threat.  LinkedIn's letter does not threaten 3taps.  Rather, LinkedIn asserted it would not even

consider legal action until after the hiQ appeal was resolved.  *Id*. at 2.

3taps and its primary investor, Hard Yaka, decided to manufacture a controversy to try to

get out from under an existing permanent injunction instead of going back to that judge and

seeking relief in a proper fashion.  Hard Yaka and Mr. Kidd appear to have heard about the hiQ

injunction, bought into hiQ, and then tried to create a controversy like the one between LinkedIn

and hiQ.  LinkedIn did not take the bait.  3taps's deliberate misrepresentation of LinkedIn's letter

underscores the degree to which this entire "dispute" is manufactured.  Far from establishing a

real and immediate controversy as the Amended Complaint alleges, the pre-suit correspondence

of the parties evidences the lack of an immediate and real controversy.  *See Purely Driven Prod.,

LLC v. Chillovino, LLC*, 171 F.Supp.3d 1016, 1019 (C.D. Cal. 2016) (finding "no case of actual

controversy between the parties" when "there is no evidence that Defendants have threatened to

file or filed any infringement claims against Plaintiffs, and Defendants expressly disclaimed

threatening Plaintiffs with an infringement action").

The Amended Complaint's failure to allege *any facts* about steps 3taps plans to take to

scrape data from LinkedIn webpages is fully consistent with the reality that 3taps does not have

now, and has never had, an actual and concrete plan to scrape data from LinkedIn's servers.

Because 3taps seeks a declaration based on conduct it does not allege it has undertaken and has

no concrete plans to undertake, the Amended Complaint fails to invoke this Court's declaratory

judgment jurisdiction.  *See Clark v. City of Seattle*, 899 F.3d 802, 809 (9th Cir. 2018) (affirming

dismissal when alleged harm was speculative and based on events that had not yet occurred and

may never occur, and holding that "[f]or a case to be ripe, it must present issues that are 'definite

and concrete,' not hypothetical or abstract").

**B.   3taps Cannot Bootstrap Its Way To Ripeness By Relying On The Controversy
Between hiQ And LinkedIn.**

Unable to plead facts regarding its own conduct that evidence an actual and immediate

controversy, 3taps relies on the unrelated controversy between LinkedIn and hiQ.  Indeed, 3taps seeks "essentially the same declaratory judgment that hiQ is seeking against LinkedIn."  Am. Compl. ¶4.  In an attempt to relate this case to the controversy between hiQ and LinkedIn, 3taps mischaracterizes the dispute with hiQ as "The Dispute Leading to This Action."  *Id.* ¶12.  3taps is trying to use someone else's dispute as a bootstrap to establish ripeness in its own case.  That effort fails to demonstrate a ripe controversy between 3taps and LinkedIn.

The Amended Complaint does not allege any business relationship between 3taps and hiQ that might even theoretically support the bootstrapping theory by showing an actual controversy between 3taps and LinkedIn, such as an allegation that 3taps is a distributor of hiQ's products.  Instead, the only connection alleged in the Amended Complaint between 3taps and hiQ is that they share a common investor called Hard Yaka.  *Id.* ¶2.  The fact that a common investor wants to fund multiple lawsuits against LinkedIn does not make for an actual controversy between LinkedIn and 3taps.  If anything, this allegation strongly suggests that this lawsuit is being pursued for improper ancillary purposes unrelated to the actual interests of 3taps.

Further, there is nothing in hiQ's pleadings that 3taps can rely upon to explain exactly how it was collecting data in order to manufacture a concrete dispute with LinkedIn.  This leaves LinkedIn in the dark about how to frame a theoretical concern with 3taps for assessment by the Court.  hiQ pled that it has "used a variety of software and manual means to gather" information from LinkedIn webpages.  *See* RJN Ex. 3 ¶18.  3taps cannot even allege this much.  3taps also cannot allege threats of litigation or implementation of technology to block specifically 3taps from accessing data from LinkedIn servers, such as targeted IP blocks.  *Compare id.* ¶34, *with* RJN Exs. 5-6 (letters detailing lack of current intent to sue 3taps).  Indeed, the Court previously acknowledged that LinkedIn's general technical barriers pass legal muster.  *See hiQ Labs, Inc. v. LinkedIn Corp.,* 273 F. Supp. 3d 1099, 1113 (N.D. Cal. 2017), *aff'd and remanded,* 938 F. 3d 985 (9th Cir. 2019) ("This is not to say that a website like LinkedIn cannot employ, *e.g*., anti-bot measures to prevent, *e.g*., harmful intrusions or attacks on its server."), *cert. granted, judgment vacated,* 141 S. Ct. 2752 (2021).  The bootstrapping effort simply does not fill in the gaps to create an actual controversy.

1    **III.    IN ALL EVENTS, THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS.**

2

3         The Court has discretion to dismiss a declaratory relief case even where, unlike here,

4    there is subject matter jurisdiction.  *MedImmune*, 549 U.S. at 136 (courts have discretionary

5    power to refuse declaratory relief cases).  The Court should exercise its considerable discretion

6    for two independent reasons.  First, 3taps has manufactured this lawsuit for the improper purpose

7    of avoiding an existing permanent injunction.  Second, the declaratory relief 3taps seeks will not

8    resolve a concrete dispute or serve a useful purpose.

9         **A.    The Court Should Decline To Exercise Jurisdiction Because Of Unseemly Judge-Shopping By 3taps.**

10

11        3taps misrepresented the nature of this purported dispute to avoid another judge of this

12   Court and should not be permitted to maintain this action in equity in light of its conduct.

13   Specifically, this case is a disguised effort to do away with Judge Breyer's injunction from the

14   *Craigslist v. 3taps* case without meeting the required standard for doing so.  The practical effect

15   of Judge Breyer's injunction is that 3taps cannot freely engage in any scraping given the CFAA's

16   prohibition on *knowing* access without authorization.  Instead of attempting to dissolve that

17   injunction through proper channels, 3taps has made repeated misrepresentations that this dispute

18   is "related" to the *hiQ v. LinkedIn* matter in order to get before this Court and avoid Judge Breyer.

19   Indeed, both Complaints and 3taps's motion to relate contain several misrepresentations; namely

20   (1) that the hiQ dispute led to this dispute; (2) that 3taps wants to engage in the same activity as

21   hiQ; (3) that LinkedIn sent 3taps a cease-and-desist letter accusing it of violating the CFAA

22   similar to the letter sent to hiQ; and (4) that the facts of this case are nearly identical to the facts

23   leading to the hiQ case.  *See* Compl. ¶¶2, 16, 22; Am. Compl. ¶¶ 2, 16, 23, 27, 32;  RJN Ex. 7 at

24   1, 3.  None of these assertions are true.  The Court should not countenance this unseemly judge-

25   shopping and should exercise its considerable discretion to dismiss this action.

26        3taps's gamesmanship is further evident from the fact that it avoided a relationship with

27   the Craigslist Case (RJN, Ex. 7), but then cited to that case in its opposition to LinkedIn's motion

28   to dismiss the original Complaint as evidence of the scraping activity 3taps plans to do to

- 15 -

1   LinkedIn.  *See* 3taps, Inc.'s Opposition to Defendant's Motion to Dismiss, Dkt. 56 at 11.  3taps's

2   gamesmanship should not be allowed and is independent grounds for the Court to exercise its

3   discretion to dismiss this case.

4          **B.        The Court Should Decline To Exercise Jurisdiction Because The Requested
               Relief Will Not Resolve A Concrete Controversy Or Serve A Useful Purpose.**

5

6          Even if there were subject matter jurisdiction (which there is not), the Court should use its

7   considerable discretion to dismiss this action because the declaratory relief requested by 3taps

8   will not resolve a concrete controversy, serve a useful purpose, or finally determine the rights of

9   the parties.  *See Theme Promotions, Inc. v. News Am. Mktg*. FSI, 546 F.3d 991, 1010 (9th Cir.

10  2008) (declaratory judgment is only appropriate where it would completely resolve the

11  concrete controversy.); *McGraw-Edison Co. v. Preformed Line Prod. Co*., 362 F.2d 339, 343 (9th

12  Cir. 1966) ("It is well settled, however, that a declaratory judgment may be refused where it

13  would serve no useful purpose … or would not finally determine the rights of the parties ….  Nor

14  should declaratory relief be granted where it would result in piecemeal trials of the various

15  controversies presented or in the trial of a particular issue without resolving the entire controversy

16  ….").  As discussed above, 3taps's requested relief would not resolve the one (hypothetical)

17  controversy of whether 3taps can scrape data from LinkedIn webpages, and so cannot meet the

18  redressability element of standing.

19         Even if this Court were to conclude that 3taps has demonstrated ripeness and an imminent

20  threat of harm, the Court should still decline to exercise jurisdiction because the requested

21  declaratory relief would serve no useful purpose as the ruling could not dictate whether 3taps may

22  lawfully engage in any specific activity.  *See United States v. State of Wash*., 759 F.2d at 1357

23  ("Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and

24  settling the legal relations in issue nor terminate the proceedings and afford relief from the

25  uncertainty and controversy faced by the parties.").  The case as currently constituted will not

26  resolve the dispute.  There are a number of other legal constraints that are potentially applicable

27  to any scraping activity that 3taps might hypothetically choose to undertake.  Contracts, other

28  federal and state statutes, and other state tort theories are all potentially applicable to this

- 16 -

presently unknown future course of action.  Depending on how 3taps purports to gather and

commercialize personal information of LinkedIn members, 3taps could be in violation of a host of

consumer information privacy laws.  The requested declaration therefore will not answer 3taps's

question about whether it can scrape without legal jeopardy, and the Court should refuse

jurisdiction for this independent reason.

## <u>CONCLUSION</u>

3taps lacks standing to pursue its declaratory relief claims, has failed to demonstrate an

actual controversy, and in all events the Court should exercise its discretion to dismiss this

unnecessary lawsuit brought for improper purposes.


Dated: December 7, 2021                                    Orrick, Herrington & Sutcliffe LLP

                                                          By:        */s/ Annette L. Hurst*
                                                                  ANNETTE L. HURST
                                                                 Attorneys for Defendant
                                                                  LinkedIn Corporation