Thomas V. Christopher (Bar No. 185928)
The Law Offices of Thomas V. Christopher
The Salesforce Tower
415 Mission Street, 37th Floor
San Francisco, CA 94105
415-659-1805
Email: Thomas@ThomasChristopherLaw.com

Attorney for Plaintiff 3taps, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| 3TAPS, INC., a Delaware corporation,<br><br>              Plaintiff,<br>v.<br><br>LINKEDIN CORPORATION, a Delaware corporation,<br><br>              Defendant. | Case No. 3:18-cv-00855-EMC<br><br>**PLAINTIFF 3TAPS, INC.'S OPPOSITION TO DEFENDANT LINKEDIN'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Judge:        Hon. Edward M. Chen<br>Hearing:     Apr. 7, 2022 at 1:30 p.m.<br>Courtroom:  5<br>Trial Date:   None Set |

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................1

II.   STATEMENT OF FACTS .......................................................................................2

   A.    3TAPS' ALLEGATIONS ..................................................................................2

   B.    LINKEDIN'S REQUEST FOR JUDICIAL NOTICE .....................................3

      1.    3taps' Letter to LinkedIn ..............................................................................3

      2.    LinkedIn's January 24, 2018 Response .........................................................4

III.  LEGAL STANDARD ...............................................................................................4

IV.   DISCUSSION ............................................................................................................5

   A.    3taps' Allegations Demonstrate Standing .........................................................5

      1.    Injury-In-Fact ................................................................................................6

      2.    Redressability ................................................................................................9

   B.    3taps' Allegations Demonstrate Existence of an Actual Controversy ............9

      1.    3taps' Allegations Establish a Substantial Controversy of Sufficient Immediacy
         .................................................................................................................10

      2.    The Dispute Between 3taps and LinkedIn Demonstrates a Ripe Controversy . 13

   C.    The Court Should Exercise its Discretion and Consider the Merits .............14

V.    CONCLUSION ......................................................................................................16

1

2

## **TABLE OF AUTHORITIES**

3

4

**CASES**

5

Allstate Ins. Co. v. Davis

6

   430 F.Supp.2d 1112 ................................................................................ 9

American States Ins. Co. v. Kearns,

7

   15 F.3d 142 ..................................................................................... 10

8

Brillhart v. Excess Ins. Co.,

9

   316 U.S. 491 .................................................................................. 10

Calderon v. Ashmus,

10

   523 U.S. 740 ..................................................................................... 9

11

craigslist Inc. v. 3taps Inc.,

   964 F.Supp.2d 1178 (N.D. Cal. 2013) ........................................................ 4

12

Evolutionary Intelligence LLC v. Yelp, Inc.,

13

   2013 WL 12173933 ......................................................................... 15

14

Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,

   528 U.S. 167 ..................................................................................... 6

15

Gov't Employees Ins. Co. v. Dizol,

16

   133 F.3d 1220 ................................................................................. 10

17

Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.,

   805 F.Supp.2d 888, ........................................................................... 4

18

GTE Directories Pub. Corp. v. Trimen America, Inc.

19

   (11th Cir. 1995) 67 F.3d 1563 ........................................................... 5, 11

Harris v. United States Fid. & Guaranty Co.

20

   569 F2d 850 ...................................................................................... 9

21

In re LinkedIn User Priv. Litig.,

   932 F.Supp.2d 1089 ........................................................................... 4

22

In re Zappos.com, Inc.,

23

   888 F.3d 1020 ................................................................................... 7

24

Lockwood v. Lopez,

   1996 WL 162957 ............................................................................ 16

25

Lujan v. Defs. of Wildlife,

26

   504 U.S. 555 ..................................................................................... 6

27

MedImmune, Inc. v. Genentech, Inc.,

   549 U.S. 118 ............................................................................... 5, 11

28

Minn. Mining & Mfg. Co. v. Norton Co.,

   929 F.2d 670 ................................................................................... 14

Native Vill. of Kivalina v. ExxonMobil Corp.,
    696 F.3d 849 ................................................................................................................. 5

Oracle USA, Inc. v. Rimini Street, Inc.,
    879 F.3d 948 ................................................................................................................. 3

Oroville Union High Sch. Dist.,
    228 F.3d 1092 ............................................................................................................... 6

Purely Driven Products, LLC v. Chillovino, LLC,
    171 F.Supp.3d 1016 ................................................................................................... 12

Rimini Street, Inc. v. Oracle USA, Inc.,
    139 S.Ct. 873 (2019) .................................................................................................. 3

SanDisk Corp. v. STMicroelectronics, Inc.
    (Fed. Cir. 2007) 480 F.3d 1372 ................................................................................ 5

Sorenson v. Lexar Media
    2008 WL 11344635 ................................................................................................... 15

Surefoot LC v. Sure Foot Corp.
    (10th Cir. 2008) 531 F.3d 1236 .............................................................................. 11

Wilton v. Seven Falls Co.,
    515 U.S. 277 ............................................................................................................... 14

Plaintiff 3taps, Inc. ("3taps") opposes Defendant LinkedIn Corporation's ("LinkedIn") motion to dismiss the First Amended Complaint ("FAC").  Not only has 3taps sufficiently alleged both standing and an actual controversy, but LinkedIn's attempt to cast aspersions by suggesting that 3taps engaged in "judge-shopping" is based on a false narrative and a misunderstanding of the rules for relating cases in this District.

## I.   INTRODUCTION

3taps is a data scraping business.  LinkedIn is the largest professional networking site in the world and as such is a veritable goldmine of publicly-available information for data scrapers like 3taps.  As this Court is well aware from LinkedIn's vigorous defense in the related hiQ litigation, LinkedIn aggressively fights any scraping of information from its servers.  LinkedIn does so through its use of a variety of means, including technological measures, the terms of its User Agreement, and, relevant here, baseless litigation tactics.

In a related case filed in this Court, LinkedIn sent a cease-and-desist letter to hiQ Labs, Inc. ("hiQ"), another data scraping business, arguing that hiQ's scraping of LinkedIn's servers violates, inter alia, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA").  See hiQ Labs v. LinkedIn Corp, No. 3:17-cv-03301-EMC (N.D. Cal.) (the "hiQ Litigation"); Def.'s Req. Judicial Notice ["RJN"] Ex. 3.  Accordingly, hiQ brought suit against LinkedIn seeking, among other things, a declaration that its scraping of publicly-available information on LinkedIn's website does not violate the CFAA.  This Court subsequently granted hiQ's motion for a preliminary injunction and indicated that hiQ would likely succeed on the merits of its CFAA claim because the CFAA does not extend to publicly-available data.

When 3taps informed LinkedIn that it would begin scraping its website in light of this Court's order in the hiQ Litigation, LinkedIn, despite that order, once again asserted that doing so would violate the CFAA.  LinkedIn's vigorous defense in the hiQ Litigation, coupled with its continued insistence to 3taps that scraping would violate the

1

CFAA notwithstanding this Court's order on the motion for preliminary injunction, led to this action for declaratory relief.  Specifically, 3taps seeks a declaration that its actions will not violate the CFAA; California's Computer Data Access and Fraud Act ("CFADA"), Penal Code § 502; or constitute a trespass.

LinkedIn now moves to dismiss the FAC on three grounds: (1) 3taps lacks standing because it fails to allege a cognizable harm, (2) 3taps fails to show the existence of an actual controversy, and (3) the Court should exercise its discretion to dismiss. Because none of these arguments have merit, LinkedIn's motion should be denied in its entirety.

## II.   STATEMENT OF FACTS

### A.   3TAPS' ALLEGATIONS

3taps is engaged in the business of scraping—that is, using automated means to access publicly-available facts from the internet—and using, or providing to others for use, those publicly-available facts in innovative and creative ways primarily designed to enhance user experiences and safety.  (FAC ¶ 10.)  One of 3taps' investors is Hard Yaka, Inc., which is also an investor in another scraping company, hiQ.  (Ibid.)  hiQ, in turn, is the plaintiff in the hiQ Litigation.  (Ibid.)

The hiQ Litigation arose after LinkedIn sent hiQ a cease-and-desist letter demanding that it stop scraping LinkedIn's website.  (FAC ¶ 12.)  In response, hiQ sent a letter stating that LinkedIn's actions were threatening hiQ's business and efforts to obtain financing.  (FAC ¶ 13.)  When hiQ did not receive a response, it filed suit seeking, among other things, a declaration that hiQ would not violate the CFAA by accessing and using publicly-available facts and information on LinkedIn's website.  (FAC ¶ 14.)  This Court then granted hiQ's motion for a preliminary injunction, holding specifically that the

CFAA permitted hiQ to scrape publicly-available materials on the LinkedIn webpage. (FAC ¶ 15.)

Relying on this Court's holding in the hiQ Litigation, 3taps decided to begin scraping publicly-available information from the LinkedIn website.  (FAC ¶ 16.)  When 3taps informed LinkedIn of its intention, LinkedIn asserted that the legal basis of this Court's decision was "misplaced" and that the CFAA prohibited 3taps' scraping activities.  (FAC ¶¶ 17–18.)  As a result, 3taps initiated this action seeking a declaration that it will not violate the CFAA by accessing and using publicly-available data on LinkedIn's website.  (FAC ¶ 19.)  The threat of ruinous litigation by  LinkedIn (which has demonstrated through its actions in the hiQ litigation that it will aggressively litigate against data scrapers) is the only thing preventing 3taps from immediately scraping LinkedIn's website, as 3taps is ready, willing, eager and able to scrape publicly-available data from LinkedIn.  (FAC ¶ 20.)

## B.    LINKEDIN'S REQUEST FOR JUDICIAL NOTICE

### 1.    3taps' Letter to LinkedIn

On January 16, 2018, 3taps provided notice to LinkedIn that it "intends to begin scraping publicly-available data from LinkedIn.com in the common weeks."  (RJN Ex. 2.)  This decision was based on (a) this Court's order granting a preliminary injunction in the hiQ Litigation and (b) Oracle USA, Inc. v. Rimini Street, Inc., 879 F.3d 948, 962 (9th Cir. 2018), reversed on other grounds by Rimini Street, Inc. v. Oracle USA, Inc., 139 S.Ct. 873 (2019), which held that "taking data using a *method* prohibited by the applicable terms of use, when taking itself is generally permitted, does not violate"

California's Computer Data Access and Fraud Act ("CFADA"), Penal Code § 502. (Italics in original.)

### 2. LinkedIn's January 24, 2018 Response

On January 24, 2018, LinkedIn directed a letter to 3taps flatly rejecting 3taps' contention that scraping does not violate the CFAA and claiming that the legal basis of this Court's preliminary injunction order in the hiQ Litigation was "misplaced." Relying instead on craigslist Inc. v. 3taps Inc., 964 F.Supp.2d 1178 (N.D. Cal. 2013) (the "craigslist Litigation"), LinkedIn claimed that a website owner could invoke the CFAA to prohibit 3taps from scraping its data. As to that, LinkedIn noted, "[w]hile LinkedIn does not intend to consider legal action with respect to 3taps's [sic] January 16, 2018 letter until the Ninth Circuit renders its decision [in the appeal of the hiQ Litigation], we want to be clear that 3taps has no authorization to access the LinkedIn website and LinkedIn's servers." Lastly, LinkedIn dismissed as "incorrect" the applicability of Oracle USA to this case, asserting that its holding applies only where one had authorization in the first instance to access certain information. "By contrast, 3taps does not have and has never had permission to scrape LinkedIn's servers and extract its data en masse, must circumvent LinkedIn's technical protection measures to do so, and unquestionably going forward is not 'authorized in the first instance' to access and scrape LinkedIn's servers."

## III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction; they are authorized only to exercise jurisdiction pursuant to Article III of the U.S. Constitution and federal laws enacted thereunder. Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc., 805 F.Supp.2d 888, 896 (N.D. Cal. 2011). Hence, an Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. In re LinkedIn User Priv. Litig., 932 F.Supp.2d 1089,

1092 (N.D. Cal. 2013).  However, in order to satisfy the Article III standing requirement, a plaintiff seeking declaratory relief is not required to take an action that might expose it to liability *before* it seeks a court declaration regarding the legality of that proposed course of action.  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007); SanDisk Corp. v. STMicroelectronics, Inc. (Fed. Cir. 2007) 480 F.3d 1372, 1382 ("SanDisk need not 'bet the farm,' so to speak, and risk a suit for infringement . . . before seeking a declaration of its legal rights") GTE Directories Pub. Corp. v. Trimen America, Inc. (11th Cir. 1995) 67 F.3d 1563, 1568 ("[t]he practical effect of finding no case or controversy in the instant case would be to force GTEDPC to contact Trimen's clients thereby subjecting itself to potential liability before allowing it to receive a declaratory judgment. GTEDPC is not required to take such action for an actual case or controversy to exist.")

## IV.  DISCUSSION

LinkedIn argues that 3taps has not articulated a harm that is redressable by the relief sought and that it fails to demonstrate the existence of an actual controversy.  In the alternative, it asks the Court to exercise its discretion and dismiss this case.  3taps's allegations, however, are more than sufficient to make these showings, and LinkedIn provides no basis for the Court to decline consideration of this dispute.

### A.    3taps' Allegations Demonstrate Standing

LinkedIn first asserts that 3taps fails to demonstrate standing since its allegations cannot satisfy the harm or redressability requirements.  "Standing is a jurisdictional issue deriving from the 'case or controversy' requirement of Article III of the United States Constitution."  Native Vill. of Kivalina v. ExxonMobil Corp., 696 F.3d 849, 867 (9th Cir.

2012) (citing <u>Cole v. Oroville Union High Sch. Dist.</u>, 228 F.3d 1092, 1098 (9th Cir. 2000)).  To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that injury will be redressed by a favorable decision.  <u>Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.</u>, 528 U.S. 167, 180–81 (2000); <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561–62 (1992).

A plaintiff establishes an injury-in-fact when it shows that it has or may suffer "an invasion of a legally protected interest" that is "concrete and particularized" as opposed to being purely "conjectural or hypothetical."  <u>Spokeo</u>, <u>supra</u>, 136 S. Ct. at 1548 (quotation marks and citation omitted).  To be "particularized," an injury "must affect the plaintiff in a personal and individual way."  <u>Id.</u> (quoting <u>Lujan</u>, 504 U.S. at 560 n.1).  To be "concrete," the injury "must actually exist"—a purely abstract concern will not do.  <u>Id.</u> To establish a traceable injury, there must be "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  <u>Lujan</u>, 504 U.S. at 560 (quotation marks and citation omitted) (alteration omitted).  It must also be "likely" as opposed to merely "speculative" that the injury will be "redressed by a favorable decision."  <u>Id.</u> at 561 (quotation marks and citation omitted).

### 1.  **Injury-In-Fact**

When a plaintiff seeks declaratory relief, as 3taps does here, the threat must be real, not purely hypothetical, to confer Article III standing.  (Rutter Group Prac. Guide

Fed. Civ. Pro. Before Trial Ch. 2E-2 § 2:4166.)  "A plaintiff threatened with future injury has standing to sue 'if the threatened injury is certainly impending, or there is a substantial risk the harm will occur.' "  In re Zappos.com, Inc., 888 F.3d 1020, 1024 (9th Cir. 2018) (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)).

The FAC meets these requirements.  It identifies 3taps as a data scraping business. (FAC ¶ 10.)  It correctly alleges that LinkedIn's website is "a treasure trove of publicly-available information," and the data on its website is "extremely valuable to data scrapers such as 3taps."  (Id. ¶ 11.)  The FAC further alleges that 3taps is "ready, willing, eager and able" to begin scraping LinkedIn and would do so immediately but for the threat of litigation from LinkedIn.  (Id. ¶ 20.)  Thus, LinkedIn's contention in the motion to dismiss that 3taps merely "makes vague allegations that it may someday scrape Linkedin" is simply at odds with the actual allegations of the FAC.

The threat to 3taps from LinkedIn here is not purely speculative because LinkedIn has previously engaged in aggressive litigation against hiQ for doing that which 3taps has proposed to do – scrape publicly-available information from LinkedIn.  Moreover, when 3taps informed LinkedIn of its intent to scrape the LinkedIn website, LinkedIn expressly refused to permit that scraping, and it continued to insist that the CFAA *does* apply to publicly-available information despite this Court's prior order in the hiQ litigation, which LinkedIn described as "misplaced."  LinkedIn's letter to 3taps also referenced other federal cases in which 3taps had been sued under the CFAA for scraping the type of data it sought to scrape from LinkedIn.  Taken together, Linkedin's letter can only be reasonably read as a theat.  Given the facts and circumstances, the threat of litigation by

1  LinkedIn is not purely speculative.  It is sufficiently impending and the risk of harm

2  substantial enough to establish standing.

3          Standing is also not lacking here because 3taps has wisely chosen not to broadcast

4  to LinkedIn in the FAC the exact timing, nature and specifics regarding how it will go

5  about scraping LinkedIn, and what business use 3taps intends to make of the data it

6  scrapes from LinkedIn.  Giving that level of detail to LinkedIn in the FAC (or anywhere

7  else) would be foolhardy.  LinkedIn has demonstrated that it will use technical blocks to

8  thwart data scrapers, so 3taps' interests are not served by giving LinkedIn a roadmap on

9

10 how and when to implement those measures.

11

12        Moreover, 3taps is not going to tell LinkedIn in advance how it intends to

13 monetize the data its scrapes from LinkedIn because LinkedIn is also in the business of

14 monetizing that very same data.  LinkedIn is a potential competitor of 3taps for the

15 monetization of user data on LinkedeIn's website, so confidentiality regarding 3taps'

16 intended business use of that data is clearly essential.  Indeed, advance disclosure to

17 LinkedIn of how the data will be monetized would be commercial suicide for 3taps given

18

19 that LinkedIn's vastly superior financial resources would allow LinkedIn to beat 3taps to

20 market and undercut its pricing.  Thus, while Linkedin would clearly benefit from having

21 access to 3taps business plans for the data, the fact that such details are not advertised in

22 the FAC makes perfect sense.  Not surprisingly, LinkedIn has failed to cite a single case

23 in any jurisdiction requiring disclosure of such items in a pleading in order to establish

24

25 standing in these circumstances.

26

27

28

2.    **Redressability**

LinkedIn's redressability argument also fails.  It claims that the relief 3taps seeks "will not resolve whether 3taps can scrape data from LinkedIn's servers without threat of legal jeopardy" as there may be other legal constraints on the scraping activity.  To be clear, 3taps is not seeking a declaration that scraping publicly-available data on LinkedIn's website would be free from every conceivably legal theory that could possibly be contrived by LinkedIn's lawyers.  That isn't practical given the boundless imagination of legal minds, and it is far from clear how a court could even issue such a broad sweeping declaration covering every possible legal theory.  However, as noted below, it isn't required to establish "redressability" either.

A declaratory judgment need not resolve all the issues in controversy, as long as it resolves any significant disputed issue.  Harris v. United States Fid. & Guaranty Co. 569 F2d 850, 852 (5th Cir. 1978); see Allstate Ins. Co. v. Davis 430 F.Supp.2d 1112, 1122 (Haw. 2006).  3taps seeks a declaration that the scraping would not violate the primary and most-used legal theories that are alleged against data scrapers in these circumstances. That is sufficient to satisfy the redressability element in an action for declaratory relief. Because the judgment sought here will completely resolve "a concrete controversy" between the parties as it relates to the CFAA, CFADA, and trespass laws, it is not barred by the theoretical existence of other novel claims that might be conjured up by LinkedIn. Calderon v. Ashmus, 523 U.S. 740, 749 (1998).

**B.    3taps' Allegations Demonstrate Existence of an Actual Controversy**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and

other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

The Ninth Circuit has explained that "[t]wo issues are presented to the district court" when it assesses whether it may and should exercise jurisdiction over an action for declaratory judgment.  American States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1994).  "First, the court must inquire whether there is a case of actual controversy within its jurisdiction.  Jurisdiction to award declaratory relief exists only in a case of actual controversy.  We have held that this requirement is identical to Article III's constitutional case or controversy requirement."  Id. at 143.  "Second, if there is a case or controversy within its jurisdiction, the court must decide whether to exercise that jurisdiction."  Kearns, 15 F.3d at 143-44.

In assessing whether to exercise its discretion to entertain a declaratory relief claim over which it possesses subject matter jurisdiction, district courts apply the factors set out in Brillhart v. Excess Ins. Co., 316 U.S. 491. "The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation."  Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998).

### 1.   3taps' Allegations Establish a Substantial Controversy of Sufficient Immediacy

LinkedIn claims 3taps fails to allege any facts to show a real and immediate controversy between the parties since 3taps has not yet actually scraped Linkedin's website.  That argument is misguided.  The Supreme Court has held that a party need not take an action that could expose it to liability before seeking a declaration regarding the

1   legality of that proposed action.   MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127

2   (2007).

3       That principle has been applied in numerous cases and is based on the common

4   sense understanding that a party need not roll the dice on a potentially ruinous course of

5   action before seeking a declaratory judgment.  The law simply does not require 3taps to

6   risk a damages judgment by scraping LinkedIn's website first and seeking declaratory

7   relief on the legality of that scraping later.  See SanDisk Corp. v. STMicroelectronics,

8   Inc. 480 F.3d 1372, 1380–81 (Fed. Cir. 2007) ("SanDisk need not 'bet the farm,' so to

9   speak, and risk a suit  . . . before seeking a declaration of its legal rights") GTE

10  Directories Pub. Corp. v. Trimen America, Inc. (11th Cir. 1995) 67 F.3d 1563, 1568

11  (holding that a party considering a course of action need not take that action and expose

12  itself to liability before seeking declaratory relief: "[t]he practical effect of finding no

13  case or controversy in the instant case would be to force GTEDPC to contact Trimen's

14  clients thereby subjecting itself to potential liability before allowing it to receive a

15  declaratory judgment. GTEDPC is not required to take such action for an actual case or

16  controversy to exist."); Surefoot LC v. Sure Foot Corp. (10th Cir. 2008) 531 F.3d 1236,

17  1241 ("the existence of a case or controversy in the Supreme Court's precedents had

18  never depended on one party taking law-breaking or contract-breaching steps before

19  a declaratory suit could be filed." )

20      LinkedIn also claims there are no allegations of definite plans to scrape the

21  LinkedIn website.  Not true.  3taps specifically alleges in the FAC that it is a data

22  scraping business.  In other words, 3taps is not an entity that is merely thinking about

23  entering the scraping arena one day.  The FAC also alleges that, in light of this Court's

11

order in the hiQ Litigation and in furtherance of its own business goals, 3taps has decided to begin scraping the publicly-available information on LinkedIn's website and that it is ready, willing and able to do so.  The FAC further alleges that 3taps would scrape LinkedIn's website but for LinkedIn's position that scraping violates the CFAA and implied threats of litigation.  It is difficult to imagine what more 3taps could need to allege to demonstrate that it plans to scrape LinkedIn.

Still, LinkedIn insists there is no immediacy present in this case because LinkedIn's January 24, 2018, letter never explicitly threatened to immediately file suit against 3taps.  But LinkedIn itself conveniently omits the context of its own statements, instead accusing 3taps of "manufactur[ing] a controversy," misquoting the pre-suit correspondence, and "cobbl[ing] together" different parts of LinkedIn's legal analysis. 3taps did no such thing.  LinkedIn's objection to 3taps' proposed scraping was that it would violate a federal statute – the CFAA.  As to the CFAA, LinkedIn rejected the legal basis of this Court's order in the hiQ litigation as "misplaced," and referenced instead Craigslist Inc. v. 3Taps Inc., supra, to argue that data scraping is illegal under the CFAA. Those statements by LinkedIn in that context can only be reasonably viewed as a threat. Indeed, what purpose other than a threat could such statements possibly serve?

LinkedIn's reliance on Purely Driven Products, LLC v. Chillovino, LLC, 171 F.Supp.3d 1016, 109 (C.D. Cal. Mar. 22, 2016) does not mandate a different result. There, in the context of an opposition proceeding before the United States Patent and Trademark Office (USPTO), the defendant had filed a notice of opposition to the plaintiffs' application to register a mark.  The district court held that this alone was insufficient to establish a case of actual controversy between the parties.  But under the

facts that are unique to proceedings before the USPTO, it has been recognized that "a simple opposition proceeding in the Patent and Trademark Office *generally* will not raise a real and reasonable apprehension of [an infringement] suit."  Id.

That specific context has nothing to do with the facts here.  Here, (i) a party that is actively litigating against known data scrapers, (ii) over the same behavior that 3taps intends to engage in, (iii) sent a letter to 3taps claiming that this Court wrongly construed the CFAA in granting the hiQ preliminary injunction, and (iv) referenced another court decision in which found data scraping to violate the CFAA.  That is an implied threat of liability under the CFAA, and that is exactly how LinkedIn wanted it to be construed. No other explanation for those statements in that context makes any sense.

### 2.  The Dispute Between 3taps and LinkedIn Demonstrates a Ripe Controversy

Practically ignoring all of 3taps' allegations, LinkedIn claims that 3taps is simply "bootstrap[ping] its way to ripeness."  It is true that 3taps likens its conduct to that of hiQ, but that is only to highlight the material similarities between the two companies. Both are, in essence, data analytics companies.  Where 3taps alleges that it is "in the business of . . . access[ing] and us[ing] publicly-available facts from the internet" (FAC ¶ 10), hiQ described itself as "a tech startup which collects and analyzes public profile information on LinkedIn" (RJN Ex. 3 ¶ 2).  The information so collected is used to "enhance user experiences and safety," in the case of 3taps (FAC ¶ 10), or to "provide its clients—mostly large companies—with insights about their employees," in the case of hiQ (RJN Ex. 3 ¶ 2).  3taps uses "automated means" to access and use the information (FAC ¶ 10), and hiQ uses "a variety of software and manual means to gather this

13

information" (RJN Ex. 3 ¶ 18).  In both cases, LinkedIn revoked authorization to scrape its website.  In light of these similarities, 3taps informed LinkedIn of its intent "to begin collecting and using publicly-available data from LinkedIn's website *as hiQ had been doing*."  (FAC. ¶ 2, italics added.)  3taps also seeks "essentially the same declaratory judgment that hiQ is seeking against LinkedIn in [the hiQ Litigation]."  (FAC ¶ 4.) LinkedIn fails to explain why or how the recognition of these similarities undermines 3taps' standing here or the existence of a controversy.

### C.    The Court Should Exercise its Discretion and Consider the Merits

In a final push for dismissal, LinkedIn argues that this Court should decline to exercise its discretion to consider this case.  "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995).  "Situations justifying exercise of the court's discretion to issue a declaratory judgment include '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' "  Minn. Mining & Mfg. Co. v. Norton Co., 929 F.2d 670, 672 (Fed. Cir. 1991).

Nothing about this dispute makes it unfit for judicial resolution.  First, as demonstrated by the foregoing, 3taps has standing and has demonstrated an actual controversy.  A declaratory judgment here will clarify the legal relations at issue and afford relief from the uncertainty giving rise to this litigation.

14

Second, the only real basis upon which LinkedIn asks the Court to exercise its discretion to dismiss this case is that resolution of the issue here will not resolve "whether 3taps may engage in any specific activity."  However, as noted supra, 3taps seeks a determination that its scraping would not violate the CFAA, the CFADA, and trespass laws.  Resolution of those issues, and not every conceivable theory of liability, is all that is required.  Harris, supra, 569 F2d at 852; see also Calderon, supra, 523 U.S. at 749.

And lastly, LinkedIn's suggestion that 3taps has engaged in "judge shopping" should be resoundingly rejected as it is based on a misguided understanding of the Local Rules of this Court.  3taps opposed LinkedIn's motion to relate this case to the craigslist Litigation because, under this Court's Local Rules, the requirements to relate this matter to the craigslist action were simply not met.  Cases are deemed relatable under Civil Local Rule 3-12 where: "(1) The actions concern substantially the same parties, property, transaction or event; and [¶] (2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges."

The defendants in this case and the craigslist Litigation are different, a critical factor in a court's determination when considering whether to relate cases.  Sorenson v. Lexar Media, 2008 WL 11344635, at * 1 (N.D. Cal. July 25, 2008) (declining to relate case where "the case currently before this Court and the case Plaintiff seeks to relate are filed against different defendants"); Evolutionary Intelligence LLC v. Yelp, Inc., 2013 WL 12173933, at *1 (N.D. Cal. Oct. 8, 2013) (denying to relate cases brought by the same plaintiff against different defendants).

Moreover, when 3taps initiated this litigation, the final judgment in the craigslist Litigation was nearly *three years old*.  The case law in this District holds that a newly-filed case should not be deemed related to a case that has already settled.  <u>Lockwood v. Lopez</u>, 1996 WL 162957 (N.D. Cal. Apr. 3, 1996) ("the court finds no authority supporting the proposition that a case that has been settled and closed may be related to a pending case.")  It is hard to imagine how relating a new case to one settled years ago would avoid the "duplication" of effort between the two cases, as is the goal of Local Rule 3-12.

Considering the similarities between this action and the hiQ litigation (which unlike the craigslist Litigation is a live, pending action) —the nature of the plaintiffs' businesses, the same conduct, the same defendant, the same type of relief on similar claims—it is unsurprising that this Court determined that the cases should be related and, in fact, did relate them.[1]

## V.    CONCLUSION

For the foregoing reasons, 3taps respectfully requests that the Court deny LinkedIn's motion to dismiss in its entirety.  If, however, the Court is inclined to grant the motion in whole or in part, 3taps requests leave to amend in order to correct any deficiencies identified by the Court.

---

[1] Although it is hardly worth mentioning, Linkedin's contention that 3taps is bringing this action "as a disguised effort to do away with Judge' Breyer's injunction" in the craigslist matter lacks any logical coherency.  Judge Breyer enjoined 3taps from scraping craigslist – only craigslist – under the specific and facts of that case.  Nothing in this action seeks relief from that injunction, and that injunction does not in any way prevent 3taps from scraping LinkedIn or any entity other than craigslist.

16

DATED: February 4, 2022

THE LAW OFFICE OF THOMAS V. CHRISTOPHER


By:  /s/ Thomas V. Christopher

_____
Thomas V. Christopher
*Attorney for Plaintiff*
3taps, Inc.