ANNETTE L. HURST (STATE BAR NO. 148738)
ahurst@orrick.com
RUSSELL P. COHEN (STATE BAR NO. 213105)
rcohen@orrick.com
NATHAN SHAFFER (STATE BAR NO. 282015)
nshaffer@orrick.com
DANIEL JUSTICE (STATE BAR NO. 291907)
djustice@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

MARIA N. SOKOVA (SBN 323627)
msokova@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

Attorneys for Defendant
LinkedIn Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| 3taps, Inc.,<br><br>       Plaintiff,<br><br>    vs.<br><br>LinkedIn Corporation,<br><br>       Defendant. | Case No. 18-cv-00855-EMC<br><br>**DEFENDANT LINKEDIN'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Judge:       Hon. Edward M. Chen<br>Hearing Date:  April 7, 2022<br>Hearing Time:  1:30 p.m.<br>Ctrm:       Courtroom 5<br>Trial Date:    None Set |

**INTRODUCTION**

3taps, Inc. spins three tales in its Opposition (Dkt. 63) to manufacture Article III standing. It is apparent from the face of the Amended Complaint and judicially noticeable documents that each of these stories is implausible and cannot serve as a credible basis for an actual case or controversy.

First, 3taps claims that an actual controversy exists because it was forced to sue after it received a "threat of ruinous litigation" from LinkedIn.  Opp. at 3.  The pre-suit correspondence plainly belies this claim.  3taps contacted LinkedIn out of the blue through a single pre-suit letter and LinkedIn's response made clear that it had no present intention to pursue legal action against 3taps.  And, of course, LinkedIn never did sue 3taps.

Second, 3taps contends that it sufficiently alleged that it had a real, concrete plan to conduct business using data from LinkedIn's platform.  But the Amended Complaint is devoid of any plausible allegations indicating that 3taps had a concrete intention to scrape LinkedIn and, as a result, that it would suffer a concrete injury if it was prohibited from doing so.  Rather, it contains only a vague assertion that 3taps may someday decide to scrape LinkedIn in some undisclosed manner for some unknown purpose.  In its Opposition, 3taps concedes it offered no more concrete plans, arguing that for Article III purposes all it has to say is that LinkedIn data has a value that it would like to exploit without revealing how or why.  This is nonsense.  The fact that data on LinkedIn's servers may be valuable to others does not give anyone and everyone the right to force LinkedIn into court over wholly speculative uses of that data.  In any event, 3taps has not alleged sufficient facts for this Court to assess the legality of 3taps's theoretical conduct.

Third, 3taps maintains the fiction that this case is related to the *hiQ* case and that the relationship itself shows that a controversy exists between LinkedIn and 3taps.  3taps cannot derive standing to sue from someone else's case.  That is especially true where 3taps and hiQ had nothing to do with each other until 3taps's CEO invested in hiQ in 2018, after the hiQ lawsuit and preliminary injunction request that were *filed by hiQ, not LinkedIn*.  After the preliminary injunction was granted, 3taps promptly invested in hiQ to manufacture a supposedly similar controversy with LinkedIn.  The hiQ injunction was based on alleged unfair competition, where

REPLY ISO MOTION TO DISMISS
18-cv-00855-EMC

1    3taps does not even have a business model or make such a claim.  There are obvious material

2    differences.

3         None of 3taps's tales withstand scrutiny.  3taps has failed to demonstrate an actual

4    controversy, and as such, the Court lacks Article III jurisdiction.  But even if jurisdiction exists,

5    the sequence of events gives rise to a strong inference that this lawsuit was manufactured so that

6    3taps could forum shop to avoid an existing permanent injunction issued by Judge Breyer.  This

7    Court should not exercise its discretionary jurisdiction under such circumstances.  3taps's

8    Amended Complaint should be dismissed without leave to amend.

9                                    **ARGUMENT**

10   **I.    3TAPS'S OPPOSITION CONFIRMS THAT IT LACKS ARTICLE III STANDING.**

11        **A.    3taps Attempts to Manufacture An "Implied Threat" of Litigation Where
                  There Is None.**

12

13        3taps asserts that the "threat of ruinous litigation" is the only thing preventing it from

14   immediately scraping LinkedIn's website.  Opp. at 3, 7.  As detailed in LinkedIn's Motion,

15   however, LinkedIn has *not* threatened litigation and specifically ruled out the possibility of taking

16   immediate action against 3taps.  Mot. at 4; LinkedIn's Request for Judicial Notice ("RJN") Ex. 6.

17   In its January 24, 2018 letter, LinkedIn specifically told 3taps that it would *not* take immediate

18   action against 3taps, even though 3taps's proposed scraping would violate LinkedIn's User

19   Agreement.  RJN Ex. 6.  3taps argues that these statements can only be reasonably read as a threat

20   of impending harm.  Opp. at 7-8.  That reading is simply not plausible—especially because

21   LinkedIn *never sued* 3taps.[1]

22        3taps's theory of an implied threat of immediate litigation is that LinkedIn "previously

23   engaged in aggressive litigation against hiQ."  Opp. at 7, 13.  But 3taps ignores that LinkedIn is

24   engaged in a lawsuit *brought by hiQ*.  *See* RJN Ex. 3.  That hiQ chose to file a lawsuit against

25   LinkedIn does not show that 3taps is faced with an immediate threat of ruinous litigation by

26   LinkedIn.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (holding that injury must be

27   _____

28   [1] Further, as discussed in greater detail in section I. C. below, 3taps's Amended Complaint does
     not respond to the supposed "threat" in LinkedIn's letter because it does not seek relief
     concerning LinkedIn's assertion that scraping would violate LinkedIn's User Agreement.

1    traceable to challenged action of the defendant and not the result of an independent action of a

2    third party).  LinkedIn's single pre-suit response letter to 3taps made no threat of action against

3    3taps, and LinkedIn's defense of itself in a lawsuit hiQ filed cannot transform that

4    correspondence into a threatened lawsuit against 3taps.  In the absence of an actual threat of

5    litigation, 3taps's entire theory of standing falls apart.

6          **B.**      <u>**3taps Fails To Plead Facts Sufficient to Show An Actual or Imminent Injury.**</u>

7          Even if LinkedIn had threatened 3taps or taken any action against it (which it did not), the

8    Amended Complaint would still not satisfy Article III standing because 3taps does not identify

9    any concrete activities it would engage in but for those supposed threats.  All 3taps points to in its

10   Opposition are the Amended Complaint's allegations that (1) 3taps is in the data scraping

11   business, (2) LinkedIn data is valuable to data scrapers, and (3) 3taps is "ready, willing, eager and

12   able to scrape."  Opp. at 7.  These bare conclusory allegations devoid of any specific facts are

13   insufficient to satisfy 3taps's burden of establishing a real, concrete, and imminent injury.  *See*

14   *Giannini v. Am. Home Mortg. Servicing, Inc.*, No. C11-04489 TEH, 2012 WL 298254, at *4

15   (N.D. Cal. Feb. 1, 2012) (dismissing action when factual allegations were insufficiently specific

16   to sustain the declaratory judgment sought); *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 607–

17   08 (D. Nev. 2011) (plaintiff failed to plead sufficient jurisdictional facts to establish a substantial

18   case or controversy; vague and conclusory statements insufficient).

19         For example, the abstract assertion that data from LinkedIn is valuable to scrapers

20   generally does not substantiate how LinkedIn's data has value to 3taps specifically, or how 3taps

21   would suffer real, immediate harm if it cannot access that data.  3taps's failure to plead these facts

22   leaves LinkedIn and the Court guessing as to 3taps's alleged injury.  *See Carrico v. City & Cnty.*

23   *of S.F.*, 656 F.3d 1002, 1007 (9th Cir. 2011) (failure to provide any description of intended

24   conduct prevented court from being able to analyze whether plaintiffs faced a credible threat of

25   prosecution).  3taps cites no case where a plaintiff established Article III standing without

26   providing any actual facts about the subject of the action or the nature of the alleged harm.  There

27   is ample authority that threadbare allegations like those 3taps made are insufficient for Article III

28   standing.  *Id.* at 1008 (conclusory allegation is insufficient to establish standing); *Chapman v.*

- 3 -

REPLY ISO MOTION TO DISMISS
18-CV-00855-EMC

1    *Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954–55 (9th Cir. 2011) (dismissing complaint when

2    plaintiff failed to allege facts sufficient to satisfy Article III's injury-in-fact requirement);

3    *Escobar v. Brewer*, 461 F. App'x 535, 535–36 (9th Cir. 2011) ("Mere conclusory allegations are

4    not enough to establish the 'concrete and particularized' injury required for standing under Article

5    III."); *Bihari v. Cross Roads of W. Gun Show*, No. SACV160718JVSEX, 2016 WL 11000618, at

6    *2 (C.D. Cal. July 18, 2016) (bald assertions insufficient to establish Article III standing).

7            In an attempt to excuse itself from the mandates of Article III, 3taps asserts that providing

8    enough facts to allege an actual injury would necessitate "giving LinkedIn a roadmap on how and

9    when to implement [technical] measures," and that disclosing "3taps' intended business use of

10   [LinkedIn] data" and "advance disclosure to LinkedIn of how the data will be monetized would

11   be commercial suicide." Opp. at 8.  Even if there were a "commercial suicide" exception to

12   Article III (which there is not), 3taps wouldn't satisfy it.  The Amended Complaint provides no

13   information at all about what 3taps intends to do and 3taps has not provided that information in its

14   opposition to LinkedIn's first motion to dismiss, in its already amended complaint, or in this

15   second opposition to a motion to dismiss.  3taps has had three opportunities to describe its

16   putative business premised upon scraping LinkedIn, and it has yet to come up with even the

17   outlines of a plausible venture.[2]  The obvious inference is that this whole dispute is manufactured

18   and that 3taps doesn't really intend to do anything but try to get out from under Judge Breyer's

19   injunction.  If 3taps expected the Court to credit it with a plausible plan for a business that would

20   trigger an immediate threat of litigation harm from LinkedIn, then 3taps had the burden to

21   provide sufficient facts to establish that it had a real plan to scrape LinkedIn data and that it

22   would suffer a real, concrete, and imminent injury if prevented from doing so by LinkedIn's

23   redressable actions.  *See Lujan*, 504 U.S. at 564 (profession of an intent to take an action without

24   any description of concrete plans insufficient to establish actual or imminent injury).  3taps did

25   not do so.

26

27   [2] The most it provides in the Opposition is that LinkedIn uses technical blocks to thwart scrapers.
     Opp. at 8.  So what?  This Court specifically acknowledged in hiQ that LinkedIn was entitled to
28   continue using its general anti-scraping technical measures, which preserve site performance and
     stability.

                                                            REPLY ISO MOTION TO DISMISS
                                      - 4 -                  18-cv-00855-EMC

1   **C.      3taps Fails To Show A Redressable Injury.**

2        3taps tries to parse out its three declaratory relief claims, seeking an advisory

3   interpretation of three different statutes or common law principles as being distinct controversies,

4   but it is clear from the Amended Complaint that there is only one common nucleus of operative

5   facts here—the hypothetical controversy over whether 3taps can freely scrape data from LinkedIn

6   in some unspecified fashion and use it for some unspecified purpose.  The sole harm that 3taps

7   alleges is that an implied threat of litigation by LinkedIn prevents it from being able to scrape.

8   Am. Compl. ⁋ 20; Opp. at 3.  The advisory ruling that 3taps seeks—that three specific legal

9   theories would not apply to its hypothetical future scraping conduct—would not redress this

10  alleged harm, because 3taps does not even address all of the obvious legal theories by which

11  LinkedIn could seek such relief, nor that LinkedIn is entitled by this Court's earlier rulings to use

12  its standard technical measures.  *See Lujan*, 504 U.S. at 561 (standing requires that injury be

13  redressable by a favorable decision); *Hobbs v. Sprague*, 87 F. Supp. 2d 1007, 1012 (N.D. Cal.

14  2000) (no standing when court unable to discern whether Plaintiff's alleged injury would be

15  redressed by a favorable decision).

16       3taps argues that it need not seek a ruling regarding "every possible legal theory" that can

17  be conceived of by "the boundless imagination of legal minds."  Opp. at 9.  The imagination

18  needed here is to figure out what on earth type of business 3taps intends to conduct, how it

19  intends to scrape, what it intends to scrape, and how it intends to use the data.  The fact that

20  3taps's business is imaginary does not mean that LinkedIn has improperly invoked potentially

21  applicable legal theories, such as breach of contract, not addressed by 3taps.

22       To have standing, the Amended Complaint must seek an order capable of redressing

23  3taps's alleged harm.  That alleged harm is the implied threat of litigation that 3taps has cobbled

24  together from a single pre-suit letter from LinkedIn that expressly disclaimed any threat of

25  immediate action.  *See* RJN Ex. 6.  But the Amended Complaint completely ignores a key issue

26  expressly raised in that correspondence—that scraping en masse would be unauthorized by

27  LinkedIn's User Agreement.  *See id*.  Thus, even if LinkedIn threatened litigation in its

28  correspondence (which it did not), the order 3taps seeks would not alleviate this threat, because

REPLY ISO MOTION TO DISMISS
18-CV-00855-EMC

LinkedIn would be free to enforce the terms of its contracts regardless of this Court's guidance on the statutory and common law trespass issues.  This glaring omission serves to highlight that 3taps's true intention in filing this lawsuit is not to obtain legal clarity regarding whether it may scrape LinkedIn in some unspecified manner at some unspecified point in the future, but rather to obtain an advisory ruling contrary to Judge Breyer's previous ruling that 3taps violates the CFAA by knowingly scraping a website without authorization.  That is not the type of redressable harm Article III gives federal courts jurisdiction to remedy.  *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1010 (9th Cir. 2008) (declaratory judgment is only appropriate where it would completely resolve the concrete controversy.); Fed R. Civ. P. 57, Notes of Advisory Committee on Rules. ("A declaratory judgment is appropriate when it will 'terminate the controversy' giving rise to the proceeding.").

**II.      3TAPS'S OPPOSITION CONFIRMS THERE IS NO RIPE CONTROVERSY BETWEEN LINKEDIN AND 3TAPS.**

3taps bore the burden to plead facts sufficient to show a real, imminent, and concrete controversy that has reached the point where there is a specific need for the Court to declare the rights of the parties.  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Millennium Lab's, Inc. v. eLab Consulting Servs.*, No. 12CV1109 JM (DHB), 2012 WL 2721919, at *3 (S.D. Cal. July 9, 2012).  3taps has failed to do so.

3taps admits that it has not scraped LinkedIn webpages.  Opp. at 10.  And while 3taps is correct that past actions are not always necessary for a ripe controversy (*see* Opp. at 10-11), when a plaintiff relies on an alleged future plan of activity, Article III requires that plaintiff to plead facts sufficient to establish that it has a real, imminent, and definite future plan.  *See Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.*, 721 Fed. App'x 628, 630 (9th Cir. 2018) (declaratory judgment claim that there would be trademark confusion was insufficient where the plaintiff had not yet made any sales nor alleged or offered proof that it had "imminent plans" to do so); *Gadomski v. Patelco Credit Union*, No. 17-CV-00695-TLN-AC, 2022 WL 223878, at *5 (E.D. Cal. Jan. 25, 2022) (profession of intent to take future action without any description of concrete plans does not support a finding of the "actual or imminent" injury required).  The

REPLY ISO MOTION TO DISMISS
18-CV-00855-EMC

Amended Complaint provides no *actual facts* indicating that 3taps has a real, definite and concrete plan to immediately scrape LinkedIn.  Instead of providing any actual and specific facts, 3taps argues that three conclusory statements in the Amended Complaint sufficiently alleged its plan to scrape LinkedIn data; specifically: (1) "that it is a data scraping business," (2) that "3taps has decided to begin scraping publicly-available information on LinkedIn's website," and (3) "that it is ready, willing, and able to do so."  Opp. at 11-12.  These bare conclusory statements are insufficient to establish a real and immediate controversy.  The fact that 3taps failed to allege any real and specific facts regarding its proposed activity beyond these bare conclusions even after being given the opportunity to amend its complaint to include such facts highlights its inability to do so.

3taps apparently finds it "difficult to imagine what more" it could allege (Opp. at 12), but its imagination need go no further than the comparison 3taps invites the Court to make to the allegations in the *hiQ v. LinkedIn* dispute.  While 3taps argues that its invocation of *hiQ* "highlight[s] the material similarities between the two companies" (Opp. at 13), all the comparison to *hiQ* highlights is the degree to which the Amended Complaint here is utterly devoid of jurisdictional facts.  3taps claims the pleadings are the same because both companies allegedly (1) are "in the business of access[ing] and us[ing] publicly-available facts from the internet," (2) collect data to "enhance user experiences and safety," in the case of 3taps, and to provide clients with insights about their employees in the case of hiQ, (3) use "automated means," and (4) had "LinkedIn revoke[] [its] authorization to scrape its website."  Opp. at 13-14.  In other words, both hiQ and 3taps intended to scrape LinkedIn.  Those are the only "facts" 3taps pleads about its business.  In contrast, hiQ included extensive allegations about how its business depended on information from LinkedIn webpages that it scrapes (RJN Ex. 3 ¶18), the nature of its business and how its products use data from LinkedIn webpages (*id.* ¶¶2, 6, 8, 17-18), how LinkedIn implemented technology blocks specifically against it and sent a cease-and-desist letter explicitly threatening litigation (*id.* ¶¶4, 25,34), LinkedIn's development of allegedly competing products (*id.* ¶30), and how denial of access to data on LinkedIn webpages allegedly jeopardized specific client contracts and prospective relationships (*id.* ¶31).  3taps has not pled any similar

REPLY ISO MOTION TO DISMISS
18-CV-00855-EMC

1    specific facts to support that it has a concrete and definite future plan to scrape LinkedIn data or

2    that it has or will suffer an immediate and real injury-in-fact.  It cannot rely on the facts in hiQ's

3    pleadings because those facts are specific to hiQ.  3taps's bootstrapping effort fails.

4    **III.    IN ALL EVENTS, THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS.**

5

6        3taps has engaged in unseemly judge-shopping in order to collaterally attack Judge

7    Breyer's earlier permanent injunction against it, its primary investor, and its CEO.  *See* Mot. at 2-

8    5, 15.  This alone is grounds for the Court to exercise its considerable discretion to dismiss this

9    declaratory action.

10        3taps does not dispute the key facts and timing set forth in greater detail in LinkedIn's

11   Motion:  soon after this Court issued the preliminary injunction in *hiQ v. LinkedIn*, Greg Kidd,

12   3taps's CEO invested in hiQ.  *Id.*  3taps then attempted to manufacture a controversy with

13   LinkedIn by goading LinkedIn into threatening litigation.  *Id.*  LinkedIn did not take the bait,

14   expressly stating that it had no intention of taking immediate action against 3taps.  3taps sued

15   anyway, claiming it was related to hiQ and mischaracterizing the pre-suit correspondence with

16   LinkedIn as a threat of litigation and broadly asserting an unspecified plan to scrape data "just

17   like hiQ."  *Id.*  It then filed a motion to have its case related to the *hiQ v. LinkedIn* case pending

18   before Judge Chen, in which it relied on its (recently manufactured and purchased) relationship

19   with hiQ and further misrepresentations that it had received a cease-and-desist letter similar to

20   hiQ and that the facts of the hiQ case were essentially identical to the facts leading to this case.

21   *Id.*  The implications of 3taps's conduct are clear—it was trying to manufacture a new dispute to

22   get out from under the earlier injunction issued by Judge Breyer.

23        3taps's Opposition completely ignores this timeline.  It does not dispute these facts or the

24   inferences to be drawn from them.  Unable to refute the facts evidencing that Greg Kidd and

25   3taps manufactured this lawsuit to get in this Court, 3taps tries to relitigate the motion to relate.

26   *See* Opp. at 15-16.  That motion was based on what we now know was a false premise—that there

27   was some legitimate and relevant business relationship between hiQ and 3taps, not an after-the-

28   fact investment designed to manufacture a dispute.  3taps's relitigation of the motion to relate,

REPLY ISO MOTION TO DISMISS
18-CV-00855-EMC

1   asserting that the same defendant will lead to an overlap of facts and discovery is also wrong

2   here.  In a declaratory judgment action like this one, it is the plaintiff's conduct that is really at

3   issue.  3taps is seeking a ruling on whether *its* activities would be unlawful.  The very same

4   activities that were at issue in the *Craigslist v. 3taps* case.  *See*  RJN Ex. 7.  Indeed, 3taps cited to

5   the *Craigslist v. 3taps* case in its opposition to LinkedIn's motion to dismiss the original

6   Complaint as evidence of the scraping activity 3taps allegedly plans to do to LinkedIn.  *See* 3taps,

7   Inc.'s Opp'n to Defs.' Mot. to Dismiss at 11, Dkt. 53.  The Court should exercise its discretion

8   and dismiss this declaratory action.

9                                        **<u>CONCLUSION</u>**

10       3taps lacks standing to pursue its declaratory relief claims, has failed to demonstrate an

11   actual controversy, and in all events the Court should exercise its discretion to dismiss this

12   unnecessary lawsuit brought for improper purposes.

13

14   Dated: March 9, 2022                                    Orrick, Herrington & Sutcliffe LLP

15                                               By:              */s/ Annette L. Hurst*
                                                                ANNETTE L. HURST
16                                                              Attorneys for Defendant
                                                                LinkedIn Corporation
17

18

19

20

21

22

23

24

25

26

27

28