1  ANNETTE L. HURST (SBN 148738)
   ahurst@orrick.com
2  RUSSELL P. COHEN (SBN 213105)
   rcohen@orrick.com
3  DANIEL JUSTICE (SBN 291907)
   djustice@orrick.com
4  NATHAN SHAFFER (SBN 282015)
   nshaffer@orrick.com
5  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
6  405 Howard Street
   San Francisco, CA  94105-2669
7  Telephone:    +1 415 773 5700
   Facsimile:    +1 415 773 5759
8
   *Attorneys for Defendant*
9  *LinkedIn Corporation*

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13

14  3taps, Inc.,                          Case No. 18-cv-00855-EMC

15          Plaintiff,                    **DEFENDANT LINKEDIN'S NOTICE
                                          OF MOTION & MOTION TO DISMISS
16     vs.                               PLAINTIFF'S SECOND AMENDED
                                          COMPLAINT; MEMORANDUM OF
17  LinkedIn Corporation,                 POINTS AND AUTHORITIES IN
                                          SUPPORT THEREOF**
18          Defendant.

19                                        Judge:          Hon. Edward M. Chen
                                          Hearing Date:   October 27, 2022
20                                        Hearing Time:   1:30 p.m.
                                          Ctrm:           Courtroom 5
21                                        Trial Date:     None Set

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION ............................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

      A.    3taps's Manufactured Relationship With hiQ. ............................................. 2

      B.    The Additional Manufactured Harm Alleged In The SAC. ........................ 6

ARGUMENT ....................................................................................................................... 8

I.     3TAPS IS VOID AND LACKS CAPACITY TO BRING THIS LAWSUIT. ................. 9

II.    3TAPS LACKS ARTICLE III STANDING BECAUSE IT FAILS TO ALLEGE
      ANY ACTUAL OR IMMINENT REDRESSABLE INJURY. ...................................... 11

III.   THE AMENDED COMPLAINT DOES NOT DEMONSTRATE A RIPE
      CONTROVERSY BETWEEN LINKEDIN AND 3TAPS. ......................................... 13

IV.   IN ALL EVENTS, THE COURT SHOULD EXERCISE ITS DISCRETION TO
      DISMISS. ............................................................................................................. 17

CONCLUSION .................................................................................................................. 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO DISMISS
18-cv-00855-EMC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addy v. Short*,
   89 A.2d 136 (Del. 1952) ...................................................................... 11

*In re Apple iPod iTunes Antitrust Litig.*,
   No. 05-CV-0037 YGR, 2014 WL 6783763 (N.D. Cal. Nov. 25, 2014) ................. 10

*Augustine v. United States*,
   704 F.2d 1074 (9th Cir. 1983) ................................................................... 9

*Backyard Wrestling, Inc. v. Pro-Active Ent. Grp., Inc.*,
   398 F. App'x 299 (9th Cir. 2010) .............................................................. 10

*Bd. of Managers of Soho Int'l Arts Condo. v. City of New York*,
   No. 01 Civ. 1226 (DAB), 2005 WL 1153752 (S.D.N.Y. May 13, 2005) ............... 10

*California v. Texas*,
   141 S. Ct. 2104 (2021) ........................................................................... 13

*Carney v. Adams*,
   141 S. Ct. 493 (2020) ............................................................................ 13

*In re Citadel Indus., Inc.*,
   423 A.2d 500 (Del. Ch. 1980) .................................................................. 10

*City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*,
   624 A.2d 1191 (Del. 1993) ...................................................................... 10

*Clark v. City of Seattle*,
   899 F.3d 802 (9th Cir. 2018) ................................................................... 16

*Coffman v. Breeze Corps.*,
   323 U.S. 316 (1945) ......................................................................... 14, 15

*Craigslist Inc. v. 3Taps Inc.*,
   942 F. Supp. 2d 962 (N.D. Cal. 2013) .......................................................... 3

*Craigslist Inc. v. 3taps Inc.*,
   964 F. Supp. 2d 1178 (N.D. Cal. 2013) ......................................................... 3

*Crossbow Tech., Inc. v. YH Tech.*,
   531 F. Supp. 2d 1117 (N.D. Cal. 2007) ......................................................... 8

*Edison v. United States*,
   822 F. 3d 510 (9th Cir. 2016) ................................................................. 2, 8

*Gamble v. Penn Val. Crude Oil Corp.*,
   104 A.2d 257 (Del. Ch. 1954) ................................................................................. 11

*Giannini v. Am. Home Mortg. Servicing, Inc.*,
   No. C11-04489 TEH, 2012 WL 298254 (N.D. Cal. Feb. 1, 2012) ........................... 15

*Grupo Dataflux v. Atlas Glob. Grp.*,
   541 U.S. 567 (2004) .................................................................................................... 8

*Hobbs v. Sprague*,
   87 F. Supp. 2d 1007 (N.D. Cal. 2000) ..................................................................... 13

*Keene Corp. v. United States*,
   508 U.S. 200 (1993) .................................................................................................... 8

*Lujan v. Defs. Of Wildlife*,
   504 U.S. 555 (1992) .............................................................................................. 11, 13

*Matthew v. Laudamiel*,
   No. CIV.A. 5957-VCN, 2012 WL 605589 (Del. Ch. Feb. 21, 2012) ....................... 10

*Mayfield v. United States*,
   599 F.3d 964 (9th Cir. 2010) ................................................................................... 13

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) .............................................................................................. 13, 16

*Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.*,
   721 Fed. Appx. 628 (9th Cir. 2018) ......................................................................... 14

*Millennium Lab'ys, Inc. v. eLab Consulting Servs.*,
   No. 12CV1109 JM DHB, 2012 WL 2721919 (S.D. Cal. July 9, 2012) ................... 14

*Morongo Band of Mission Indians v. Cal. Bd. Of Equalization*,
   858 F.2d 1376 (9th Cir. 1988) ................................................................................... 8

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
   344 U.S. 237 (1952) ................................................................................................. 14

*Purely Driven Prods., LLC v. Chillovino, LLC*,
   171 F. Supp. 3d 1016 (C.D. Cal. 2016) ................................................................... 16

*San Diego Cnty. Gun Rts. Comm. v. Reno*,
   98 F.3d 1121 (9th Cir. 1996) ................................................................................... 14

*Shalaby v. Jacobowitz*,
   No. C 03-0227-CRB, 2003 WL 1907664 (N.D. Cal. Apr. 11, 2003), *aff'd*, 138
   F. App'x 10 (9th Cir. 2005) ..................................................................................... 13

MOTION TO DISMISS
18-cv-00855-EMC

*Sobini Films v. Tri-Star Pictures Inc.*,
    No. CV 01-06615 ABC, 2001 WL 1824039 (C.D. Cal. Nov. 21, 2001) ............................... 14

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...................................................................................................... 11

*Territory of U.S. Virgin Islands v. Goldman, Sachs & Co.*,
    937 A.2d 760 (Del. Ch. 2007), *aff'd*, 956 A.2d 32 (Del. 2008) ............................................. 10

*Tradebay, LLC v. eBay, Inc.*,
    278 F.R.D. 597 (D. Nev. 2011) ......................................................................................... 15

*Transpolymer Indus., Inc. v. Chapel Main Corp.*,
    582 A.2d 936, 1990 WL 168276 (Del. 1990) ........................................................................ 9

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .............................................................................................. 11, 12

*United States v. State of Wash.*,
    759 F.2d 1353 (9th Cir. 1985) ......................................................................................... 13

**Statutes**

California Penal Code § 502 .................................................................................................. 6

Computer Fraud and Abuse Act ...................................................................................... *passim*

Declaratory Judgment Act ................................................................................................. 13

Del. Code Ann. tit. 8, § 278 .......................................................................................... 10, 11

Del. Code Ann. tit. 8, § 510 ................................................................................................ 9

Fed. R. Civ. P. 12(b)(1) .................................................................................................. 2, 8

Fed. R. Civ. P. 17(b)(2) ...................................................................................................... 9

**Other Authorities**

U.S. Const., Art. III ...................................................................................................... 11, 13

1

**NOTICE OF MOTION AND MOTION**

2

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**

3

**NORTHERN DISTRICT OF CALIFORNIA AND TO ALL PARTIES AND THEIR**

4

**COUNSEL OF RECORD: PLEASE TAKE NOTICE** that on October 27, 2022, at 1:30 p.m.,

5

or as soon thereafter as the matter may be heard in the above-captioned Court, Defendant

6

LinkedIn Corporation ("LinkedIn") will and hereby does move pursuant to Rule 12(b)(1) of the

7

Federal Rules of Civil Procedure to dismiss the Second Amended Complaint ("SAC") filed by

8

Plaintiff 3taps, Inc. ("3taps"). This Motion is based on the concurrently filed Memorandum of

9

Points and Authorities in support, the SAC, the Declaration of Daniel Justice and accompanying

10

exhibits, and the Request for Judicial Notice and accompanying exhibits, filed herewith; and any

11

other material the Court deems proper and just.

12

Plaintiff's SAC seeks declaratory relief that if it engages in data scraping activity at some

13

point in the future it will not be in violation of the Computer Fraud and Abuse Act or California

14

Penal Code Section 502, and that such activity would not breach a contract, or be a trespass in

15

violation of California common law. The SAC should be dismissed because there is no Article III

16

case or controversy between the parties and, accordingly, this Court lacks subject matter

17

jurisdiction. First, 3taps is a void corporation, and, as such, does not have capacity to bring suit

18

not incident to winding up of its business. Second, 3taps alleges no immediate concrete harm, the

19

hallmark requirement of standing to maintain suit. Third, there is no actual case or controversy

20

between 3taps and LinkedIn because there is no ripe dispute. Finally, in all events, the Court

21

should exercise its considerable discretion to dismiss this declaratory relief action. 3taps

22

misrepresented the nature of this purported dispute to avoid another judge of this Court and ███

23

███████████████████████████████████████████████████████████████

24

███████████  3taps has been given two opportunities to fix its deficient complaint. It has failed to

25

do so because the complaint is not capable of being fixed. The Court should dismiss the SAC

26

with prejudice.

27

28

MOTION TO DISMISS
18-cv-00855-EMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This is the third complaint 3taps has filed in pursuit of an advisory declaration that it may engage in some unspecified future scraping activity without violating various legal doctrines. This Court dismissed 3taps's prior complaint for lack of standing/ripeness, but gave 3taps a chance to amend to plead facts substantiating an actual case or controversy between the parties. Once again, 3taps fails to do so.  3taps lacks standing and continues to assert abstract, unripe claims.  Its case should be dismissed.

3taps's first problem is one of its own making—years of failing to pay its taxes led the Delaware Secretary of State to declare 3taps a void corporation, which it remains today.  The consequence of that declaration is that 3taps lacks capacity to bring any lawsuit not incident to winding up its business.  This case, which seeks a declaration that supposedly would allow 3taps to engage in future business conduct, has nothing to do with winding up the affairs of the company.  Accordingly, Delaware law (which controls for purposes of determining capacity to sue) deprives 3taps of the power to pursue its claims.

Second, as with its prior pleadings, 3taps continues to make no plausible allegation showing that it has suffered or is threatened with immediate and concrete harm.  3taps does not allege that it has scraped LinkedIn or used LinkedIn data in any way.  3taps repeats the same mischaracterizations of a single pre-suit letter from LinkedIn, but no matter how many times 3taps alleges otherwise, that letter (which was sent only in response to correspondence initiated by 3taps) makes no threat of action whatsoever against 3taps.

Third, 3taps cannot show a ripe dispute because it fails to allege the existence of a substantial, immediate, and real controversy.  In granting leave to amend, the Court cautioned 3taps that it "must provide non-conclusory allegations as to how [3taps] has engaged in meaningful preparation to conduct data scraping activity."  ECF No. 67 at 1.  The Second Amended Complaint ("SAC") once again does not contain any such allegations.  Rather than plead meaningful preparation, 3taps directs the Court to its website, which 3taps says is an online data shop for developers.  But—consistent with 3taps's status as a void corporation—the

MOTION TO DISMISS
18-cv-00855-EMC

"Developers" portion of its website contains nothing but dead links.  The only active pages of 3taps's website are the pages devoted to 3taps's scraping advocacy, which confirms the advisory nature of 3taps's request for relief in this case.  And while 3taps suggests it may have one commercial opportunity that it would act on if it obtains a favorable ruling, ███████████ ███████████████████████████████████████████████████████████████ 3taps cannot explain why it needs the advisory relief it seeks here in order ████████████ ███████████████████████ particularly when 3taps is not legally allowed to engage in business of any kind due to its charter having been declared void.

Finally, even if there were subject matter jurisdiction over this declaratory relief action (which there is not), the Court should exercise its inherent discretion to decline jurisdiction. There is no reason to hear a dispute brought by a void company concerning the propriety of theoretical conduct it has never once engaged in.  Moreover, 3taps's attempt to manufacture a future business opportunity ███████████████████████ echoes 3taps's attempt to manufacture a relationship with hiQ in order to have this case assigned to Judge Chen, rather than Judge Breyer, who had previously enjoined 3taps and Mr. Kidd personally from scraping. 3taps's pursuit of this lawsuit is nothing more than an advocate's attempt to have the Court say that the law is what 3taps wants it to be.  This Court should not expend its limited resources on a purely advisory matter that lacks any tangible, ripe dispute.

## STATEMENT OF FACTS[1]

### A.    3taps's Manufactured Relationship With hiQ.

Plaintiff 3taps's primary investor and CEO is an individual named Robert Gregory ("Greg") Kidd.  *See* Dkt. 1-1 (Supplemental Disclosure Regarding Interest in the Appeal of Amicus Curiae 3taps, Inc.).  Mr. Kidd is also a significant investor and the President of another entity called Hard Yaka, Inc. ("Hard Yaka").  *See id.* ("Mr. Kidd is also a significant investor in Hard Yaka, Inc."); Justice Declaration Ex. A (Redacted excerpts of HiQ Labs, Inc. Series C Preferred Stock

---

[1] On a Rule 12(b)(1) motion, the Court may consider factual material outside the pleadings so long as reasonable inferences are drawn in the plaintiff's favor.  *Edison v. United States*, 822 F. 3d 510, 517 (9th Cir. 2016).

Purchase Agreement, signed by Mr. Kidd on behalf of Hard Yaka as its President).  According to the SAC in this case, Hard Yaka is an investor in 3taps.  *See* Dkt. 68 (3taps, Inc.'s Second Amended Complaint for Declaratory Judgment Against LinkedIn Corporation) ¶14.  Thus, it appears Mr. Kidd is both the primary investor and lead executive of both plaintiff 3taps and Hard Yaka.

On June 30, 2015, 3taps, Hard Yaka, and Mr. Kidd were permanently enjoined from scraping Craigslist.com by another judge of this Court.  *See* LinkedIn's Request for Judicial Notice ("RJN") Ex. 1 (*Craigslist, Inc. v. 3taps, Inc*., et al, 3:12-cv-03816-CRB (Dkt. 272, entered June 30, 2015)).  In that case, Craigslist sued 3taps alleging violations of the Computer Fraud and Abuse Act ("CFAA") and related statutes.  Craigslist alleged that 3taps had "mass copie[d] tens of millions of postings from craigslist in 'real time'" from its website through automated data scraping, and then provided that data to "all manner of for-profit entities to copy, repurpose, redisplay, redistribute, surround with advertisements . . . and otherwise exploit commercially." RJN Ex. 2 (*Craigslist*, First Amended Complaint (Dkt. 35, filed November 20, 2012)) ¶3.  The central issue became whether Craigslist could impose CFAA liability on 3taps for accessing its website and servers "without authorization" after Craigslist had affirmatively withdrawn 3taps's authorization through targeted cease and desist letters and the imposition of technological measures.  Judge Breyer concluded that 3taps's access to "Craigslist after the clear statements regarding authorization in the cease-and-desist letters and the technological measures to block them constitutes unauthorized access under the [CFAA]" (*Craigslist Inc.  v. 3Taps Inc.,* 942 F. Supp. 2d 962, 969-70 (N.D. Cal. 2013)) and held that nothing in the text of the CFAA prevented Craigslist from revoking authorization to access its website, even though its website was generally accessible to the public.  *Craigslist Inc. v. 3taps Inc*., 964 F. Supp. 2d 1178, 1182-83 (N.D. Cal. 2013).  The case concluded with a stipulated permanent injunction enjoining 3taps as well as its CEO, Mr. Kidd, and Hard Yaka from accessing, copying, or downloading any content from the Craigslist website and circumventing technological measures that regulated access to the site.  RJN Ex. 1.

On June 7, 2017, hiQ Labs, Inc. ("hiQ") filed suit in this Court asserting unfair competition claims and seeking, among other things, a declaration that its scraping of member data from LinkedIn webpages did not violate the CFAA and other laws.  *See* RJN Ex. 3 (*hiQ Labs, Inc. v. LinkedIn Corp.*, 3:17-cv-03301-EMC (Dkt. 1, entered June 7, 2017)).  hiQ alleged that it scraped information from LinkedIn webpages for use in its commercial data analytics services, and that LinkedIn threatened hiQ with legal action and implemented technological barriers to prevent hiQ's scraping for anticompetitive purposes—namely because LinkedIn planned to offer competing services.  *See id.* at ¶¶2, 6-7, 17-18, 25, 30, 34.  hiQ also alleged that it was specifically harmed because LinkedIn's actions jeopardized several existing contracts and prospective economic relationships with several named companies, thereby threatening its entire business.  *Id.* at ¶¶31, 50-54, 59-60, 64.  On August 14, 2017, this Court granted hiQ a preliminary injunction restraining LinkedIn on unfair competition grounds from preventing hiQ's access or use of member data on LinkedIn's website.  *See* RJN Ex. 4 (*hiQ Labs, Inc. v. LinkedIn Corp.*, 3:17-cv-03301-EMC (Dkt. 63, entered August 14, 2017)).  During a July 15, 2022 hearing, this Court dissolved that injunction in light of the cessation of hiQ's business and the lack of any ongoing likely irreparable harm.  *See* RJN Ex. 20 (*hiQ Labs, Inc. v. LinkedIn Corp.*, 3:17-cv-03301-EMC (Dkt. 325, Transcript of July 15, 2022 hearing)) at 16.

After the injunction was first issued, 3taps saw an opportunity, but it wasn't the normal one.  Rather than return to Judge Breyer—who had adjudicated its dispute with Craigslist—3taps and its CEO instead tried to use a new investment to buy a relationship to hiQ.  3taps then created a dispute with LinkedIn and argued the dispute was related to the *hiQ* lawsuit in order to avoid an assignment to Judge Breyer.  Specifically, within three months after this Court entered its preliminary injunction on behalf of hiQ, 3taps's CEO Mr. Kidd (through his other company Hard Yaka) had fully negotiated and executed a promissory note for an eventual investment in hiQ.  *See* Justice Decl. Ex. A (Redacted excerpts of HiQ Labs, Inc. Series C Preferred Stock Purchase Agreement).  The papers converting the promissory note into hiQ shares were fully executed in January 2018, within two days of 3taps's letter to LinkedIn asserting a desire to scrape LinkedIn.  *Compare id.* (January 18, 2018 execution date on Kidd's signature on Stock

Purchase Agreement), *with* RJN Ex. 5 (January 16, 2018 letter sent by 3taps, stating that "3taps intends to begin scraping publicly-available data from LinkedIn.com in the coming weeks, and does not intend to await the outcome of the [*hiQ*] appeal before initiating those activities"). The documents make clear that Hard Yaka had not previously owned any stake in hiQ, because its Series C shares, and its total shares are the same. Justice Decl. Ex. A.

On January 24, 2018, LinkedIn responded to 3taps's letter by making clear that while any proposed scraping would be unauthorized, it did not then have any intention of initiating a lawsuit against 3taps. RJN Ex. 6. Specifically, LinkedIn stated that it "does not intend to consider legal action with respect to 3taps's January 16, 2018 letter until the Ninth Circuit renders its decision." *Id.* While LinkedIn's letter did note that 3taps's proposed course of conduct would be "unauthorized," LinkedIn threatened no legal or other action against 3taps and expressly stated that LinkedIn had no intention of taking immediate action against 3taps. *See id*. That was the sum total of the parties' communications—initiated entirely by 3taps—prior to suit.

Two weeks later, 3taps filed its Complaint in this action claiming it had a controversy with LinkedIn over the CFAA. *See generally* 3Taps, Inc's Complaint for Declaratory Judgment Against LinkedIn Corporation, Dkt. 1 ("Complaint"). 3taps then filed a motion to have its case related to the *hiQ v. LinkedIn* case pending before Judge Chen. *See* RJN Ex. 7 (*hiQ Labs Inc. v. LinkedIn Corp.*, 3:17-cv-03301-EMC (Dkt. 96, filed on February 14, 2018)). In that motion, 3taps stated that it and hiQ are "not completely unrelated" and "[a]s noted in 3taps' complaint against LinkedIn, 3taps and hiQ have common partial owners." *Id*. at 1 n.1. 3taps also claimed that the "facts leading to the filing of [the hiQ Case] are essentially identical to the facts" leading to this case, and that both 3taps and hiQ "received 'cease-and desist' letters from LinkedIn claiming that accessing the facts and information that LinkedIn makes publicly available on its website would violate the CFAA." *Id*. at 1, 3. This case was then ordered related to the *hiQ v. LinkedIn* matter, and stayed pending the *hiQ* appeal. *See* RJN Ex. 8 (*hiQ Labs, Inc. v. LinkedIn Corp.*, 3:17-cv-03301-EMC (Dkt. 102, entered February 22, 2018)).

On August 13, 2021, after the stay expired, LinkedIn filed a motion to dismiss the Complaint for lack of subject matter jurisdiction. Dkt. 51. After filing its opposition (Dkt. 53),

3taps proposed—and LinkedIn agreed—that 3taps amend its Complaint, and the parties filed a stipulation to that effect, which the Court granted. *See* Dkt. 55. On October 5, 2021, 3taps filed its Amended Complaint, which sought declaratory relief from the Court that 3taps's proposed scraping of LinkedIn profiles would not violate the CFAA, California Penal Code § 502, or prohibitions on common law trespass. *See* Dkt. 59. LinkedIn once again moved for dismissal on jurisdictional grounds, arguing (1) that 3taps failed to allege any actual or imminent redressable injury, (2) that 3taps failed to demonstrate a ripe controversy, and (3) that the Court should use its considerable discretion to dismiss the case due to 3taps's unseemly judge shopping and because the requested relief would not resolve a concrete controversy or serve a useful purpose. *See* Dkt. 61.

On April 7, 2022, this Court granted LinkedIn's motion to dismiss the Amended Complaint for "lack of standing/ripeness," but offered 3taps a further opportunity to plead facts showing a real and imminent harm it will suffer if not given the relief it sought. Dkt. 67 at 1. On May 12, 2022, 3taps filed the SAC. Dkt. 68.

### B.    The Additional Manufactured Harm Alleged In The SAC.

3taps previously attempted to tether its case to the *hiQ v. LinkedIn* matter by alleging that the *hiQ v. LinkedIn* case was "the dispute leading to this action," and that 3taps intended to collect and use data "just as hiQ had been doing." Dkt. 59, Am. Compl. ¶¶2, 12-13, 16. In the SAC, however, 3taps no longer claims to be just like hiQ, all but conceding there is no business similarity between what hiQ in fact was doing and what 3taps may theoretically do in the future.

In place of alleging similarity to hiQ, 3taps now relies on another business relationship manufactured by Mr. Kidd. Namely, 3taps states that "the immediate business use of LinkedIn's scraped data by 3taps will be ██████████████████████████████ Dkt. 68, SAC ¶20. 3taps states that ████████████████████████████████ (*id.* ¶21), ██████████████████████████████████████████ *See* RJN Exs. 9 ████████████████████████████ & 10 ██████████████████████████████████████

████████████████████████████████████   Thus, the only fact that 3taps could muster

to support its claim that it has an immediate need for LinkedIn member profile data, is that ███

████████████████████████████████████████████   3taps was unable to

plead ████████████████████████ [2]

Besides the addition of ██████████████████████████████   3taps

again leans on the parties' pre-litigation correspondence as the basis for the threat of immediate

harm against it.  But 3taps ignores that it is the party who initiated the correspondence, and

LinkedIn's response affirmatively dispelled any threat of immediate action against 3taps.

Moreover, contrary to 3taps's allegation that LinkedIn threatened it with violation of the CFAA

(SAC ¶¶15, 19, 28, 32), all LinkedIn asserted is that scraping by 3taps would be "unauthorized."

RJN Ex. 6.

To substantiate its supposed standing as a legitimate business that "stands ready, willing,

eager, and able to scrape" LinkedIn, 3taps points the Court to its website, calling it an online data

shop.  SAC ¶10.  However, the www.3taps.com website, which is incorporated by reference into

the SAC, tells a different story.  The 3taps homepage states the company's mission is to "keep[]

exchange-related data in the public domain."  RJN Ex. 11 (3taps homepage).  It contains links to

two other pages: one dedicated to "Advocacy" and one for "Developers."  *Id.*  The "Advocacy"

page provides information on 3taps's position that "public facts are public property."  RJN Ex. 12

(3taps Advocacy webpage).  It also provides links to information about 3taps's fight with

Craigslist and its "Open Access Manifesto."  *Id.*  3taps's manifesto describes its mission as

fighting "[f]oes of open access [who] abuse legal constructs" and "protect[ing] the public

domain."  RJN Ex. 13 (3taps's Open Access Manifesto).

The "Developers" page, which 3taps describes in the SAC as a "One-Stop Shop for

Developers" contains links to several purported APIs where developers can access data 3taps has

scraped.  *See* RJN Ex. 14 (3taps Developers webpage).  However, all of the links on 3taps's

"Developers" webpages are dead.  *See* RJN Exs. 15-18.  3taps does not market or offer any data

---

[2] 3taps also makes the non-specific allegation that it "has and/or will also provide scraped data to
third parties via private contractual arrangements," (SAC ¶13) but does not identify any actual
such transaction that the relief it seeks in this case would facilitate.

for sale and no developer can go onto 3taps's website and access its "One-Stop Shop" because no such shop exists. *Id.* Currently situated, 3taps's website shows its business is to engage in judicial advocacy, not to sell data to developers.

Further, besides pointing to its defunct web shop, 3taps fails to plead any other facts supporting its claim that it is ready, willing, and able to engage in business activity. For instance, 3taps does not plead that it has any employees that would allow it to immediately engage in business activity, such as engineers, or sales or marketing teams. Indeed, 3taps's insistence that it is ready, willing, and able to engage in business activity using scraped LinkedIn data is directly contradicted by 3taps's inability to maintain its status as a valid corporation. 3taps has in fact not paid taxes in Delaware, its state of incorporation, for years, leading the Secretary of State of Delaware to "certify that [3taps Inc.] is no longer in existence and good standing under the laws of the state of Delaware having become inoperative and void the first day of March, A.D. 2020 for non-payment of taxes." RJN Ex. 19.

### ARGUMENT

A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. Thus, the burden is on 3taps as the party asserting jurisdiction to prove its existence. *Crossbow Tech., Inc. v. YH Tech.*, 531 F. Supp. 2d 1117, 1119 (N.D. Cal. 2007) (citations omitted). Additionally, jurisdiction must exist *at the time of filing the complaint*. *Grupo Dataflux v. Atlas Glob. Grp.*, 541 U.S. 567, 570 (2004); *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993); *Morongo Band of Mission Indians v. Cal. Bd. Of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). In assessing whether 3taps has met its burden to show subject matter jurisdiction at the time of filing, the Court may consider factual material outside the pleadings so long as reasonable inferences are drawn in plaintiff's favor. *Edison*, 822 F. 3d at 517.[3] When considering a Rule 12(b)(1) motion to dismiss, the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes

---

[3] 3taps did not object to the Court taking judicial notice of the correspondence between the parties relied upon in its Complaint, it simply offered its own interpretation of that correspondence. *See Plaintiff 3taps, Inc.'s Opposition to Defendant LinkedIn's Motion to Dismiss* at 3-4 (hereafter "Opp.").

where necessary. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).  In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

As set forth below, it is apparent that 3taps has not met its burden.  First, 3taps is a void corporation, and as such does not have capacity to bring suit not incident to winding up its business.  Second, it has not shown any threat of particularized injury sufficient to confer standing.  3taps has not shown that LinkedIn has threatened it in any way whatsoever, let alone that LinkedIn is the source of imminent injury.  Nor could it since 3taps cannot legally operate its business.  Finally, the Court should exercise its considerable discretion to dismiss this declaratory relief action because of 3taps's unseemly judicial shopping and attempts at manipulating facts to conjure a dispute where none exists.

## I.      3TAPS IS VOID AND LACKS CAPACITY TO BRING THIS LAWSUIT.

3taps is a void corporation legally incapable of bringing this lawsuit.  A corporation's capacity to "sue or be sued" is determined by the "law under which it was organized." Fed. R. Civ. P. 17(b)(2).  3taps is incorporated in Delaware, so the Court must apply Delaware law to determine if 3taps lacks capacity to sue.

Under Delaware law, 3taps is a void corporation lacking the power to sue.  Under Del. Code Ann. tit. 8, § 510, if any corporation neglects or refuses to pay the State any franchise tax it owes, the charter of the corporation is void, and all powers conferred by law upon the corporation are declared inoperative, including the power to sue in court.  *See* Del. Code Ann. tit. 8, § 510; *Transpolymer Indus., Inc. v. Chapel Main Corp.*, 582 A.2d 936, 1990 WL 168276, at *1 (Del. 1990) (stating that, when corporation's charter was revoked under section 510, corporation lost any standing to pursue appeal in court).  The state of Delaware has declared that 3taps "is no longer in existence and good standing under the laws of the state of Delaware having become inoperative and void" for "having neglected or refused to pay their annual taxes." RJN Ex. 19. Thus, as a void corporation, 3taps is no longer an existing company currently capable of bringing this suit.

Delaware provides a limited exception to this lack of capacity that does not apply to 3taps here.  Delaware's corporate wind-up statute permits corporations to bring or defend a suit for three years after dissolution, but only if that suit is incident to winding-up the corporation.  *See* Del. Code Ann. tit. 8, § 278.  And authority is split on whether voided corporations are entitled to avail themselves of § 278 at all, since they are void rather than in dissolution.  This Court has found "more persuasive the approach followed by the Delaware Supreme Court—that void corporations lose their standing to pursue legal actions until the corporate status is restored."  *In re Apple iPod iTunes Antitrust Litig.*, No. 05-CV-0037 YGR, 2014 WL 6783763, at *4 (N.D. Cal. Nov. 25, 2014) (citation omitted); *see also Backyard Wrestling, Inc. v. Pro-Active Ent. Grp., Inc.*, 398 F. App'x 299, 299–300 (9th Cir. 2010) (recognizing that under Delaware law a void corporation is not dissolved and does not have the capacity to bring suit while void); *Bd. of Managers of Soho Int'l Arts Condo. v. City of New York*, No. 01 Civ. 1226 (DAB), 2005 WL 1153752, at *11 n.19 (S.D.N.Y. May 13, 2005) ("'Dissolution' of a corporation is a specific legal term and is not the legal equivalent of a corporation declared inactive for non-payment of franchise taxes.").

Even if Delaware's wind-up statute could apply to a void corporation like 3taps, it would not provide capacity to bring this case because the statute is limited to suits brought only for the purpose of winding up its business.  *See City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1194-95 (Del. 1993) ("In order to formalize the continued existence of corporate assets and to provide a mechanism for the assertion of claims *as part of the 'winding up' process*, the Delaware General Corporation Law continues the corporation's existence by operation of law." (emphasis added)).  The Delaware Chancery Court has held that the three-year dissolution period exists "for the purpose of winding up [the company's] corporate and business affairs" and that, during this period, the company "may not carry on any business for which it previously existed, but it may do that which is necessary to bring its former business affairs to a conclusion."  *In re Citadel Indus., Inc.*, 423 A.2d 500, 501 (Del. Ch. 1980); *Matthew v. Laudamiel*, No. CIV.A. 5957-VCN, 2012 WL 605589, at *21 (Del. Ch. Feb. 21, 2012) (§ 278 ensures that a dissolved corporation maintains the authority and viability to sue "incident to the winding up of its affairs");

1   *Territory of U.S. Virgin Islands v. Goldman, Sachs & Co.*, 937 A.2d 760, 789 (Del. Ch. 2007),

2   *aff'd*, 956 A.2d 32 (Del. 2008) (purpose of § 278 ensures that "claimants against the corporation

3   had a time period in which to assert claims against the dissolved corporation" while also

4   providing shareholders of that corporation "repose from claims regarding the dissolved

5   corporation" after three years).

6          3taps brings these claims not as part of winding down its business, but rather for the exact

7   opposite purpose of "continuing the business for which said corporation shall have been

8   established"—a purpose forbidden by § 278. *Addy v. Short*, 89 A.2d 136, 139 (Del. 1952)

9   ("During the three-year period of winding up, the corporation functions exactly as it had

10  functioned before dissolution, with the important qualification that its powers are limited to

11  closing its affairs and do not extend to carrying on the business for which it was established.");

12  *Gamble v. Penn Val. Crude Oil Corp.*, 104 A.2d 257, 260 (Del. Ch. 1954) ("Under [§ 278] as

13  construed by our Supreme Court a dissolved Delaware corporation has the power to close its

14  affairs but not to carry on the business for which it was established."). The relief 3taps seeks is a

15  declaration that it may carry on the business of scraping. Such a lawsuit is not incident to

16  winding up its business, but, rather, is a suit in furtherance of its alleged business. Delaware law

17  does not permit a void corporation to bring such a suit.

18  **II.     3TAPS LACKS ARTICLE III STANDING BECAUSE IT FAILS TO ALLEGE

19             ANY ACTUAL OR IMMINENT REDRESSABLE INJURY.**

20         Article III standing requires an injury in fact. *TransUnion LLC v. Ramirez*, 141 S. Ct.

21  2190, 2203 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016).

22  Plaintiff's injury must be concrete and particularized, and actual or imminent, not conjectural or

23  hypothetical. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992). The "personal stake"

24  required for subject matter jurisdiction ensures that "federal courts do not adjudicate hypothetical

25  or abstract disputes." *TransUnion*, 141 S. Ct. at 2203. The harm must be concrete and real, not

26  abstract. *Id.* at 2203-04. It also must be redressable by the Court. *Id.* 3taps's SAC fails to meet

27  these requirements.

28

MOTION TO DISMISS
18-cv-00855-EMC

1    First, 3taps fails to allege facts showing that it will suffer a concrete, real, or imminent

2    harm in the absence of the requested declarations.  Instead, 3taps misconstrues the parties'

3    correspondence and relies on bare conclusory allegations devoid of any facts.  For instance, 3taps

4    states that "[b]ut for the threat of litigation by LinkedIn," 3taps would immediately begin scraping

5    from LinkedIn webpages.  SAC ¶19.  As evidenced by the correspondence between the parties,

6    LinkedIn has made no such threat and specifically ruled out the possibility of taking immediate

7    action against 3taps.  RJN Ex. 6.  Similarly, 3taps states that it is "harmed by its inability to

8    scrape LinkedIn in that it is being denied a valuable resource (information regarding LinkedIn's

9    over half billion users) that is much sought after by data scrapers and their clients."  SAC ¶19.

10   But 3taps does not allege that it has ever attempted to scrape data from LinkedIn webpages, nor

11   does it allege that LinkedIn has ever taken action directed against 3taps specifically to hinder

12   3taps's ability to do so.

13   Further, 3taps provides only one fact explaining why LinkedIn data is valuable to its

14   business.  Namely, that it has ████████████████████████████████████

15   ████████████████████  SAC ¶20. ████████████████████████████████

16   ████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████  *Id.*  This Court should regard the

19   prospect of this ████████████████████████  with heavy skepticism, particularly

20   when the SAC does not identify any other lost business opportunities and when the 3taps website

21   to which the SAC points is nothing more than advocacy and dead links.  Beyond this, 3taps

22   makes only the conclusory allegation that LinkedIn data would be beneficial to its purported

23   business and prospects.  SAC ¶19.  This threadbare, abstract, and hypothetical harm is

24   insufficient.  That 3taps failed to provide any factual allegations regarding legitimate business

25   opportunities even after twice given the opportunity to amend shows there is no real and

26   immediate harm.  3taps's failure to articulate any harm that either (a) has occurred, or (b) is

27   imminently threatened to occur, is dispositive as to subject matter jurisdiction.  Without an

28   immediate and concrete prospect of harm of the type normally adjudicated by federal courts, such

MOTION TO DISMISS
18-cv-00855-EMC

as physical, monetary, or reputational injury, 3taps simply does not have standing to bring its claim.  *See TransUnion,* 141 S. Ct at 2211.

Second, as a void corporation legally incapable of carrying on its business, the declaratory relief 3taps seeks—that it will not violate certain laws or constitute a breach of contract or a trespass "if it proceeds to access and use publicly-available facts and information from LinkedIn's webpage" (SAC ¶¶29, 34, 38, 43)—is incapable of redressing its alleged injury.  *See Lujan*, 504 U.S. at 561 (standing requires that injury be redressable by a favorable decision); *Hobbs v. Sprague*, 87 F. Supp. 2d 1007, 1012 (N.D. Cal. 2000) (no standing when court unable to discern whether Plaintiff's alleged injury would be redressed by a favorable decision).  3taps is not legally capable of continuing its business activities.  Consequently, any decision from this Court would not free the way for 3taps to scrape LinkedIn, and as such would not redress its alleged injury.  *See California v. Texas*, 141 S. Ct. 2104, 2116 (2021) (Article III standing requires that the requested remedy will redress plaintiff's injuries); *Carney v. Adams*, 141 S. Ct. 493, 501 (2020) (Assertions by attorney that he wanted to be, and would apply to be, a judge on a Delaware court, in the absence of any evidence that he was able and ready to apply in the imminent future, were insufficient to show a concrete, particularized, and imminent injury-in-fact, as would be required for Article III standing); *Mayfield v. United States*, 599 F.3d 964, 972–73 (9th Cir. 2010) (no standing when declaratory judgment would not provide relief or redress injury); *United States v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985) ("Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties.").

## III.   THE AMENDED COMPLAINT DOES NOT DEMONSTRATE A RIPE CONTROVERSY BETWEEN LINKEDIN AND 3TAPS.

Article III jurisdiction requires an actual controversy that is imminent and concrete. Declaratory relief is no exception: A party seeking relief under the Declaratory Judgment Act must allege facts sufficient to establish the existence of such a controversy.  *Shalaby v. Jacobowitz*, No. C 03-0227-CRB, 2003 WL 1907664, at *2 (N.D. Cal. Apr. 11, 2003), *aff'd*, 138

F. App'x 10 (9th Cir. 2005).  To determine whether a complaint rises to the level of an actual controversy, the court must examine whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  "In other words, the adversarial relationship must reach the point where there is a specific need for the court to declare the rights of the parties."  *Millennium Lab'ys, Inc. v. eLab Consulting Servs.*, No. 12CV1109 JM DHB, 2012 WL 2721919, at *3 (S.D. Cal. July 9, 2012).

The controversy must be "definite and concrete."  *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 242–43 (1952).  Where no "definite and concrete" case or controversy exists, the dispute seeks "an advisory opinion based on 'a hypothetical state of facts.'"  *Sobini Films v. Tri-Star Pictures Inc.*, No. CV 01-06615 ABC (RNBx), 2001 WL 1824039, at *2, (C.D. Cal. Nov. 21, 2001) (internal citation omitted).  Such a dispute "fails to invoke federal court jurisdiction."  *Id.*; *Coffman v. Breeze Corps.*, 323 U.S. 316, 324 (1945) (declaratory judgment "is available in the federal courts only in cases involving an actual case or controversy . . . and it may not be made the medium for securing an advisory opinion in a controversy which has not arisen." (internal citations omitted)).

The Amended Complaint fails to allege *any* facts showing a real and immediate controversy between 3taps and LinkedIn.  3taps's bald assertion that in 2018 it decided it wanted to collect data from LinkedIn webpages, that it "stands ready, willing, eager and able" to scrape data from LinkedIn's website, and "has the means and know how to begin doing so immediately," fails to establish any scraping conduct, or definite plan to engage in scraping activity, giving rise to a substantial, immediate, and real controversy.  *See Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.*, 721 Fed. Appx. 628, 630 (9th Cir. 2018) (declaratory judgment claim that there would be trademark confusion was insufficient where the plaintiff had not yet made any such sales nor alleged or offered proof that it had "imminent plans" to do so); *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1126–27 (9th Cir. 1996) (immediacy requirement not met when plaintiffs alleged they "wish and intend to engage in unspecified conduct" violating act without articulating

1    concrete plans to do so, and without identifying a threat of arrest or prosecution made against

2    them).  These vague and conclusory allegations are insufficient to establish a real controversy.

3    *Giannini v. Am. Home Mortg. Servicing, Inc.*, No. C11-04489 TEH, 2012 WL 298254, at *4

4    (N.D. Cal. Feb. 1, 2012) (dismissing action when complaint made only conclusory allegations

5    regarding subject of declaratory request; factual allegations were insufficiently specific to sustain

6    the declaratory judgment sought); *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 607–08 (D. Nev.

7    2011) (Plaintiff failed to plead sufficient jurisdictional facts to establish a substantial case or

8    controversy where trademark was not in use and Plaintiff did not show definite intent to begin

9    using mark; vague and conclusory statements insufficient).  3taps cannot create an actual

10    controversy by pointing to ███████████████████████████████████

11    The fact that 3taps failed to allege any real facts regarding its proposed activity beyond these bare

12    conclusions and that 3taps failed to list ██████████████ even after twice being given

13    the opportunity to amend its complaint to include such facts, highlights its inability to do so.

14        Indeed, the lack of immediacy is evidenced by the fact that 3taps's SAC does not provide

15    any facts regarding actual steps it has taken to implement its plan to access and use data from

16    LinkedIn's servers, since it allegedly determined to do so in early 2018.  3taps's failure to allege

17    that it has taken any action in furtherance of its plan in nearly four years reveals that there is no

18    real and immediate controversy; rather, what 3taps actually seeks in this matter is an

19    impermissible advisory opinion based on unalleged hypothetical facts.  *See Coffman,* 323 U.S. at

20    324 (The declaratory judgment procedure "may not be made the medium for securing an advisory

21    opinion in a controversy which has not arisen." (internal citations omitted)).

22        3taps resorts to trying to manufacture an immediate, ripe controversy by misquoting its

23    pre-suit correspondence with LinkedIn.  Specifically, the SAC alleges that in response to a

24    January 16, 2018 letter from 3taps's counsel generically asserting that "3taps intends to begin

25    scraping publicly-available data from LinkedIn.com in the coming weeks" (RJN Ex. 5), LinkedIn

26    supposedly responded with a letter stating that "the CFAA prohibited 3taps from collecting and

27    using data from LinkedIn's publicly-available webpage."  SAC ¶15.  Those words *do not appear*

28    *in the letter in that fashion*.  RJN Ex. 6.  3taps cobbled together different parts of a legal analysis

to make it sound like a specific threat.  LinkedIn's letter does not threaten 3taps.  Rather, LinkedIn explicitly asserted it would not even consider legal action until after the *hiQ* appeal was resolved.  *Id*. at 2.

The reason for 3taps's attempted manufactured controversy is clear.  3taps and its primary investor, Hard Yaka, attempted to manufacture a controversy to try to get out from under an existing permanent injunction instead of going back to that judge and seeking relief in a proper fashion.  Hard Yaka and Mr. Kidd appear to have heard about the *hiQ* injunction, bought into hiQ, and then tried to create a controversy like the one between LinkedIn and hiQ.  LinkedIn did not take the bait.  3taps's deliberate misrepresentation of LinkedIn's letter underscores the degree to which this entire "dispute" is manufactured.  Far from establishing a real and immediate controversy as the SAC alleges, the pre-suit correspondence of the parties evidences the lack of an immediate and real controversy.  *See Purely Driven Prods., LLC v. Chillovino, LLC*, 171 F. Supp. 3d 1016, 1019 (C.D. Cal. 2016) (finding "no case of actual controversy between the parties" when "there is no evidence that Defendants have threatened to file or filed any infringement claims against Plaintiffs, and Defendants expressly disclaimed threatening Plaintiffs with an infringement action").

The SAC's failure to allege *any facts* about steps 3taps plans to take to scrape data from LinkedIn webpages, its practical ability to do so, and failure to allege any business opportunity ███████████████████████ underscores that 3taps does not have now, and has never had, an actual and concrete plan to scrape data from LinkedIn's servers.  Because 3taps seeks a declaration based on conduct it does not allege it has undertaken and has no concrete plans or ability to undertake, the SAC fails to invoke this Court's declaratory judgment jurisdiction, and, accordingly, it must be dismissed.  *See Clark v. City of Seattle*, 899 F.3d 802, 809 (9th Cir. 2018) (affirming dismissal when alleged harm was speculative and based on events that had not yet occurred and may never occur, and holding that "[f]or a case to be ripe, it must present issues that are 'definite and concrete,' not hypothetical or abstract").

///

1

**IV.     IN ALL EVENTS, THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS.**

2

The Court has discretion to dismiss a declaratory relief case even where, unlike here,

3

there is subject matter jurisdiction.  *MedImmune*, 549 U.S. at 136 (courts have discretionary

4

power to refuse declaratory relief cases).  The Court should exercise its considerable discretion

5

because 3taps has manufactured this lawsuit for the improper purpose of avoiding an existing

6

permanent injunction and manufactured an alleged business opportunity in order to create the

7

appearance of a real and imminent harm.

8

3taps misrepresented the nature of this purported dispute to avoid another judge of this

9

Court and should not be permitted to maintain this action in equity in light of its conduct.

10

Specifically, this case is a disguised effort to do away with Judge Breyer's injunction from the

11

*Craigslist v. 3taps* case without meeting the required standard for doing so.  The practical effect

12

of Judge Breyer's injunction is that 3taps cannot freely engage in any scraping given the CFAA's

13

prohibition on *knowing* access without authorization.  Instead of attempting to dissolve that

14

injunction through proper channels, 3taps has made repeated misrepresentations that this dispute

15

is "related" to the *hiQ v. LinkedIn* matter in order to get before this Court and avoid Judge Breyer.

16

Indeed, 3taps's Complaints and 3taps's motion to relate contain several misrepresentations;

17

namely (1) that the hiQ dispute led to this dispute; (2) that 3taps wants to engage in the same

18

activity as hiQ; (3) that LinkedIn sent 3taps a cease-and-desist letter accusing it of violating the

19

CFAA similar to the letter sent to hiQ; and (4) that the facts of this case are nearly identical to the

20

facts leading to the hiQ case.  *See* Compl. ¶¶2, 16, 22; Am. Compl. ¶¶ 2, 16, 23, 27, 32;  RJN Ex.

21

7 at 1, 3.  None of these assertions are true.  The Court should not countenance this unseemly

22

judge-shopping and should exercise its considerable discretion to dismiss this action.

23

3taps's gamesmanship is further evident from the fact that it manufactured ███████

24

████████████████████████████████████████████████████████████████████

25

████████████████████████████████████████████████████████

26

████████████████████████████████████████████████████. The Court

27

gave 3taps the opportunity to amend its pleading to "provide non-conclusory allegations as to

28

how [3taps] has engaged in meaningful preparation to conduct data scraping activity."  ECF No.

- 17 -

MOTION TO DISMISS
18-CV-00855-EMC

1    67 at 1.  All 3taps has done is point to a dead website and █████████████████████

2    ████████████████████████████████████████████████████████████████████████████

3    There is no reason for the Court to expend its resources adjudicating an unripe dispute brought by

4    a void corporation whose true interest is legal advocacy.  This case is a textbook example of the

5    kind of speculative declaratory relief claim the Court should use its discretion not to hear.

6                                  <u>**CONCLUSION**</u>

7            3taps lacks standing to pursue its declaratory relief claims, has failed to demonstrate an

8    actual controversy, and in all events the Court should exercise its discretion to dismiss this

9    unnecessary lawsuit brought for improper purposes.

10

11   Dated: August 1, 2022                          Orrick, Herrington & Sutcliffe LLP

12                                                  By:  _____
                                                              */s/ Annette L. Hurst*
13                                                         ANNETTE L. HURST
                                                         Attorneys for Defendant
14                                                       LinkedIn Corporation

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -