1  Thomas V. Christopher (Bar No. 185928)
2  **The Law Offices of Thomas V. Christopher**
   The Salesforce Tower
3  415 Mission Street, 37th Floor
   San Francisco, CA 94105
4  415-659-1805
5  Email: Thomas@ThomasChristopherLaw.com

6  Attorneys for Plaintiff 3taps, Inc.

7

8                 **UNITED STATES DISTRICT COURT**

9                 **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 3TAPS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>LINKEDIN CORPORATION, a Delaware corporation,<br><br>Defendant. | CASE NO. 3:18-cv-00855-EMC<br><br>**PLAINTIFF 3TAPS, INC.'S OPPOSITION TO DEFENDANT LINKEDIN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Judge:      Hon. Edward M. Chen<br>Hearing:   Oct. 27, 2022<br>Time:       1:30 p.m.<br>Location:  Courtroom 5<br>Trial:        None Set<br><br>[*Request for Judicial Notice and Declaration of Thomas V. Christopher filed concurrently herewith*] |

**OPPOSITION TO MOTION TO DISMISS SAC – NO. 3:18-cv-00855-EMC**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................2

II.  STATEMENT OF FACTS .................................................................................................3

III. ARGUMENT .....................................................................................................................5

    A.  Legal Standard. .........................................................................................................5

    B.  3taps Has Capacity To Sue. ......................................................................................5

    C.  3taps' Allegations Demonstrate Article III Standing. ...............................................7

        i.     Injury-In-Fact. ..................................................................................................8

        ii.    Redressability. ................................................................................................11

    D.  3taps' Allegations Demonstrate Existence of an Actual Controversy. ...........11

    E.  The Court Should Exercise its Discretion and Consider the Merits. ..............15

IV. CONCLUSION ...............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Rhoades v. Avon Prods., Inc.*
    504 F.3d 1151, 1160 (9th Cir. 2007) ............................................................ 11

*Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*
    805 F.Supp.2d 888, 896 (N.D. Cal. 2011) ........................................................ 5

*MedImmune, Inc. v. Genentech, Inc.*
    549 U.S. 118, 127 (2007) ................................................................................ 6,13

*SanDisk Corp. v. STMicroelectronics, Inc.*
    (Fed. Cir. 2007) 480 F.3d 1372 ........................................................................ 5

*GTE Directories Pub. Corp. v. Trimen America, Inc.*
    (11th Cir. 1995) 67 F.3d 1563, 1568 ................................................................ 5

*Frederic G. Krapf & Son*
    243 A.2d 713, 715 (Del. 1968) ........................................................................ 6

*Backyard Wrestling, Inc. v. Pro-Active Entertainment Group, Inc.*
    398 F. App'x 299, 300 (9th Cir. 2010) ............................................................ 6, 7, 11

*Lockwood v. Lopez*
    1996 WL 162957 (N.D. Cal. Apr. 3, 1996) ..................................................... 17

*Evolutionary Intelligence LLC v. Yelp, Inc.*
    2013 WL 12173933, at *1 (N.D. Cal. Oct. 8, 2013) ........................................ 17

# TABLE OF AUTHORITIES (continued)

**Page(s)**

**CASES**

*Grupo Dataflux v. Atlas Glob. Grp.*
  541 U.S. 567, 570 (2004) ……………………………………………….....7

*Keene Corp. v. United States*
  508 U.S. 200, 207 (1993) ……………………………………………….....7

**OTHER AUTHORITIES**

*8 Del. C. Section 312(e)*………………………………………………………..6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

3taps is a data scraping business. LinkedIn is the largest professional networking site in the world and is a rich goldmine of publicly available information for data scrapers like 3taps. 3taps wishes to scrape publicly available data from LinkedIn and provide that data to a client of 3taps. 3taps would do so but for the threat of ruinous litigation by LinkedIn. 3taps has prepared to scrape LinkedIn by developing proprietary software that mimics the behavior of an internet browser to access LinkedIn account pages. 3taps' is harmed by its inability to scrape data from LinkedIn. All these facts are alleged in the Second Amended Complaint. The Court should accept the truth of these allegations on a 12(b)(1) motion. Rhoades v. Avon Products, Inc., 504 F.3d 1151, 1160 (9th Cir. 2007) (question presented by Rule 12(b)(1) motion is whether complaint, on its face, is sufficient to survive motion to dismiss, not whether alleged facts will ultimately prove accurate). 3taps has unquestionably pled facts sufficient to establish standing to bring this action.

Ignoring 3taps' allegations, LinkedIn asks the Court to make factual findings on tangential matters not referenced in the SAC, and invites the Court to do so by attaching no less than 19 exhibits to its motion. In doing so, LinkedIn throws up a series of irrelevant red herrings, such as the fact that 3taps' parent company has a common investor with the 3taps' client identified in the SAC. Of course, LinkedIn cites absolutely no authority establishing that this should make any difference whatsoever to the standing analysis.

LinkedIn also wastes pages of its motion feigning total ignorance of the venture financing process by speculating that an entire venture financing round for the plaintiff in a related action, hiQ Labs, Inc. ("hiQ"), was somehow timed and manipulated by 3taps' parent company to allow 3taps to "manufacture" a relationship with hiQ for the purpose of bringing this action. Venture rounds are often intensively competitive for potential investors and are always timed based on the capital needs

of the raising company, and general and industry specific economic trends. LinkedIn knows this and should not pretend otherwise with allegations that evince a novice's understanding of the structure, dynamics, and timing of venture rounds. Moreover, the speculative conspiracy theory postulated by LinkedIn about 3taps' parent company's motivation to invest in hiQ would have no relevance to this motion even if it were true. The issue on this motion is subject matter jurisdiction, not speculative theories about the motivation for investment decisions by non-parties.

LinkedIn's motion to dismiss is otherwise based on recycled jurisdictional arguments from its previous motion—that 3taps has supposedly failed to allege a cognizable harm and failed to show the existence of an actual controversy—plus a brand-new argument that 3taps lacks capacity to sue because the Delaware Secretary of State voided its corporate charter for non-payment of fees during the pendency of this litigation. None of these arguments have merit and LinkedIn's motion should be denied in its entirety.

## II. STATEMENT OF FACTS

3taps is engaged in the business of scraping—that is, using automated means to access publicly-available facts from the internet—and using, or providing to others for use, those publicly-available facts in innovative and creative ways primarily designed to enhance user experiences and safety. SAC ¶10. One of 3taps' investors is Hard Yaka, Inc., which is also an investor in another scraping company, hiQ. Id. ¶14. hiQ, in turn, is the plaintiff in the hiQ Litigation. Id.

Relying on this Court's holding in the hiQ Litigation, 3taps decided to begin scraping publicly-available information from the LinkedIn website. SAC ¶¶14, 17 ("3taps stands ready, willing, eager and able to scrape publicly-available information from Linkedin's website and provide that data to third party developers … 3taps has the means and know how to begin scraping that data from LinkedIn immediately."). However, when 3taps informed LinkedIn of its intention, LinkedIn asserted that the legal basis of this Court's hiQ decision was "misplaced" and that the CFAA prohibited

3taps' scraping activities. SAC ¶15; see ECF 077-6 (Exh. 6 to LinkedIn's RJN). As a result of LinkedIn's implicit threat that 3taps would be liable to LinkedIn if 3taps engaged in its intended scraping activities, 3taps initiated this action seeking a declaration that it will not violate the CFAA by accessing and using publicly-available data on LinkedIn's website. SAC ¶16. 3taps has prepared to scrape LinkedIn by developing proprietary software that mimics an internet browser to access LinkedIn account data.  SAC ¶18.  The threat of ruinous litigation by LinkedIn (which has demonstrated through its actions in the hiQ litigation that it will aggressively litigate against data scrapers) is the only thing preventing 3taps from immediately scraping LinkedIn's website. Id. ¶19.

On April 7, 2022, this Court heard argument concerning LinkedIn's Rule 12(b)(1) motion to dismiss 3taps' First Amended Complaint for lack of subject-matter jurisdiction, based on arguments similar to those presented here. The Court granted LinkedIn's motion for lack of standing/ripeness, but with leave to amend. Specifically, the Court ruled: "In the amended complaint, 3taps must provide nonconclusory allegations as to how it has engaged in meaningful preparation to conduct data scraping activity." See ECF 067 (Minute Order).

Pursuant to the Court's order, 3taps amended its complaint to state that is has prepared to scrape LinkedIn by developing proprietary software that mimics an internet browser to access LinkedIn account data. SAC ¶18. The SAC also explains 3taps' immediate intended business use for scraping publicly available data posted online by LinkedIn. See SAC ¶¶20-25. 3taps intends to provide that data to a client ("Client") specifically identified in the SAC.[1]  Client is a Delaware corporation headquartered in Oakland, California, that employs approximately 90 people. Id. ¶21. Client wishes to acquire scraped data from 3taps specifically for use in its business,

---

[1] The Client is referred to in this anonymous manner in this opposition to avoid the administrative burdens on the Court and the parties of having this opposition filed under seal.

**4**
OPPOSITION TO MOTION TO DISMISS SAC – NO. 3:18-cv-00855-EMC

and the nature of that business and the specific use for the data is pled in the SAC. See id. ¶¶21-25.

**III. ARGUMENT**

    **A.    Legal Standard.**

Federal courts are courts of limited jurisdiction; they are authorized only to exercise jurisdiction pursuant to Article III of the U.S. Constitution and federal laws enacted thereunder. Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc., 805 F.Supp.2d 888, 896 (N.D. Cal. 2011). Hence, an Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. In re LinkedIn User Priv. Litig., 932 F.Supp.2d 1089, 1092 (N.D. Cal. 2013).

However, in order to satisfy the Article III standing requirement, a plaintiff seeking declaratory relief is not required to take an action that might expose it to liability before it seeks a court declaration regarding the legality of that proposed course of action. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007); SanDisk Corp. v. STMicroelectronics, Inc. (Fed. Cir. 2007) 480 F.3d 1372, 1382 ("SanDisk need not 'bet the farm,' so to speak, and risk a suit for infringement . . . before seeking a declaration of its legal rights"); GTE Directories Pub. Corp. v. Trimen America, Inc. (11th Cir. 1995) 67 F.3d 1563, 1568 ("[t]he practical effect of finding no case or controversy in the instant case would be to force GTEDPC to contact Trimen's clients thereby subjecting itself to potential liability before allowing it to receive a declaratory judgment. GTEDPC is not required to take such action for an actual case or controversy to exist.").

    **B.    3taps Has Capacity To Sue.**

On this go-around, LinkedIn asserts a new argument that - after 3taps filed this lawsuit in February 2018 - the Delaware Secretary of State issued a certificate voiding 3taps' corporate charter based upon non-payment of fees. See ECF 076 (Motion) at

**5**
OPPOSITION TO MOTION TO DISMISS SAC – NO. 3:18-cv-00855-EMC

9:14-11:17; ECF 077-19 (certificate dated March 1, 2020). According to LinkedIn, "3taps is no longer an existing company currently capable of bringing this suit."

Not only is LinkedIn dead wrong on this latter point, but the fact also that LinkedIn chose to devote an entire section to this argument, which it must know is subject to a 10-minute administrative fix (*i.e.,* pay the corporate fees), is puzzling. While it is true that due to an oversight during the pandemic 3taps did not pay its fees to the state of Delaware, that issue has been fixed, and 3taps has been "revived" to its status as a corporation in good standing in Delaware. See Christopher Decl. Ex. A.

The fact that 3taps has been "revived" and is now in good standing completely moots LinkedIn's argument on this issue. Delaware law provides the following regarding the revival of a Delaware corporation:

> "[R]evival shall validate all contracts, acts, matters and things made, done and performed within the scope of its certificate of incorporation by the corporation, its officers and agents during the time when its certificate of incorporation was forfeited or void pursuant to this title, or after its expiration by limitation, with the same force and effect and to all intents and purposes as if the certificate of incorporation had at all times remained in full force and effect."

8 Del. C. Section 312(e). The Delaware Supreme Court has stated that "the performance of corporate acts following forfeiture is wrongful at the time, but the later reinstatement of the charter validates the corporate acts." Frederic G. Krapf & Son, 243 A.2d 713, 715 (Del. 1968). Revival to good standing permits a corporation to continue prosecuting claims in federal court as if the issue had never occurred. V.E.C. Corp. of Del. v. Hilliard, No. 10 CV 2542(VB), 2011 WL 7101236, at *6 (S.D.N.Y. Dec. 13, 2011) (citations omitted); see Backyard Wrestling, Inc. v. Pro-Active Entertainment Group, Inc., 398 F. App'x 299, 300 (9th Cir. 2010) ("Under Delaware law, where a corporation was void but then renewed, it is as though the corporation was never void, and the corporation regains all of its previous rights,

including capacity to sue"); GunUp, Inc. v. Urvan, No. 1:20-CV-02340-LMM, 2021 WL 2547662, at *5 (N.D. Ga., Feb. 24, 2021) (on motion to dismiss, holding "the Court is satisfied that Plaintiff has revived its corporate charter and has capacity to maintain this suit").

As LinkedIn emphasizes, subject-matter jurisdiction "must exist *at the time of filing the complaint*." ECF 076 (Motion) at 8:18-21 (emphasis in original) (citing Grupo Dataflux v. Atlas Glob. Grp., 541 U.S. 567, 570 (2004); Keene Corp. v. United States, 508 U.S. 200, 207 (1993); Morongo Band of Mission Indians v. Cal. Bd. Of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988). LinkedIn presents no argument or evidence that 3taps lacked capacity to sue in February 2018, when it filed this suit. Moreover, 3taps has been reinstated, rendering LinkedIn's arguments on this issue moot. Backyard Wrestling, Inc., 398 F. App'x at 300 (holding that even if plaintiff corporation was void and lacked capacity to sue at time of judgment on damages and entry of permanent injunction, subsequent reinstatement results in validation of all activities during void period).

### C. 3taps' Allegations Demonstrate Article III Standing.

Returning to arguments that LinkedIn raised by its previous motion to dismiss, LinkedIn first asserts that 3taps has failed to allege any actual or imminent redressable injury. See ECF 076 (Motion) at 11:20-13:22. LinkedIn argues (1) 3taps has not actually scraped data and LinkedIn has not actually prevented 3taps from scraping data, and (2) as a void corporation, 3taps cannot engage in any activities and therefore any injury it has suffered cannot be redressed. See id.

"Standing is a jurisdictional issue deriving from the 'case or controversy' requirement of Article III of the United States Constitution." Native Vill. of Kivalina v. ExxonMobil Corp., 696 F.3d 849, 867 (9th Cir. 2012) (citing Cole v. Oroville Union High Sch. Dist., 228 F.3d 1092, 1098 (9th Cir. 2000)). To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to

the challenged action of the defendant; and (3) that it is likely (not merely speculative) that injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000); Lujan v. Defs. of Wildlife, 504 U.S. 555, 561–62 (1992).

A plaintiff establishes an injury-in-fact when it shows that it has or may suffer "an invasion of a legally protected interest" that is "concrete and particularized" as opposed to being purely "conjectural or hypothetical." Spokeo, 136 S. Ct. at 1548 (quotation marks and citation omitted). To be "particularized," an injury "must affect the plaintiff in a personal and individual way." Id. (quoting Lujan, 504 U.S. at 560 n.1). To be "concrete," the injury "must actually exist"—a purely abstract concern will not do. Id. To establish a traceable injury, there must be "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Lujan, 504 U.S. at 560 (quotation marks and citation omitted) (alteration omitted). It must also be "likely" as opposed to merely "speculative" that the injury will be "redressed by a favorable decision." Id. at 561 (quotation marks and citation omitted).

      i.   Injury-In-Fact.

When a plaintiff seeks declaratory relief, as 3taps does here, the threat cannot be purely hypothetical, to confer Article III standing. See Hon. Virginia A. Phillips, et al., FEDERAL CIVIL PROCEDURE BEFORE TRIAL (The Rutter Group) at ¶2:4166. A plaintiff threatened with future injury has standing to sue if 'there is a substantial risk the harm will occur.' " In re Zappos.com, Inc., 888 F.3d 1020, 1024 (9th Cir. 2018) (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)).

The SAC meets these requirements. It identifies 3taps as a data scraping business. SAC ¶¶9-10. It correctly alleges that LinkedIn's website contains data that is "much sought after by data scrapers and their clients" and that access to this data would be "extremely beneficial to 3taps' business. . .." Id. ¶19. The SAC further

alleges that 3taps is "ready, willing, eager and able" to begin scraping LinkedIn and would do so immediately but for the threat of litigation from LinkedIn. Id. ¶17.

The SAC further alleges that 3taps has prepared to scrape LinkedIn by developing proprietary software that mimics an internet browser to access LinkedIn account data. SAC ¶18. The SAC also alleges that 3taps has a Client that seeks to have 3taps scrape the data, and 3taps will do so if the threat of litigation is lifted. Id. ¶¶20-25. The SAC specifically pleads the Client's identity, business, and the use for which it seeks the scraped data. Id. Thus, LinkedIn's contention in the motion to dismiss that 3taps's proposed scraping activities are "speculative" is completely at odds with the actual allegations of the SAC.

Nor is the threat to 3taps from LinkedIn "speculative." LinkedIn has previously engaged in aggressive litigation against hiQ for doing that which 3taps has proposed to do: scrape publicly-available information from LinkedIn. Moreover, when 3taps informed LinkedIn of its intent to scrape the LinkedIn website, LinkedIn expressly continued to insist that the CFAA does apply to publicly-available information despite this Court's prior order in the hiQ litigation, which LinkedIn described as "misplaced." See ECF 077-6 (Exh. 6 to LinkedIn's RJN). LinkedIn's letter to 3taps also referenced other federal cases in which 3taps had been sued under the CFAA for scraping the type of data it sought to scrape from LinkedIn. Taken together, Linkedin's letter can only be reasonably read as a theat. Given the facts and circumstances, the threat of litigation by LinkedIn is not purely speculative. The risk of harm if 3taps proceeds with its imminent scraping activities is substantial enough to establish standing.

Perhaps recognizing that 3taps has in fact pled sufficient facts to show standing here, LinkedIn asks this Court to step outside of the allegations of the SAC and make factual findings on two tangential issues that are of dubious relevance. First, LinkedIn makes the completely unsupported assertion that because 3taps and its Client have a common investor and officer, the transaction proposed between 3taps and its Client

1 should be disregarded.  See ECF 076 (Motion) at 12:13-13:2. LinkedIn offers no
2 authority or rationale why the existence of one shared investor renders a lost business
3 opportunity meaningless for purposes of evaluating harm to the plaintiff.  LinkedIn
4 also offer no evidence showing that the two corporations are some type of "sham"
5 corporate family, but implies the Court should simply infer as much without any
6 evidence on that issue.

7      In addition, LinkedIn asks the Court to infer that 3taps isn't actually a real
8 scraping business at all, but rather just some type of "advocacy project."  It is true that
9 3taps is a passionate advocate for public facts as public property – the principle upon
10 which its scraping business relies.  It is also true that the pandemic, scraping
11 restrictions and litigation threats have depleted 3taps' current inventory of scraped
12 data. So what? ***The fact that other large tech companies in widely-known cases,***
13 ***have sued 3taps for millions in damages and spent years in litigation against 3taps***
14 ***trying to stop 3taps' scraping of their webpages puts the lie to the claim that 3taps***
15 ***isn't a real data scraper***. Craigslist, Inc. v. 3taps, Inc., *et. al.*, 942 F. Supp. 962, 966-
16 67 (N.D. Cal. 2103) (describing 3taps as a data scraper that scrapes all apartment
17 classified postings from Craigslist, then markets that data under an API to other
18 apartment listing classified services).  ***If 3taps' is not a real data scraper, but just an***
19 ***advocacy project, why would Craigslist spend years of time and resources litigating***
20 ***to stop 3taps from scraping its apartment classified listings and marketing them to***
21 ***others?***  LinkedIn has no answer and its implication that 3taps isn't actually a data
22 scraping business is truly bizarre in light of the ample public record on the issue.

23      Indeed, LinkedIn's own conduct in this case defies its argument that 3taps is
24 just some kind of advocacy project.  If 3taps isn't a real data scraper, but just an
25 advocacy project, why is LinkedIn spending the time and resources to defend against
26 the declaration 3taps seeks in this action?  As a pure "advocacy project", 3taps would
27 represent no threat to LinkedIn.  The reason LinkedIn is vigorously fighting 3taps
28 here is simple.  LinkedIn knows full well that 3taps is one of the most well-known

professional data scrapers in existence and its feigned ignorance of this fact by attempting to paint 3taps as just an advocacy project is transparent.

At bottom, LinkedIn's arguments about the relationship between 3taps and its Client and whether 3taps is a business or advocacy project are based on pure speculation and of dubious relevance. Such speculation in a motion to dismiss is insufficient to controvert the allegations in the SAC that 3taps has a concrete business opportunity that is being thwarted by LinkedIn's threat of litigation. *See* Rhoades v. Avon Products, Inc., 504 F.3d 1151, 1160 (9th Cir. 2007) (question presented by Rule 12(b)(1) motion is whether complaint, on its face, is sufficient to survive motion to dismiss, not whether alleged facts will ultimately prove accurate).

### ii. Redressability.

LinkedIn has narrowed its redressability argument to claim that "3taps is not legally capable of continuing its business activities. Consequently, any decision from this Court would not free the way for 3taps to scrape LinkedIn, and as such would not redress its alleged injury." See ECF 076 (Motion) at 13:3-22. As explained above, 3taps has taken the steps necessary to return to good standing in Delaware and thus it is "as though the corporation was never void, and the corporation regains all of its previous rights, including capacity to sue." Backyard Wrestling, Inc., 398 F. App'x at 300; see also V.E.C. Corp. of Del., 2011 WL 7101236, at *6 ("action taken while [corporation's] charter was voided is ratified" upon reinstatement of charter). (See Christopher Decl. Ex. A).

### D.  **3taps' Allegations Demonstrate Existence of an Actual Controversy.**

LinkedIn's renewed motion recycles the argument that 3taps' secret motivation in prosecuting this lawsuit is to dissolve an injunction from another lawsuit prohibiting 3taps from scraping and selling apartment listings off Craigslist. See ECF 076 (Motion) at 13:25-16:26. This argument make no sense and is completely at odds with the rules of civil procedure. 3taps does not intend to ask this Court to dissolve an injunction issued by another federal court related to its scraping of apartments

**11**

listings from Craigslist, and 3taps does not understand how this Court would have the power to dissolve injunctions issued by other federal courts even if the Court wished to do so. (As an aside, the fact that LinkedIn argues that 3taps' real motivation in bringing this suit is to get out from under the court order stopping it from scraping and selling apartment listings from Craigslist completely undercuts LinkedIn's argument that 3taps is just an advocacy project and not really a scraping business).

With respect to LinkedIn's claim that no threat of litigation exists, as explained previously and once again here, LinkedIn's declaration that 3taps' immediate plans to scrape LinkedIn's public website would constitute "unauthorized access" creates an actionable controversy.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Ninth Circuit has explained that "[t]wo issues are presented to the district court" when it assesses whether it may and should exercise jurisdiction over an action for declaratory judgment. American States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1994). "First, the court must inquire whether there is a case of actual controversy within its jurisdiction. Jurisdiction to award declaratory relief exists only in a case of actual controversy. We have held that this requirement is identical to Article III's constitutional case or controversy requirement." Id. at 143. "Second, if there is a case or controversy within its jurisdiction, the court must decide whether to exercise that jurisdiction." Kearns, 15 F.3d at 143-44.

In assessing whether to exercise its discretion to entertain a declaratory relief claim over which it possesses subject matter jurisdiction, district courts apply the factors set out in Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942). "The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid

1  duplicative litigation." Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th
2  Cir. 1998).
3      LinkedIn claims 3taps fails to allege any facts to show a real and immediate
4  controversy between the parties since 3taps has not yet actually scraped Linkedin's
5  website. See ECF 076 (Motion) at 14:18-15:13. That argument is misguided. The
6  Supreme Court has held that a party need not take an action that could expose it to
7  liability before seeking a declaration regarding the legality of that proposed action.
8  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).
9      This principle has been applied in numerous cases and is based on the common
10 sense understanding that a party need not roll the dice on a potentially ruinous course
11 of action before seeking a declaratory judgment. The law simply does not require
12 3taps to risk a damages judgment by scraping LinkedIn's website first and seeking
13 declaratory relief on the legality of that scraping later. See SanDisk Corp. v.
14 STMicroelectronics, Inc., 480 F.3d 1372, 1380-81 (Fed. Cir. 2007) ("SanDisk need
15 not 'bet the farm,' so to speak, and risk a suit . . . before seeking a declaration of its
16 legal rights"); GTE Directories Pub. Corp. v. Trimen America, Inc., 67 F.3d 1563,
17 1568 (11th Cir. 1995) (holding that a party considering a course of action need not
18 take that action and expose itself to liability before seeking declaratory relief: "[t]he
19 practical effect of finding no case or controversy in the instant case would be to force
20 GTEDPC to contact Trimen's clients thereby subjecting itself to potential liability
21 before allowing it to receive a declaratory judgment. GTEDPC is not required to take
22 such action for an actual case or controversy to exist."); Surefoot LC v. Sure Foot
23 Corp., 531 F.3d 1236, 1241 (10th Cir. 2008) ("the existence of a case or controversy
24 in the Supreme Court's precedents had never depended on one party taking law-
25 breaking or contract-breaching steps before a declaratory suit could be filed.").
26      LinkedIn also continues to insist there is no immediacy present in this case
27 because LinkedIn's January 24, 2018, letter never explicitly threatened to
28 immediately file suit against 3taps. See ECF 076 (Motion) at 15:22-16:3. But

**13**
**OPPOSITION TO MOTION TO DISMISS SAC – NO. 3:18-cv-00855-EMC**

LinkedIn itself conveniently omits the context of its own statements, instead accusing 3taps of "manufactur[ing] an immediate, ripe controversy" by "misquoting" the pre-suit correspondence, and "cobbl[ing] together" different parts of LinkedIn's legal analysis.

3taps did no such thing. LinkedIn's objection to 3taps' proposed scraping was that it would violate a federal statute – the CFAA. As to the CFAA, LinkedIn rejected the legal basis of this Court's order in the hiQ litigation as "misplaced," and referenced instead Craigslist Inc. v. 3Taps Inc., to argue that data scraping is illegal under the CFAA. Those statements by LinkedIn in that context can only be reasonably viewed as a threat. Indeed, what purpose other than a threat could such statements possibly serve?

LinkedIn's reliance on Purely Driven Products, LLC v. Chillovino, LLC, 171 F.Supp.3d 1016, 109 (C.D. Cal. Mar. 22, 2016) does not mandate a different result. There, in the context of an opposition proceeding before the United States Patent and Trademark Office (USPTO), the defendant had filed a notice of opposition to the plaintiffs' application to register a mark. The district court held that this alone was insufficient to establish a case of actual controversy between the parties. But under the facts that are unique to proceedings before the USPTO, it has been recognized that "a simple opposition proceeding in the Patent and Trademark Office generally will not raise a real and reasonable apprehension of [an infringement] suit." Id.

That specific context has nothing to do with the facts here. Here, (i) a party that is actively litigating against known data scrapers, (ii) over the same behavior that 3taps intends to engage in, (iii) sent a letter to 3taps claiming that this Court wrongly construed the CFAA in granting the hiQ preliminary injunction, and (iv) referenced another court decision in which found data scraping to violate the CFAA. That is an implied threat of liability under the CFAA, and that is exactly how LinkedIn wanted it to be construed. No other explanation for those statements in that context makes any sense.

**14**
OPPOSITION TO MOTION TO DISMISS SAC – NO. 3:18-cv-00855-EMC

### E. The Court Should Exercise its Discretion and Consider the Merits.

In a final push for dismissal, LinkedIn argues that this Court should decline to exercise its discretion to consider this case. ECF 076 at 17:1-18:5. "[D]istrict courts have discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). "Situations justifying exercise of the court's discretion to issue a declaratory judgment include '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " Minn. Mining & Mfg. Co. v. Norton Co., 929 F.2d 670, 672 (Fed. Cir. 1991).

LinkedIn does not raise any meritorious reasons why this case is unfit for judicial resolution. First, as demonstrated by the foregoing, 3taps has standing and has demonstrated an actual controversy. A declaratory judgment here will clarify the legal relations at issue and afford relief from the uncertainty giving rise to this litigation. 3taps seeks a determination that its scraping would not violate the CFAA, the CFADA, and trespass laws. Resolution of those issues, and not every conceivable theory of liability, is all that is required. Harris, 569 F2d at 852; see also Calderon, 523 U.S. at 749. LinkedIn's argument concerning the Court's discretion totally ignores these crucial factors, opting instead to manufacture innuendo about 3taps' secret, unstated intentions for filing this lawsuit.

Second, LinkedIn's suggestion that 3taps has engaged in "judge shopping" is irrelevant and untrue. *3taps opposed LinkedIn's motion to relate this case to the Craigslist Litigation* because, under this Court's Local Rules, the requirements to relate this matter to the Craigslist action were simply not met.[2] The defendants in this

---

[2] Cases are deemed relatable under Civil Local Rule 3-12 where: "(1) The actions concern substantially the same parties, property, transaction or event; and [¶] (2) It

**15**
**OPPOSITION TO MOTION TO DISMISS SAC – NO. 3:18-cv-00855-EMC**

case and the Craigslist Litigation are different, a critical factor in a court's determination when considering whether to relate cases. Sorenson v. Lexar Media, 2008 WL 11344635, at * 1 (N.D. Cal. July 25, 2008) (declining to relate case where "the case currently before this Court and the case Plaintiff seeks to relate are filed against different defendants"); Evolutionary Intelligence LLC v. Yelp, Inc., 2013 WL 12173933, at *1 (N.D. Cal. Oct. 8, 2013) (denying relating cases brought by the same plaintiff against different defendants).

Moreover, when 3taps initiated this litigation, the final judgment in the craigslist Litigation was nearly three years old. See Lockwood v. Lopez, 1996 WL 162957 (N.D. Cal. Apr. 3, 1996) ("the court finds no authority supporting the proposition that a case that has been settled and closed may be related to a pending case.") It is hard to imagine how relating a new case to one settled years ago would avoid the "duplication" of effort between the two cases, as is the goal of Local Rule 3-12.

Considering the similarities between this action and the hiQ litigation (which unlike the Craigslist Litigation is a live, pending action) —the nature of the plaintiffs' businesses, the same conduct, the same defendant, the same type of relief on similar claims—it is unsurprising that this Court determined that the cases should be related and, in fact, did relate them.[3]

Thus, while LinkedIn may be disappointed that its own judge shopping efforts (*i.e.*, seeking to have this matter reassigned to Judge Breyer) were soundly rejected,

---

appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges."

[3] LinkedIn's contention that 3taps is bringing this action "as a disguised effort to do away with Judge' Breyer's injunction" in the Craigslist matter lacks any logical coherency. Judge Breyer enjoined 3taps from scraping Craigslist – only Craigslist – under the specific and facts of that case. Nothing in this action seeks relief from that injunction, and that injunction does not in any way prevent 3taps from scraping LinkedIn or any entity other than craigslist.

**16**
**OPPOSITION TO MOTION TO DISMISS SAC – NO. 3:18-cv-00855-EMC**

its accusation that 3taps engaged in misconduct ignores the local rules of this Court and is serious misguided.

### IV. CONCLUSION

For the foregoing reasons, 3taps respectfully requests that the Court deny LinkedIn's motion to dismiss the Second Amended Complaint. If, however, the Court is inclined to grant the motion in whole or in part, 3taps requests leave to amend in order to correct any deficiencies identified by the Court.

DATED: September 29, 2022        THE LAW OFFICES OF THOMAS V. CHRISTOPHER

By: *Thomas V. Christopher*
    Thomas V. Christopher
    Attorneys for Plaintiff 3taps, Inc.