1  ANNETTE L. HURST (SBN 148738)
   ahurst@orrick.com
2  RUSSELL P. COHEN (SBN 213105)
   rcohen@orrick.com
3  NATHAN SHAFFER (SBN 282015)
   nshaffer@orrick.com
4  DANIEL JUSTICE (SBN 291907)
   djustice@orrick.com
5  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
6  405 Howard Street
   San Francisco, CA  94105-2669
7  Telephone:   +1 415 773 5700
   Facsimile:    +1 415 773 5759
8
   *Attorneys for Defendant*
9  *LinkedIn Corporation*

10                UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13  3taps, Inc.,                           Case No. 18-cv-00855-EMC

14         Plaintiff,                      **DEFENDANT LINKEDIN'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**
15     vs.

16  LinkedIn Corporation,

17         Defendant.                      Judge:         Hon. Edward M. Chen
                                           Hearing Date:  October 27, 2022
18                                         Hearing Time:  1:30 p.m.
                                           Ctrm:          Courtroom 5
19                                         Trial Date:    None Set

**INTRODUCTION**

This is 3taps's third attempt at pursuing an advisory opinion that it may engage in some unspecified future scraping activity without violating various legal doctrines. This lawsuit has been pending for nearly five years. 3taps was perfectly happy to have the case stayed for four years, completely belying its assertion that it is being harmed by not being able to scrape LinkedIn data. It has been more than a year since 3taps first amended its five-year-old Complaint in an effort to show an actual controversy with LinkedIn. In all of that time, 3taps still did not hire employees, develop technology, or commercialize its proposed business. The only allegation is that 3taps supposedly faces future harm because a ███████████████ ███████—could be one of its customers for data scraped from LinkedIn.

Yet the notion that ████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████

The assertion that LinkedIn threatened 3taps with ruinous litigation is plainly false. As revealed by 3taps's defunct corporate status and failure to pay minimum taxes, 3taps has not even been a functioning business the past few years. There is nothing to ruin in this shell game where ████████████████████████████████████████████████████████████. Moreover, all LinkedIn did was respond to correspondence initiated by 3taps without sacrificing its rights. 3taps, or more specifically, its founder Mr. Kidd, is the only party driving this purported dispute. Kidd, through 3taps, sent the letter initiating interaction with LinkedIn. Kidd,

- 1 -

through Hard Yaka, provided litigation financing to hiQ to continue its lawsuit against LinkedIn. ███████████████████████████████████████████████████████████████████████████████. And this is all years after Mr. Kidd was already previously enjoined by Judge Breyer for scraping Craigslist.

Greg Kidd is looking to start fights about scraping. The Court should not indulge this one, and instead should dismiss this case.

## **ARGUMENT**

### I. 3TAPS'S OPPOSITION CONFIRMS THAT IN THE NEARLY FIVE YEARS THIS LAWSUIT HAS BEEN PENDING IT HAS EXPERIENCED NO RELEVANT HARM AND DEVELOPED NO MEANINGFUL RESOURCES OR PLAN TO SCRAPE LINKEDIN DATA.

3taps bore the burden to plead facts sufficient to show a real, imminent, and concrete controversy that has reached the point where there is a specific need for the Court to declare the rights of the parties. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Millennium Lab'ys, Inc. v. eLab Consulting Servs.,* No. 12CV1109 JM (DHB), 2012 WL 2721919, at *3 (S.D. Cal. July 9, 2012). 3taps failed to do so.

3taps admits that it did not scrape LinkedIn webpages before it filed this declaratory action, nor has it scraped LinkedIn during the five years this case has been pending. *See* 3taps, Inc.'s Opp'n to Def.'s Mot.to Dismiss Second Am. Compl. ("Opp.") at 13. And while 3taps is correct that past actions are not always necessary for a ripe controversy (*see id.*), when a plaintiff relies on an alleged future plan of activity, Article III requires that plaintiff to plead facts sufficient to establish that it has a real, imminent, and definite future plan. *See Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc*., 721 Fed. App'x 628, 630 (9th Cir. 2018) (declaratory judgment claim that there would be trademark confusion was insufficient where the plaintiff had not yet made any sales nor alleged or offered proof that it had "imminent plans" to do so); *Gadomski v. Patelco Credit Union*, No. 17-CV-00695-TLN-AC, 2022 WL 223878, at *5 (E.D. Cal. Jan. 25, 2022) (profession of intent to take future action without any description of concrete plans does not support a finding of the "actual or imminent" injury required). Not only has 3taps failed to allege facts showing an immediate and real plan or need for LinkedIn data, the fact that Mr. Kidd

was completely content to stay the case for four years while he allowed 3taps to become a void corporation not even legally capable of carrying on a business belies any assertion of immediacy. If 3taps was a legitimate business, with employees who needed to be paid, and with customers in need of data scraped from LinkedIn, 3taps would have pled as much and would have sought to litigate this matter expeditiously.  That it did not only confirms 3taps has suffered no real imminent harm, has no real or imminent future plan for LinkedIn data, and seeks merely an advisory opinion.

Indeed, 3taps's opposition fails to rebut the facts in LinkedIn's Motion evidencing that, as currently situated, 3taps's business is to engage in judicial advocacy, not to sell data to developers.  Until pointed out by LinkedIn in its latest Motion to Dismiss, 3taps had not paid taxes for years and consequently was a void corporation.  3taps has now remedied its void corporate status, but just because it cleared that one hurdle does not mean it has a functioning business.  Its business website is still shuttered:  3taps does not market or offer any data for sale, no developer can go onto 3taps's website and access its "One-Stop Shop" because no such shop exists.  All links on its "Developers" webpage are still dead, and the only live pages are dedicated to its advocacy that "public facts are public property" and its "Open Access Manifesto."  LinkedIn's Req. for Jud. Notice ("RJN") Exs. 11-18.  That 3taps failed both to plead specific facts about its business and to rebut the evidence that it has no functioning business warrant dismissal.

This is 3taps's third attempt at satisfying its burden to show a real, immediate and definite plan to scrape LinkedIn.  One would think that this time around 3taps would plead as many facts as it could, especially since the Court allowed it to file the Second Amended Complaint ("SAC") under seal.  That 3taps failed to do so is telling.  Besides restating the conclusory allegations the Court found insufficient in the Amended Complaint—*i.e.* that (1) 3taps is in the data scraping business, (2) LinkedIn data is valuable to data scrapers, and (3) 3taps is "ready, willing, eager and able to scrape"—the SAC adds only the additional bare allegation that "3taps has software that mimics the behavior of an internet browser to access account web pages of LinkedIn users" (SAC ⁋ 18) and that 3taps has one potential customer— ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .

The statement that 3taps has access to scraping software that mimics a browser is not sufficient to establish that it has a real, imminent, and definite future plan to scrape LinkedIn. 3taps did not include a single additional fact about its business or about how it plans to collect data from LinkedIn: It did not plead how many employees it has, that it has engineers and data scientists capable of running scrapers and processing data, that it has the current server capacity to run the software it vaguely describes, how the software 3taps alleges to have actually works, whether 3taps will scrape via proxy IP addresses, whether 3taps will employ turking, whether 3taps will create fake LinkedIn accounts to obtain data, that it has cloud data storage accounts sufficient to store the data, or that it has a functioning business website. In fact, 3taps included more information about its alleged potential customer than it did about itself ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* SAC ¶¶ 20-25. That 3taps included a wealth of facts about the alleged customer, but failed to include similar facts about its own functioning business is no surprise given the abundance of evidence—evidence 3taps did not rebut—that *3taps has no functioning business*. 3taps's failure, on its third attempt, to plead actual specific facts dooms the SAC. *See Giannini v. Am. Home Mortg. Servicing, Inc.*, No. C11-04489 TEH, 2012 WL 298254, at *4 (N.D. Cal. Feb. 1, 2012) (dismissing action when factual allegations were insufficiently specific to sustain the declaratory judgment sought); *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 607–08 (D. Nev. 2011) (plaintiff failed to plead sufficient jurisdictional facts to establish a substantial case or controversy; vague and conclusory statements insufficient).

3taps seems to criticize LinkedIn for including evidence on a 12(b)(1) motion (*see* Opp. at 2), ignoring well-established law that such motions are not confined to the allegations of the complaint and that materials outside the pleadings may be used to demonstrate lack of standing. *See Edison v. United States*, 822 F. 3d 510, 517 (9th Cir. 2016). When considering a Rule 12(b)(1) motion to dismiss, the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not

1   preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*  Further,
2   much of the evidence—such as 3taps's website and the presuit correspondence—is incorporated
3   by reference into the pleadings, and so is fair game to include under any circumstances.

4         3taps also relies heavily on the fact that over ten years ago it scraped the Craigslist
5   website and subsequently engaged in costly litigation with Craigslist to prove that it is currently
6   capable of scraping LinkedIn and currently has a legitimate business plan for doing so.  Opp. at
7   10.  But the fact that 3taps scraped data from Craigslist more than ten years ago does nothing to
8   prove it is capable of or how it would scrape LinkedIn in today's vastly more complex technical
9   environment.  And, the current unrebutted facts are that 3taps's website is solely dedicated to
10  advocacy, that there is no "One Stop Shop" for developers, and that (until it was pointed out by
11  LinkedIn) 3taps had not been paying taxes and was not legally allowed to carry on its business for
12  more than two years.  Craigslist and 3taps engaged in litigation because 3taps was actually
13  scraping Craigslist data—the dispute was not over theoretical conduct.  Here, 3taps makes vague
14  allegations that it has scraping software and wants to scrape LinkedIn, without providing any
15  specifics about its planned conduct.  This is not sufficient to create a ripe controversy.

16  **II.   3TAPS'S OPPOSITION CONFIRMS THAT IT LACKS ARTICLE III STANDING.**

17       **A.   3taps's Manufactured Alleged Business Opportunity** ████████████
18                     **████████████ Lacks Credibility.**

19       After 3taps withdrew its Complaint and the Court dismissed its Amended Complaint for
20  an insufficient pleading of facts showing cognizable harm, 3taps pled in its Second Amended
21  Complaint a single ████████████████████████ as the basis for standing.  The Court
22  should now reject the putative customer relationship between 3taps and ██████ as a basis for
23  pleading harm.

24       As detailed in LinkedIn's Motion, this putative customer relationship is nothing more than
25  ████████████████████████████████████████.  That 3taps was unable to plead a
26  single ████████████████████ is particularly telling.  3taps's attempt to hide the nature
27  of the relationship between 3taps and ██████ is also significant.  In the SAC, 3taps stated only
28  that ██████████████████████████████████████ SAC ¶ 21.  3taps failed to

- 5 -
REPLY ISO MOTION TO DISMISS
18-CV-00855-EMC

1
2   ███ . *See* RJN Exs. 9 ███
3   ███ and 10
4   ███
5   ███ ; Justice Decl. ISO Oct. 14, 2022 Filings ("Justice Decl.") Ex. 26 ███
6   ███ . Only after LinkedIn revealed this fact in its Motion did 3taps
7   admit that "3taps and its Client have a common investor *and officer*." Opp. at 9 (emphasis
8   added). It's not just *any* officer—███
9   ███ .

10   3taps has repeatedly attempted to obfuscate the relationship among Mr. Kidd, his
11  companies, and his investments, in order to disguise the fact that this lawsuit has been completely
12  manufactured by Mr. Kidd. First, when filing its motion to relate this action to the hiQ case,
13  3taps withheld that Mr. Kidd is the President of the investing entity Hard Yaka, Inc., which he
14  used to invest in and create a relationship with hiQ. *See* Mot. at 2-7 (detailing Mr. Kidd's role as
15  CEO or President of 3taps, Hard Yaka, ███ ). Now, after the Court ordered 3taps to
16  plead an immediate business use or customer, 3taps provides one customer, ███ , and again
17  hides Mr. Kidd's relationship to the customer—███ . *Id.*

18   Further, the allegation of the SAC is that Mr. Kidd's ███
19  ███ . *See* SAC ¶¶ 20-25.
20  But this proposed commercial relationship where ███ is a customer of 3taps for scraped
21  LinkedIn member profile data makes no sense. ███
22  ███
23  ███
24  ███
25  ███
26  ███ *See* Justice Decl. Exs. 24-26 ( ███ ). It is paradoxical
27  for a company to scrape individuals' data from another platform without their knowledge or
28  consent ███ . It is simply not

1  credible that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.*), also intends to purchase

3  scraped personal data about its customers from 3taps.[1]  This putative customer relationship makes

4  no sense.  Either it is untrue, or Mr. Kidd intends to use 3taps—a basically defunct entity—▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

6  This further undermines the legitimacy of 3taps as a plaintiff and the suggestion that there is any

7  real dispute between 3taps and LinkedIn.

8         That 3taps failed to provide any factual allegations regarding legitimate business

9  opportunities even after twice being given the opportunity to amend shows there is no real and

10 immediate harm.  3taps's failure to articulate any harm that either (a) has occurred, or (b) is

11 imminently threatened to occur, is dispositive as to subject matter jurisdiction.  *See Coffman v.*

12 *Breeze Corps.*, 323 U.S. 316, 324 (1945) (declaratory judgment "is available in the federal courts

13 only in cases involving an actual case or controversy . . . and it may not be made the medium for

14 securing an advisory opinion in a controversy which has not arisen." (internal citations omitted));

15 *Clark v. City of Seattle*, 899 F.3d 802, 809 (9th Cir. 2018) (affirming dismissal when alleged

16 harm was speculative and based on events that had not yet occurred and may never occur).  If

17 3taps expected the Court to credit it with a plausible plan for a business that would trigger an

18 immediate threat of litigation harm from LinkedIn, then 3taps had the burden to provide sufficient

19 facts to establish that it currently has a real scraping business, to provide specific facts showing it

20 is currently capable of effectuating that business, and that it has suffered a real, concrete, and

21 imminent injury in the form of a legitimate lost business opportunity.  *See San Diego Cnty. Gun*

22 *Rts. Comm. v. Reno*, 98 F.3d 1121, 1124, 1126–27 (9th Cir. 1996) (immediacy requirement not

23 met when plaintiffs alleged they "wish and intend to engage in unspecified conduct" violating act

24 without articulating concrete plans to do so, and without identifying a threat of arrest or

---

[1] 3taps asserts that ▮▮▮▮▮▮▮▮ needs data scraped from LinkedIn, but the allegations in the SAC belie this assertion.  Specifically, 3taps claims ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  SAC ¶ 24.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

prosecution made against them); *Giannini*, 2012 WL 298254, at *4 (dismissing action when complaint made only conclusory allegations regarding subject of declaratory request; factual allegations were insufficiently specific to sustain the declaratory judgment sought); *Shalaby v. Jacobowitz*, No. C 03-0227-CRB, 2003 WL 1907664, at *2 (N.D. Cal. Apr. 11, 2003), *aff'd*, 138 F. App'x 10 (9th Cir. 2005). 3taps did not do so. This is 3taps's third attempt at pleading sufficient facts. The Court should not grant it a fourth.

**B.    3taps Attempts to Manufacture An "Implied Threat" of Litigation Where There Is None.**

3taps again asserts that the "threat of ruinous litigation" is the only thing preventing it from immediately scraping LinkedIn's website. Opp. at 2, 4. As detailed in LinkedIn's Motion, however, LinkedIn has *not* threatened litigation and specifically ruled out the possibility of taking immediate action against 3taps. Mot. at 7, 12; RJN Ex. 6. All LinkedIn did was send a letter in response to 3taps's letter without sacrificing its rights, in which it specifically told 3taps that it would *not* take immediate action against it. RJN Ex. 6. 3taps argues that the letter can only be reasonably read as a threat of impending harm. Opp. at 9. That reading is simply not plausible— especially because LinkedIn *never sued* 3taps. And, as this lawsuit has progressed through nearly five years and three complaints without any hint that 3taps would actually commence scraping, such a suit by LinkedIn has become nigh on unthinkable, let alone implausible. After all these years, 3taps has alleged no single fact to suggest that it would be capable of defeating LinkedIn's general technical defenses in order to scrape LinkedIn data. Why would LinkedIn waste its time and resources pursuing a defunct entity without any technical capabilities?

It is not LinkedIn threatening 3taps with litigation, but rather it is 3taps, and more specifically, Mr. Kidd, who has manufactured this purported dispute at every turn. Kidd, through 3taps, sent the letter initiating interaction with LinkedIn with the clear intent of goading LinkedIn into threatening a lawsuit. Kidd, through his investment company Hard Yaka, provided litigation financing to hiQ to continue its lawsuit against LinkedIn. Indeed, at a recent event, Mr. Kidd even bragged to a LinkedIn executive that he had purchased 10% of hiQ for $500,000 and is the "bad guy" behind scraping-related lawsuits against LinkedIn. Declaration of Scott Roberts

("Roberts Decl.") ¶ 2.  It is not LinkedIn, but Mr. Kidd who is itching to get into and stay into court in any way he can.

3taps's theory of an implied threat of immediate litigation due to LinkedIn "previously engaged in aggressive litigation against hiQ" (Opp. at 9) goes nowhere.  That hiQ chose to file a lawsuit against LinkedIn in response to LinkedIn's cease and desist letter does not show that 3taps is faced with an immediate threat of litigation by LinkedIn.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (holding that injury must be traceable to challenged action of the defendant and not the result of an independent action of a third party).  3taps's purported apprehension of suit by LinkedIn is wholly unreasonable, and there is no controversy.

## III.  IN ALL EVENTS, THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS.

3taps does not dispute the key facts and timing set forth in greater detail in LinkedIn's Motion to Dismiss:  soon after this Court issued the preliminary injunction in *hiQ v. LinkedIn*, Mr. Kidd invested in hiQ.  Mot. at 2-5.  3taps then attempted to manufacture a controversy with LinkedIn by goading LinkedIn into threatening litigation.  *Id.*  LinkedIn did not take the bait, expressly stating that it had no intention of taking immediate action against 3taps.  3taps sued anyway, claiming it was related to hiQ and mischaracterizing the pre-suit correspondence with LinkedIn as a threat of litigation and broadly asserting an unspecified plan to scrape data "just like hiQ."  *Id.*  It then filed a motion to have its case related to the *hiQ v. LinkedIn* case pending before Judge Chen, in which it relied on its (recently manufactured and purchased) relationship with hiQ and further misrepresentations that it had received a cease-and-desist letter similar to hiQ and that the facts of the hiQ case were essentially identical to the facts leading to this case.  *Id.*  The implications of 3taps's conduct are clear—Kidd was trying to manufacture a new dispute to get out from under the earlier injunction issued by Judge Breyer.

3taps's only attempt to rebut this timeline is to argue that venture rounds are timed based on the capital needs of the raising company.  Opp. at 2-3.  But it does not dispute that Mr. Kidd invested in hiQ for the first time only in the investment round immediately following the injunction.  3taps cannot refute this timing or the inferences to be drawn from it.  Unable to refute

1   the facts evidencing that Greg Kidd and 3taps manufactured this lawsuit to get in this Court, 3taps

2   tries to relitigate the motion to relate. *See* Opp. at 15-16.  That motion was based on what we

3   now know was a false premise—that there was some legitimate and relevant business relationship

4   between hiQ and 3taps, not an after-the-fact investment designed to manufacture a dispute.

5   3taps's relitigation of the motion to relate, asserting that the same defendant will lead to an

6   overlap of facts and discovery is also wrong here.  In a declaratory judgment action like this one,

7   it is the plaintiff's conduct that is really at issue.

8         Following 3taps's unseemly judge-shopping to start the case, it then attempted to conceal

9   the proposed ███████████████████████████████████ from LinkedIn and the public

10  by filing the SAC under seal.  After claiming that this was highly confidential information that

11  could not even be shared with LinkedIn's in-house counsel because it was so competitively

12  sensitive, Mr. Kidd declared to a LinkedIn executive at a social event that he is the "bad guy"

13  behind this lawsuit and disclosed information filed under seal in the SAC.  Roberts Decl. ¶ 2.

14  LinkedIn then requested the SAC be unsealed as there was no longer anything confidential in it.

15  Justice Decl. Ex. 22.  3taps still refused to consent to unsealing the SAC, claiming it would be

16  harmful for the public to know that there was a ███████████████████████████████████.

17  *Id.*  This refusal to publicly disclose only underscores the lack of legitimacy to the purported

18  commercial relationship ███████████████████████████.

19        There is a pattern of manufacturing relationships—first between 3taps and hiQ, then

20  ███████████████████, to try to sustain jurisdiction.  The real goal (at best) is apparently to

21  further Mr. Kidd's advocacy that "public facts are public property."  Of course that goal is also

22  directly contrary ███████████████████████████.  Regardless, the Court should not

23  permit Mr. Kidd to drag LinkedIn into Court to further his personal goals.  Mr. Kidd can go lobby

24  Congress or the California legislature if he wants to keep spoiling for a fight about scraping.

25  **CONCLUSION**

26        3taps lacks standing to pursue its declaratory relief claims, has failed to demonstrate an

27  actual controversy, and in all events the Court should exercise its discretion to dismiss this

28  unnecessary lawsuit brought for improper purposes.

Dated: October 14, 2022

Orrick, Herrington & Sutcliffe LLP

By: */s/ Annette L. Hurst*
ANNETTE L. HURST
Attorneys for Defendant
LinkedIn Corporation