ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
RUSSELL P. COHEN (SBN 213105)
rcohen@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
DANIEL JUSTICE (SBN 291907)
djustice@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

*Attorneys for Defendant*
*LinkedIn Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| 3taps, Inc., | Case No. 18-cv-00855-EMC |
| Plaintiff, | **LINKEDIN CORPORATION'S LOCAL RULE 79-5(G)(3) ADMINISTRATIVE MOTION TO UNSEAL DOCUMENTS** |
| vs. | |
| LinkedIn Corporation, | |
| Defendant. | |

Pursuant to Civil Local Rules 7-11 and 79-5(g)(3), LinkedIn Corporation ("LinkedIn") hereby moves for an order unsealing 3taps Inc.'s ("3taps") Second Amended Complaint ("SAC") and the portions of LinkedIn's Motion to Dismiss 3taps's SAC ("Motion"), and affiliated papers, that were filed under seal for reflecting the sealed information in the SAC.  Specifically, LinkedIn seeks an order unsealing the SAC (ECF No. 68-1), LinkedIn's Motion (ECF No. 76), LinkedIn's Request for Judicial Notice In Support Of Its Motion to Dismiss The Second Amended Complaint ("RJN") (ECF No. 77), Exhibit 9 (ECF No. 77-9), Exhibit 10 (ECF No. 77-10), and LinkedIn's Reply In Support Of Motion to Dismiss Plaintiff's Second Amended Complaint (and accompanying documents) filed concurrently with this motion.

## I.   FACTUAL BACKGROUND

During the April 7, 2022 hearing on LinkedIn's motion to dismiss 3taps's First Amended Complaint, 3taps argued that it could not divulge to LinkedIn or the Court details regarding its plan to commercialize data from LinkedIn or identify its prospective customers because LinkedIn could destroy 3taps's business if it obtained such information.  *See* Justice Declaration ISO Oct. 14, 2022 Filings ("Justice Decl.") Ex. 21 (Apr. 7, 2022 Hr'g Tr.) at 5.  3taps did not argue that the information needed to be kept from the public at large, but argued only that it needed to be kept from LinkedIn.  *See id.*  In response, the Court allowed 3taps to file portions of the SAC under seal "[b]ecause 3taps has raised concern about divulging confidential business information to LinkedIn."  ECF No. 67.   The Court also recognized that any alleged confidential information in the SAC would remain under seal only if the Court deems it worthy of such treatment.  Justice Decl. Ex. 21 (Apr. 7, 2022 Hr'g Tr.) at 11.

On May 12, 2022, 3taps filed the SAC under seal.  ECF No. 68-1.  3taps also filed a public version redacting the name of its one alleged potential customer and the purpose for which the customer allegedly will use the scraped information.  ECF No. 68-2.  On August 1, 2022, LinkedIn moved to dismiss the SAC.  ECF No. 76.  LinkedIn filed portions of the motion and accompanying papers under seal consistent with 3taps's redactions.

On August 24, 2022, 3taps's CEO, Greg Kidd, attended a reception in Bryn Mawr, Pennsylvania at the home of the president of Bryn Mawr College.  Declaration of Scott Roberts

("Roberts Decl.") ¶ 2.  Scott Roberts, the Vice President and Global Head of Business Development at LinkedIn was also in attendance.  *Id.* at ¶¶ 1-2.  During the reception, Mr. Roberts was introduced to Greg Kidd, who he had not previously met.  *Id.* ¶ 2.  They struck up a conversation discussing personal matters before Mr. Kidd divulged that he was involved in litigation with Microsoft.  *Id.*  Mr. Roberts mentioned that he worked for LinkedIn, at which point Mr. Kidd clarified that his litigation was actually with LinkedIn.  *Id.*  Mr. Kidd told Mr. Roberts that he had purchased 10% of hiQ for $500,000 and referred to himself as the "bad guy" behind scraping-related lawsuits against LinkedIn.  *Id.*  During the course of the conversation, Mr. Roberts made clear to Mr. Kidd his role at LinkedIn and Mr. Kidd proceeded to disclose his belief that LinkedIn data could be used in connection with verified identity attestation for online payments.  *Id.*  This conversation took place within earshot of dozens of attendees, some of whom overheard and commented on the conversation.  *Id.* ¶ 3.  Indeed, at one point another guest at the reception, who overheard at least some of the conversation, jokingly commented that Mr. Kidd and Mr. Roberts were in a lawsuit with each other.  *Id.*  At no point did Mr. Kidd raise the prospect of settlement or express an interest in resolving either the hiQ or 3taps lawsuits.  *Id.*  Nor did he request that the conversation be maintained confidential in any way (which would have been impossible given the open nature of the conversation at a reception surrounded by other guests).  *Id.*

Sometime after the reception, Mr. Roberts informed counsel of his conversation with Mr. Kidd.  On September 21, 2022, LinkedIn counsel wrote to 3taps counsel regarding the redactions to the SAC and how Mr. Kidd's voluntary disclosure of the intended use of LinkedIn information calls into question 3taps's prior representations that it could not even "hint[] to the LinkedIn people what exactly the business plan is" without undue harm to its business.  Justice Decl. Ex. 22 (M&C correspondence).  After several further communications from LinkedIn counsel, on October 3, 2022, 3taps counsel responded that Mr. Kidd's discussion with Mr. Roberts at the reception was for the purpose of exploring potential settlement and was therefore protected by FRE 408 (even though the conversation took place during a public reception surrounded by other guests, some of whom even commented on the discussion, and settlement was not even

1   mentioned), but that since the information had already been disclosed to LinkedIn, 3taps would

2   remove the attorneys' eyes only designation and permit counsel to share the unredacted SAC with

3   LinkedIn on condition LinkedIn makes no public disclosure of the SAC.  *Id.*  On October 5, 2022,

4   LinkedIn counsel responded that there is no basis for 3taps to assert that the conversation between

5   Mr. Kidd and Mr. Roberts was a protected settlement communication or a confidential

6   conversation of any kind, and that Mr. Kidd's voluntary and open discussion of his desires for the

7   use of LinkedIn data—plans that align with material redacted from the SAC—in the presence of

8   several people who are not parties to the case, without any precautions taken, destroys any

9   conceivable assertion of confidentiality over that information.  *Id.*  On October 7, 2022, 3taps

10  counsel responded that he would discuss the matter with his client and get back to LinkedIn

11  counsel on October 12.  *Id.*  He did not do so.  On October 13, 2022, LinkedIn counsel again

12  asked for a response as the reply brief for the motion to dismiss was due the following day and

13  LinkedIn needed to know whether it need seek relief from the Court to unseal the information.

14  *Id.*  3taps counsel responded that he would reach out to his client and attempt to get back to

15  LinkedIn counsel promptly.  *Id.*  3taps counsel was unable to substantively respond, necessitating

16  LinkedIn file this motion.

17  **II.   <u>ARGUMENT</u>**

18          In considering whether documents should be sealed, courts "start with a strong

19  presumption in favor of access to court records."  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331

20  F.3d 1122, 1135 (9th Cir. 2003).  3taps bears the burden of overcoming this strong presumption

21  by articulating "'compelling reasons supported by specific factual findings' that outweigh the

22  general history of access and the public policies favoring disclosure."  *Kamakana v. City & Cnty.*

23  *of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) (internal citations omitted).  This Court and

24  many others have held that the "compelling reasons" standard applies to dispositive motions as

25  well as to complaints.  *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1161–62 (N.D.

26  Cal. 2021) (collecting cases).  "The mere fact that the production of records may lead to a

27  litigant's embarrassment, incrimination, or exposure to further litigation will not, without more,

28  compel the court to seal its records."  *Kamakana*, 447 F.3d at 1179 (citing *Foltz*, 331 F.3d at

1136).

3taps's sole justification for sealing portions of the SAC was to prevent LinkedIn from learning the identity of its customer or that customer's alleged intent to use data scraped from LinkedIn.  Specifically, 3taps's SAC sealed only (1) the name of its one purported customer, (2) a high-level description of that customer's services, and (3) a statement that the customer would use data scraped by 3taps in connection with those services.  SAC ¶¶ 20-25.  3taps repeatedly asserted that this information deserves Attorneys' Eyes Only status because LinkedIn would be able to destroy 3taps's business if it learned how 3taps allegedly plans to monetize data from LinkedIn. *See* 3taps, Inc.'s Opp'n to Def.'s Mot. to Dismiss First Am. Compl. (ECF No. 63) at 8 (arguing "advance disclosure to LinkedIn of how the data will be monetized would be commercial suicide"); Justice Decl. Ex. 21 (Apr. 7, 2022 Hr'g Tr.) at 5 ("But we don't want LinkedIn to know [our business plan or who our prospective customers are], and that's why we don't want to put it in a pleading.  They could destroy our business.").

While 3taps insisted on secrecy when litigating its claims before this Court, 3taps's CEO, Greg Kidd, did not observe the same secrecy in practice.  Instead, he openly had a public conversation with a senior LinkedIn executive, at a reception with dozens of other people in earshot, identifying himself as the person behind scraping lawsuits against LinkedIn.  Roberts Decl. ¶ 2.  During the course of that conversation, he described his vision for how LinkedIn data theoretically could be used in support of his business ventures, offering a description that mirrored information filed under seal in the SAC.  *Compare* Roberts Decl. ¶ 2 *with* SAC ¶¶ 20-25. Moreover, Mr. Kidd's relationship to the alleged customer whose identity is redacted from the public SAC is apparent from publicly available sources.  *See, e.g.,* Justice Decl. Ex. 23 (Kidd LinkedIn Profile) & Ex 26 (customer website identifying Mr. Kidd).  As a result, Mr. Kidd's conversation with Mr. Roberts disclosed to LinkedIn the substance of the information that 3taps previously insisted could not be disclosed to LinkedIn without risking "commercial suicide." 3taps has since agreed to share the unredacted SAC with LinkedIn, eliminating the only stated justification for filing the information under seal in the first place.  *See* Justice Decl. Ex. 22 (M&C correspondence).

1    Yet 3taps continues to insist that while the information in the SAC may be shared with

2   LinkedIn, it must still be kept from public view.  3taps has offered no justification for continued

3   sealing, nor can it.  This is particularly so given the heightened showing necessary to maintain

4   sealing of materials submitted in pleadings or with dispositive motions.  There are no "compelling

5   reasons" to maintain under seal information that 3taps's CEO freely shares at cocktail parties.

6   **III.**    **CONCLUSION**

7    For the reasons stated above, LinkedIn's motion to unseal should be granted and the Court

8   should publicly file the SAC, and LinkedIn's motion to dismiss and related papers currently under

9   seal.

10

11   Dated: October 14, 2022                    Orrick, Herrington & Sutcliffe LLP

12

13                                              By: _____*/s/ Annette L. Hurst*_____

14                                                        ANNETTE L. HURST
                                                         Attorneys for Defendant
15                                                       LinkedIn Corporation

16

17

18

19

20

21

22

23

24

25

26

27

28