UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3TAPS, INC, <br><br>    Plaintiff, <br><br>    v. <br><br> LINKEDIN CORPORATION, <br><br>    Defendant. | Case No. 18-cv-00855-EMC <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** <br><br> Docket Nos. 76, 85, 87 |

## I.   INTRODUCTION

Before this Court is LinkedIn. Corp.'s ("LinkedIn") motion to dismiss 3taps, Inc.'s ("3taps") second amended complaint ("SAC")[1] for lack of standing and/or ripeness. In the alternative, LinkedIn requests that the Court exercise its discretion and decline to entertain 3taps's declaratory judgment claims. For the reasons below, the Court **DENIES** LinkedIn's motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

A.   The Parties

3taps is a professional data scraper founded in San Francisco in 2009. (SAC ¶ 9.) Its business "consists of scraping data and then making data available to third party technology developers through 3taps's online data shop," which can be found on its website, www.3taps.com. (*Id.* at ¶¶ 10–11.) 3taps also plans to "provide scraped data to third parties via private contractual

---

[1] The parties have stipulated to LinkedIn's motion to unseal the SAC. (Docket No. 87; 10/27/2022 Hrg.) The Court hereby **GRANTS** that motion. 3taps shall publicly file the SAC within a week after this order issues. LinkedIn's administrative motion to file under seal portions of LinkedIn's reply brief and supporting materials reflecting information in the SAC (Docket No. 85) is **DENIED** as moot.

arrangements with that third party outside of its data shop." (*Id.* at ¶ 13.)

LinkedIn is a large professional networking site, with over 850 million members worldwide. (Docket No. 63 at 1.) While LinkedIn permits users to choose to publish their profiles to the public, it prohibits unauthorized scraping in its user agreement. (*Id.*) It dedicates a team to prevent scraping on LinkedIn's platform and "aggressively fights any scraping of information from its servers." (*Id.*)

B.     3taps's Relationship with hiQ

This action traces its origin, in part, to *hiQ Labs, Inc. v. LinkedIn Corp.*, No. C-17-3301-EMC (N.D. Cal.) ("*hiQ*"). In that case, this Court granted a preliminary injunction in favor of hiQ in August 2017, enjoining LinkedIn from blocking hiQ's access to LinkedIn members' public profiles. *hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1120 (N.D. Cal. 2017); (*see* SAC ¶ 14). Subsequently, on January 16, 2018, 3taps sent a letter to LinkedIn. (*See* Docket No. 77[2] ("Def.'s RJN") Ex. 5 (letter); *see also* SAC ¶ 15.) In its letter, 3taps took note of the *hiQ* case (then on appeal to the Ninth Circuit and for which 3taps had filed an amicus brief) as well as a recent decision in *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948 (9th Cir. 2018), *rev'd in part*, 139 S. Ct. 873 (2019). 3taps stated in part: "we are writing to inform you that, in reliance on Judge Chen's decision and the *Oracle* decision cited above, 3taps intends to begin scraping publicly-available data from LinkedIn.com in the coming weeks, and does not intend to await the outcome of the appeal before initiating those activities." (Def.'s RJN Ex. 5.)

LinkedIn responded with a letter, dated January 24, 2018. (*See* Def.'s RJN Ex. 6 (letter).) In its letter, LinkedIn cautioned that "any further access by 3taps to the LinkedIn website and

---

[2] The Court takes notice of Exhibits 5-6 of Docket No. 77. "[U]nder Federal Rule of Civil Procedure 10(c), a court may take judicial notice of documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Graham v. U.S. Bank, N.A.*, No. 13-CV-01613 NC, 2013 WL 2285184, at *4 (N.D. Cal. May 23, 2013) (citing *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)). The parties do not dispute the authenticity or legitimacy of those exhibits. The Court also takes judicial notice of Exhibit 8 of Docket No. 77 under Federal Rule of Evidence 201(b) because it is a document filed in court proceedings. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.). The Court hereby **GRANTS** LinkedIn's request for judicial notice regarding the aforementioned exhibits.

1    LinkedIn's servers is without LinkedIn's or its members' authorization." (*Id.*)  Further, it

2    emphasized that "[w]hile LinkedIn does not intend to consider legal action with respect to 3taps's

3    January 16, 2018 letter until the Ninth Circuit renders its decision, we want to be clear that 3taps

4    has no authorization to access the LinkedIn website and LinkedIn's servers." (*Id.*)

5          Approximately two weeks later, on February 8, 2018, 3taps initiated this lawsuit.  It seeks

6    a declaratory judgment that, by accessing and using publicly-available data on LinkedIn's website,

7    it will not violate the federal Computer Fraud and Abuse Act (CFAA), violate the California

8    Comprehensive Computer Data Access and Fraud Act, commit a breach of contract, or commit a

9    trespass.  (SAC at 8–10.)

10         On February 14, 2018, 3taps filed a motion to have its case related to the *hiQ* case.  No.

11   3:17-cv-03301-EMC (Docket No. 97).  It contended that the facts of the *hiQ* case and this case

12   were "essentially identical" and noted that 3taps and hiQ shared "common partial owners."  *Id.* at

13   1 n.1.  The "common partial owner[]" is Robert Gregory Kidd.  (Docket No. 85-4 ("Justice Decl.")

14   Ex. A.)  As the President of 3taps, Mr. Kidd also owns 10% stock in hiQ.  (Docket No. 76

15   ("Mot.") at 2; Justice Decl. Ex. A; Docket No. 89 (Roberts Decl.) at 2.)  Given the similarities

16   between the parties and the facts, the Court granted 3taps's motion.  (RJN Ex. 8 (*hiQ Labs, Inc. v.*

17   *LinkedIn Corp.*, 3:17-cv-03301-EMC (Docket No. 102)).)  The Court further granted the parties'

18   request that discovery be stayed until ten days after the resolution of the *hiQ* appeal.  (Docket No.

19   49 (7/15/2021 CMC Minutes).)

20   C.    3taps's Current Business Status

21         3taps claims that its business relies on both its online data shop and contractual

22   arrangements to provide scraped data to third parties.  (SAC ¶¶ 12, 13.)  But LinkedIn maintains

23   that 3taps has no functioning business because its business website is "shuttered."  (Docket No. 86

24   ("Reply") at 3.)  3taps's website has a page for Developers and one for Advocacy.  All links on the

25   Developers page are dead.  The only working links are on the Advocacy page, where 3taps

26   includes links to court documents from relevant scraping litigation, including *hiQ*.  The only

27   instance of the "One-Stop Data Shop for Developers" is an interactive data graph on the home

28   page.  (SAC ¶ 11.)

3

Apart from the data shop, 3taps alleges a third-party contractual arrangement to provide to-be-scraped LinkedIn data to GlobaliD, Inc. ("GlobaliD"). GlobaliD is a Delaware corporation that "allows participants in its identity verification program to create and manage their own digital identity through a unique GlobaliD name, and to build and authenticate an identity profile based on the individual's electronic footprints, government issued identification documents, records and relationships." (SAC ¶ 21.) "Data scraped by 3taps and provided to GlobaliD would contain information such as [an] individual's professional employment history, educational attainment, professional certifications, etc." (*Id.* at ¶ 25.) GlobaliD then uses this information to create an "ecosystem of third-party verification sources that allow an individual to prove his or her identity to various other persons or entities without the necessity of the individual directly sharing specific, private information with those persons or entities." (*Id.* at ¶ 21.)

LinkedIn argues that 3taps's proposed business relationship with GlobaliD is a sham because 3taps and GlobaliD share a common investor and executive officer—Mr. Kidd. (SAC ¶ 20; Mot. at 6.) In addition to being the President of both 3taps and GlobaliD, Mr. Kidd is also the President of, and a significant investor in, Hard Yaka. Hard Yaka, in turn, invests in both 3taps and hiQ. (SAC ¶ 14; Docket No. 84 ("Opp.") at 3.)

D.  Procedural History

LinkedIn filed a motion to dismiss 3taps's first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(1) arguing that (1) LinkedIn had not threatened litigation against 3taps, and (2) 3taps had made only conclusory allegations that it was ready to data scrape from LinkedIn as part of its business. (Docket No. 61 at 12.) The Court granted LinkedIn's motion to dismiss 3taps's FAC with leave to amend. (Docket No. 67 at 1.) Specifically, the Court emphasized that "3taps must provide nonconclusory allegations as to how it has engaged in meaningful preparation to conduct data scraping activity." (*Id.*)

3taps now alleges that it "stands ready, willing, eager and able to scrape publicly-available information from LinkedIn's website and provide that data to third party developers looking to acquire that data for their own research or business purposes." (SAC ¶ 17.) Specifically, it plans to use its "proprietary software" to scrape LinkedIn data and sell that data to GlobaliD. (SAC ¶¶

4

1   18, 20; Opp. at 2.)  LinkedIn filed the instant motion to dismiss.  (Docket No. 76.)

## III.  LEGAL STANDARD

A.  Standing

Article III of the Constitution limits a federal court's authority to exercise its "judicial Power" to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  "To enforce this constitutional limitation, the Supreme Court has articulated numerous doctrines that restrict the types of disputes that federal courts will entertain, including standing and ripeness." *Mont. Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014).

For standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016); *see California v. Texas*, 141 S. Ct. 2104, 2115 (2021) ("[D]eclaratory-judgment actions must satisfy Article III's case-or-controversy requirement.").  These three elements are referred to as, respectively, injury-in-fact, causation, and redressability. *Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020).  As for ripeness, "[a] dispute is ripe in the constitutional sense if it 'present[s] concrete legal issues, presented in actual cases, not abstractions.'" *Mont. Envtl.*, 766 F.3d at 1188 (quoting *Colwell v. HHS,* 558 F.3d 1112, 1123 (9th Cir.2009)).

Standing and ripeness inquiries can sometimes overlap—*e.g.*, where standing is based on a claimed future injury. *See, e.g.*, *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) ("The constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing.").  The Supreme Court has expressly noted that a *possible* future injury is not sufficient to establish standing.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  But "future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted).

B.  Motion To Dismiss

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of

subject matter jurisdiction. "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010). A Rule 12(b)(1) jurisdictional attack may be factual or facial. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*. The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1038. In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.*

## IV.     DISCUSSION

A.     3taps's Injury

LinkedIn contends that standing/ripeness is lacking and/or that there is no case or controversy for declaratory judgment purposes because the SAC does not sufficiently allege an imminent injury—*i.e.*, one of sufficient concreteness, immediacy, and reality.[3] LinkedIn's argument has two components: (1) LinkedIn has not threatened litigation against 3taps; and (2) 3taps has made only conclusory allegations that it is ready to data scrape from LinkedIn as part of its business.

In its order dismissing 3taps's FAC, the Court followed the framework in patent law and

---

[3] Additionally, LinkedIn argues that 3taps failed to allege any redressable injury because it was a void corporation for failing to pay franchise taxes. (Mot. at 13.) As of September 26, 2022, 3taps paid its fees to the state of Delaware. (Docket No. 84-1 ("Christopher Decl.") at 4.) Thus, 3taps has regained its ability to conduct its business activities and a decision by this Court would redress 3taps's alleged injury. LinkedIn's argument on redressability is therefore moot.

6

that analysis continues to apply. (Docket No. 67 at 1.) "[T]o establish an injury in fact . . . a declaratory judgment plaintiff must allege both (1) an affirmative act by the patentee related to the enforcement of his patent rights, and (2) meaningful preparation to conduct potentially infringing activity." *Ass'n for Molecular Pathology v. United States PTO*, 689 F.3d 1303, 1318 (Fed. Cir. 2012), *aff'd in part and rev'd in part on other grounds*, 569 U.S. 576 (2013).

1. Affirmative Act

LinkedIn unpersuasively claims that it has not taken an affirmative act against 3taps. Although LinkedIn responded to 3taps's initiation of contact by stating that it did "not intend to consider legal action with respect to 3taps's January 16, 2018, letter until the Ninth Circuit renders its decision [in *hiQ*]," it also made "clear that 3taps has no authorization to access the LinkedIn website and LinkedIn's servers." (Def.'s RJN Ex. 6.) In a trademark infringement case, the Ninth Circuit has noted that "the requirements of the Declaratory Judgment Act were satisfied 'if the plaintiff has a real and reasonable apprehension that he will be subject to liability . . . .'" *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982).

LinkedIn has acted in a way that demonstrates a real threat of injury to 3taps. 3taps knew that LinkedIn was already heavily litigating the issue of data scraping in the *hiQ* matter. And, LinkedIn continues to argue that the CFAA applies to publicly available information and maintains that the *hiQ* decision is "misplaced and currently under review." (Def.'s RJN Ex. 6.) Even though hiQ initiated that action, LinkedIn's response to the lawsuit and the positions taken therein should still be considered. *Cf. Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1355 (Fed. Cir. 2013) (indicating that "'[p]rior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy'"). "Article III jurisdiction may be met where the [declaratory judgment defendant] takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp.*, 480 F.3d at 1380; *cf. Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (noting that "[one] does not have to await the consummation of threatened injury" before challenging a statute). Therefore, 3taps has sufficiently alleged an affirmative act by LinkedIn indicating a real likelihood it would

7

enforce its rights against 3taps.

2. <u>Meaningful Preparation</u>

LinkedIn's argument that the SAC does not adequately allege that 3taps has engaged in meaningful preparation to data scrape from LinkedIn also fails. 3taps made two additional allegations in the SAC to address the meaningful preparation prong. First, it describes 3taps's capacity to scrape. (SAC ¶ 18.) Second, it identifies a potential customer in GlobaliD. (*Id.* at ¶ 20.)

a. <u>3taps's Capacity to Scrape</u>

3taps has sufficiently pled its capacity to scrape. It "stands ready, willing, eager and able to scrape publicly-available information from LinkedIn's website and provide that data to third party developers looking to acquire that data for their own research or business purposes." (SAC ¶ 17.) Specifically, "3taps has software that mimics the behavior of an internet browser to access account web pages of LinkedIn users." (*Id.* at ¶ 18). That software "can capture the contents of the user webpage and then categorize the data according to available sections in the LinkedIn biography, including the individual or business name, location, honors and awards, education, previous employment history, etc." (*Id.*)

LinkedIn does not squarely contradict this assertion. Instead, LinkedIn argues that 3taps is not a software company but rather an entity engaged in judicial advocacy. In support, LinkedIn points to 3taps's "dead" website. (Mot. at 7.) However, 3taps's flawed website alone does not prove that 3taps is not meaningfully prepared to use and sell scraped LinkedIn data as it alleges. 3taps has plausibly established it has the capacity to scrape.

b. <u>3taps's Potential Customer</u>

LinkedIn maintains that 3taps's only potential business is implausible because both 3taps and GlobaliD are owned and controlled by Mr. Kidd. (Mot. at 16.) While its relationship with GlobaliD does appear convenient, 3taps has alleged information sufficient to suggest that GlobaliD is a functioning company with an actual business purpose for the data 3taps proposes to sell. (*See* SAC ¶¶ 20-25, ¶ 24 ("GlobaliD seeks to obtain scraped data from 3taps specifically for use in GlobaliD's identity proofing and attestation of identity services.").)

8

1    LinkedIn also contends that 3taps's proposed business is implausible because using
2  unlawfully obtained (scraped) data goes against GlobaliD's promise to its customers that "we
3  cannot and will not ever collect information from you without your explicit consent." (Reply at 6;
4  Justice Decl. Exs. 24–26.) And, LinkedIn claims that there is no logical explanation as to why
5  GlobaliD needs scraped LinkedIn data. (*See* Reply at 7 n.1.) At the hearing on this motion,
6  3taps's counsel explained that, while 3taps cannot speak for GlobaliD, it understands that
7  GlobaliD intends to use the to-be-scraped LinkedIn data acquired by 3taps to support GlobaliD's
8  identity attestation business. (10/27/2022 Hrg.) Specifically, a GlobaliD customer would receive
9  a unique identification code that is planted in their account and then would be asked to make a
10 minor change on their LinkedIn profile. (*Id*.) The scraper would scrape the information from the
11 profile and send it to GlobaliD, which would prove the identity of the customer to GlobaliD. (*Id*.)
12 The customer can then use their "GlobaliD score" to verify their identity on other platforms that
13 have adopted the GlobaliD attestation system. (*Id*.) Taken as true, 3taps's allegations about its
14 business with GlobaliD are plausible.

15 B.    Discretion to Dismiss Declaratory Judgment Claims

16    LinkedIn urges the Court to exercise its discretion not to consider 3taps's declaratory relief
17 claims because 3taps engaged in "judge-shopping" to advance its judicial advocacy. 3taps was
18 previously a defendant in a lawsuit by Craigslist. *See Craigslist Inc. v. 3taps Inc.*, 942 F. Supp. 2d
19 962 (N.D. Cal. 2013) (Breyer, J.). In that suit, Craigslist alleged that 3taps "markets a 'Craigslist
20 API' to allow third parties to access large amounts of content from Craigslist and also operates the
21 website craiggers.com, which 'essentially replicated the entire craigslist website,' including 'all of
22 craigslist's posts.'" *Id.* at 966. Ultimately, Judge Breyer issued a permanent injunction enjoining
23 3taps from scraping Craigslist. (Mot. at 3.) LinkedIn argues that 3taps "manufacture[d] a
24 relationship with hiQ in order to have this case assigned to Judge Chen, rather than Judge Breyer,
25 who had previously enjoined 3taps and Mr. Kidd personally from scraping [Craigslist]." (Mot. at
26 2.) *Craigslist* involved a different opposing party. The allegations do not establish that 3taps
27 manufactured this lawsuit for the purpose of circumventing a prior permanent injunction issued in
28 a different case. The Court declines to exercise its discretion to dismiss 3taps's declaratory relief

9

claims.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** LinkedIn's motion to dismiss.

This order disposes of Docket Nos. 76, 85, and 87.

**IT IS SO ORDERED**.

Dated: November 15, 2022

_____
EDWARD M. CHEN
United States District Judge