THOMAS V. CHRISTOPHER (SBN#185928)
Thomas@ThomasChristopherLaw.com
THE LAW OFFICES OF THOMAS V. CHRISTOPHER
The Salesforce Tower
415 Mission Street, 37th Floor
San Francisco, California 94105
Telephone: (415) 659-1805

Attorney for Plaintiff
3TAPS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| 3TAPS, INC., a Delaware Corporation,<br><br>         Plaintiff,<br><br>  v.<br><br>LINKEDIN CORPORATION, a Delaware Corporation,<br><br>         Defendant. | Case No.: 18-cv-00855-EMC<br><br>**3TAPS, INC.'S SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AGAINST LINKEDIN CORPORATION UNDER 22 U.S.C. SECTION 2201 THAT PLAINTIFF'S ACTIONS WILL NOT VIOLATE THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. 1030); THE CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT; BREACH A CONTRACT; OR CONSTITUTE A TRESPASS**<br><br>**Judge:** Hon. Edward M. Chen<br>**Trial Date:** None Set |

Plaintiff 3taps, Inc. ("3taps" or "Plaintiff"), by and through its attorneys, brings this Complaint against LinkedIn Corporation ("LinkedIn" or "Defendant") and alleges as follows:

## NATURE OF THE ACTION

1. On August 14, 2017, the Honorable Edward M. Chen of this Court issued a decision in the matter of hiQ Labs v. LinkedIn Corp., 273 F. Supp. 3d 1099 (N.D. Cal. Aug. 14, 2017), holding that hiQ Labs ("hiQ") was entitled to a preliminary injunction on its claims against LinkedIn, and specifically holding that LinkedIn's assertion that the Computer Fraud and Abuse Act, 18 U.S.C. Section 1030 (the "CFAA"), permitted LinkedIn to prohibit the collection and use by hiQ of publicly-available materials from LinkedIn's webpage was contrary to law.  Id.  Consequently, Judge Chen held that LinkedIn's defense that the CFAA prohibited the use and collection of materials from its website without LinkedIn's consent was meritless.  Id.  This decision was subsequently affirmed by the Ninth Circuit.  The Ninth Circuit's opinion was later vacated and remanded by the United States Supreme Court for reconsideration in light of the opinion in Van Buren v. United States 141 S.Ct. 1648 (2021).

2. On April 18, 2022, the Ninth Circuit confirmed that Judge Chen's ruling and reasoning in the hiQ Labs case was correct. hiQ Labs v. LinkedIn, ___ F.4th ___ (9th Cir. 2022).  The Ninth Circuit held that the CFAA cannot be used to prohibit the scraping and use of publicly available data and information from LinkedIn.  The Ninth Circuit also specifically held that LinkedIn does not own the information placed on its website by its users, and that data scrapers (such as 3taps) face no liability under the CFAA for obtaining and using that data without regard to whether LinkedIn has purportedly revoked access via a cease-and-desist letter or by other means.  The Ninth Circuit also reasoned that allowing LinkedIn to prevent data scrapers from obtaining and using information on Linkedin's website risked the creation of powerful information monopolies, and that the existence such monopolies was anathema to the public interest.

3. This action arises out of efforts by LinkedIn to avoid the legal effect of this Court's prior decision (*now twice affirmed by the Ninth Circuit*) by insisting that the legal basis of those decisions is unsound and that that the CFAA does in fact permit LinkedIn to prevent 3taps from collecting and using publicly-available information from its webpage. LinkedIn's efforts to intimidate data scrapers such as 3taps that seek to lawfully scrape LinkedIn's webpage with implicit threats of financially ruinous litigation under the CFAA necessitated this action for declaratory relief.

## THE PARTIES

4. Plaintiff 3taps was founded in 2009 and is a Delaware Corporation with its principal place of business in San Francisco, California.

5. Defendant LinkedIn is a Delaware Corporation with its principal place of business in Sunnyvale, California.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction under 28 U.S.C. Section 1331 because Plaintiff's First Cause of Action seeks a declaratory judgment under 28 U.S.C. Sections 2201 and 2202 that Plaintiff's proposed actions will not violate a federal statute, in particular, the Computer Fraud and Abuse Act, 18 U.S.C. Section 1030.

## PROCEDURAL HISTORY

7. On August 13, 2021, LinkedIn filed a motion to dismiss the initial complaint in this action. After a subsequent meet and confer, the parties agreed that, in the interests of efficiency, 3taps would file an amended complaint rather than respond to the motion to dismiss. As reflected in the written stipulation subsequently submitted to the Court on this issue, 3taps' agreed to file an amended complaint with the express condition that doing so was in no way a concession that the motion to dismiss was meritorious or that the initial complaint required any amendment.

8. By order dated April 7, 2022, this Court requested that more information be pled regarding 3taps and its business preparation and plans as they relate to the scraping of publicly-available data from LinkedIn. That order expressly permitted this Complaint to be

filed under seal. The materials that are redacted from the public file version of this document are shown with light grey shading. 3taps provides herein the information requested by the Court.

**FACTUAL ALLEGATIONS**

9. 3taps is a professional data scraper founded in San Francisco in 2009. It is likely the most well-known professional data scraper in existence.

10. 3taps' business consists of scraping data and then making that data available to third party technology developers through 3taps' online data shop. The data shop is an online shop where developers from various industries and disciplines can shop for various types of scraped data for use in their own research, projects, applications or businesses.

11. The online data shop is marketed to developers as a "One-Stop Data Shop For Developers." 3taps online data shop can be found at www.3taps.com.



12. As indicated on the webpage for the online shop, 3taps "collect[s], organize[s] and distribute[s] exchange data for developer use." 3taps customers include or have included businesses from a variety of industries seeking to acquire scraped data who lack the skills, equipment and/or resources to perform their own data scraping.

13. 3taps has and/or will also provide scraped data to third parties via private contractual arrangements with that third party outside of its data shop.

14. One of 3taps' investors is Hard Yaka, Inc. ("Hard Yaka"). Hard Yaka is also an investor in hiQ. Relying on Judge Chen's August 14, 2017 decision in favor of hiQ, on January 16, 2018, 3taps directed a letter to LinkedIn's counsel informing LinkedIn of 3taps' position that Judge Chen's decision in hiQ Labs v. LinkedIn Corp applied to 3taps, and that, as a result, 3taps intended to begin collecting and using publicly-available data from LinkedIn's website as hiQ had been doing.

15. By letter dated January 24, 2018, Jonathan Blavin, an attorney for LinkedIn, responded to the January 16 letter and asserted that 3taps' reliance on Judge Chen's decision was misplaced and that the CFAA prohibited 3taps from collecting and using data from LinkedIn's publicly-available webpage. This statement by Mr. Blavin was completely inconsistent with Judge Chen's August 14, 2017, order and was designed to prevent 3taps from taking advantage of that order.

16. 3taps thereafter determined to initiate this action to seek clarification regarding the issue of whether the CFAA prohibits 3taps from accessing and using publicly-available information on LinkedIn's webpage.

17. 3taps stands ready, willing, eager and able to scrape publicly-available information from Linkedin's website and provide that data to third party developers looking to acquire that data for their own research or business purposes. As a professional data scraper, 3taps has the means and know how to begin scraping that data from LinkedIn immediately.

18. 3taps has software that mimics the behavior of an internet browser to access account web pages of LinkedIn users. This software can capture the contents of the user

webpage and then categorize the data according to available sections in the LinkedIn biography, including the individual or business name, location, honors and awards, education, previous employment history, etc.

19. But for the threat of litigation by LinkedIn, 3taps would immediately begin scraping publicly-available information from LinkedIn's website, and 3taps intends to do so when its dispute with LinkedIn over the legality of the proposed actions is resolved. 3taps is entitled to that clarity given the threat of ruinous litigation by LinkedIn, which has demonstrated by the hiQ action that it will spare no litigation expense going after data scrapers. 3taps is harmed by its inability to scrape LinkedIn in that it is being denied a valuable business resource (information regarding LinkedIn's over half billion users) that is much sought after by data scrapers and their clients. Access to this resource would be extremely beneficial to 3taps' business and prospects as the rich array of public, biographical and professional data on LinkedIn's webpage would likely be a star attraction on the data shop.

20. With respect to the Court's suggestion that 3taps identify, on an attorney's eyes-only basis, a specific, concrete business use or customer for the LinkedIn scraped data, 3taps responds as follows. Although 3taps contends that it is legally permitted to scrape publicly-available data from LinkedIn and thereafter use that data for any lawful business purpose, without any further restriction, the immediate business use of LinkedIn's scraped data by 3taps will be to provide that data to its client GlobalId, Inc., ("GlobalId"). The following information about the business end-use for the data is shared with the permission of GlobaliD.

21. GlobaliD is a Delaware corporation with its principal place of business in Oakland, California. GlobaliD has approximately 90 employees and it shares at least one investor in common with 3taps. GlobaliD is a company that allows participants in its identity verification program to create and manage their own digital identity through a unique GlobaliD name, and to build and authenticate an identity profile based on the individual's electronic footprints, government issued identification documents, records and

relationships.  The effect is to create a large, trustworthy ecosystem of third-party verification sources that allow an individual to prove his or her identity to various other persons or entities without the necessity of the individual directly sharing specific, private information with those persons or entities.  This type of identity authentication is unique to GlobaliD.

22. GlobaliD's business operations are described generally on its webpage, a screenshot of which is provided below.



24. GlobaliD seeks to obtain scraped data from 3taps specifically for use in GlobaliD's identity proofing and attestation of identity services.  A GlobaliD participant seeking to have his or her identity verified will be requested to update their LinkedIn profile to add a harmless, specially generated code.  The presence of that code, which would be public and visible, would demonstrate to a high degree of certainty that the GlobaliD participant provided with that specific code actually controlled the LinkedIn account in question, and therefore could be linked with that account to a near certainty.

25. That proof of control over the LinkedIn account by the GlobaliD participant would serve to connect the identity of the GlobaliD participant with the professional and other biographic information in that specific LinkedIn account.  Data scraped by 3taps and

provided to GlobaliD would contain information such as that individual's professional employment history, educational attainment, professional certifications, etc., and that data would now be connected with a GlobaliD confirmed identity.

# FIRST CAUSE OF ACTION

**(Declaratory Judgment That 3taps Will Not Violate the CFAA, 18 U.S.C. Section 1030, By Accessing and Using Publicly-Available Data on LinkedIn's Website)**

26. 3taps hereby incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

27. The Declaratory Judgment Act, 22 U.S.C. Section 2201, permits courts to declare the rights of parties where there exists an actual case or controversy between them.

28. An actual case or controversy exists between 3taps and Linkedin. 3taps has given notice to LinkedIn that it intends to begin accessing and using publicly-available facts and information on LinkedIn's webpage and LinkedIn has responded by claiming that any such activity by 3taps would violate a federal statute, and specifically, the CFAA, 18 U.S.C. Section 1030.

29. 3taps seeks a declaration that it will not be in violation of the CFAA if it proceeds to access and use publicly-available facts and information from LinkedIn's webpage.

# SECOND CAUSE OF ACTION

**(Declaratory Judgment That 3taps Will Not Violate the California Comprehensive Computer Data Access and Fraud Act, Penal Code Section 502, By Accessing and Using Publicly-Available Data on LinkedIn's Website)**

30. 3taps hereby incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

31. The Declaratory Judgment Act, 22 U.S.C. Section 2201, permits courts to declare the rights of parties where there exists an actual case or controversy between them.

32. An actual case or controversy exists between 3taps and Linkedin. 3taps has given notice to LinkedIn that it intends to begin accessing and using publicly-available facts and information on LinkedIn's webpage and LinkedIn has responded by claiming that any such activity by 3taps would violate a federal statute, and specifically, the CFAA, 18 U.S.C. Section 1030.

33. In its motion to dismiss this action filed August 13, 2021, LinkedIn suggested that 3taps' proposed data scraping activity could also violate state law data scraping analogs to the CFAA, implying that 3taps' scraping would violate the California Comprehensive Computer Data Access and Fraud Act, Penal Code Section 502.

34. 3taps therefore seeks a declaration that it will not be in violation of the California Comprehensive Computer Data Access and Fraud Act, Penal Code Section 502 if it proceeds to access and use publicly-available facts and information from LinkedIn's webpage.

### THIRD CAUSE OF ACTION

**(Declaratory Judgment That 3taps Will Not Commit A Breach of Contract By Accessing and Using Publicly-Available Data on LinkedIn's Website)**

35. 3taps hereby incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

36. The Declaratory Judgment Act, 22 U.S.C. Section 2201, permits courts to declare the rights of parties where there exists an actual case or controversy between them.

37. An actual case or controversy exists between 3taps and Linkedin. 3taps has given notice to LinkedIn that it intends to begin accessing and using publicly-available facts and information on LinkedIn's webpage. During oral argument on a prior motion to dismiss in this action, LinkedIn's counsel contended that 3taps' proposed activities would amount to a breach of LinkedIn's User Agreement.

38. 3taps therefore seeks a declaration that it will not commit a breach of contract if it proceeds to access and use publicly-available facts and information from LinkedIn's webpage.

## FOURTH CAUSE OF ACTION

**(Declaratory Judgment That 3taps Will Not Commit A Trespass By Accessing and Using Publicly-Available Data on LinkedIn's Website)**

39. 3taps hereby incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

40. The Declaratory Judgment Act, 22 U.S.C. Section 2201, permits courts to declare the rights of parties where there exists an actual case or controversy between them.

41. An actual case or controversy exists between 3taps and Linkedin. 3taps has given notice to LinkedIn that it intends to begin accessing and using publicly-available facts and information on LinkedIn's webpage and LinkedIn has responded by claiming that any such activity by 3taps would violate a federal statute, and specifically, the CFAA, 18 U.S.C. Section 1030.

42. In its motion to dismiss this action filed August 13, 2021, LinkedIn implied that 3taps' proposed data scraping activity could also create liability for the tort of trespass.

43. 3taps therefore seeks a declaration that it will not commit a trespass if it proceeds to access and use publicly-available facts and information from LinkedIn's webpage.

## PRAYER FOR RELIEF

Wherefore, 3taps prays for judgment against Defendant LinkedIn as follows:

A. For a declaratory judgment that 3taps will not be in violation of the CFAA, the California CDAFA, breach a contract, or commit a trespass if it proceeds to access and use publicly-available facts and information from LinkedIn's webpage.

B. For 3taps' costs and attorney's fees, if permitted by law;

C. For such other relief as the Court determines just and proper.

DATED: May 13, 2022

                THE LAW OFFICES OF THOMAS V. CHRISTOPHER

                By: /s/ Thomas Christopher
                      THOMAS CHRISTOPHER
                    thomas@thomaschristopherlaw.com
                      Attorney for Plaintiff
                          3TAPS, INC.